Thomas S. Slovak, Esq., SBN 062815
sartain@sbemp.com
Stephen J. Schultz, Esq., SBN 90187
schultz@sbemp.com
1800 E. Tahquitz Canyon Way
Palm Springs, CA  92262
Telephone:  (760) 322-2275
Facsimile:  (760) 322-2107

Maureen K. Bogue, Esq., SBN 194775
maureen@pacificemploymentlaw.com
Pacific Employment Law, LLP
101 California Street, Suite 2300
San Francisco, CA 94111
Telephone:  (415) 985-7307
Facsimile:  (415) 985-7301

Attorneys for Defendants FIRST SOLAR, INC. and
        CALIFORNIA FLATS SOLAR, LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| Justin Griffin, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Sachs Electric Company, a Missouri corporation;<br>First Solar, Inc., a Delaware Corporation;<br>California Flats Solar, LLC, a Delaware Limited  Liability Company, and Does 1 through 10,<br><br>Defendants. | CASE NO.<br><br>CLASS ACTION DEFENDANTS FIRST SOLAR, INC. AND CALIFORNIA FLATS SOLAR, LLC'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441(a) BASED ON: (*DIVERSITY OF CITIZENSHIP, 28 U.S.C. § 1332(a)); (CLASS ACTION FAIRNESS ACT,28 U.S.C. § 1332(d)); AND (FEDERAL QUESTION, 28 U.S.C. § 1331*)<br><br>Complaint Filed: April 27, 2017<br>Trial Date:  None Set |

PLEASE TAKE NOTICE that Defendants First Solar, Inc. and California Flats Solar, LLC hereby remove to this Court the state-court action filed in the California Superior Court for the County of Monterey, known as Justin Griffin, an individual, on behalf of himself and all others similarly situated, Plaintiff, vs. Sachs Electric Company, a Missouri corporation; First Solar, Inc., a Delaware corporation; California Flats Solar, LLC, a Delaware Limited Liability Company and Does 1 through 10, Defendants, Case No. 17CV001525 (the "Action"). The bases for removal are diversity of citizenship, the Class Action Fairness Act and federal question. First Solar, Inc. and California Flats Solar, LLC file this Notice of Removal without admitting any of the plaintiff's allegations. First Solar, Inc. and California Flats Solar, LLC are serving a copy of this Notice of Removal on all

adverse parties and filing a copy of this notice with the clerk of the state court pursuant to 28 U.S.C. § 1446(d) to affect removal.

## A.

## COMPLETE DIVERSITY REMOVAL JURISDICTION

1.     On or about April 27, 2017, the Action was commenced by the filing of a complaint in the Superior Court of the State of California in and for the County of Monterey, ("Complaint"). A copy of the Complaint is attached as Exhibit "A." The Action is entitled Justin Griffin, an individual, on behalf of himself and all others similarly situated, Plaintiff, vs. Sachs Electric Company, a Missouri corporation; First Solar, Inc., a Delaware corporation; California Flats Solar, LLC, a Delaware Limited Liability Company and Does 1 through 10, Defendants. The Action was assigned by the California state court as Case No. 17CV001525.

2.     The Monterey County Superior Court is within the geographic jurisdiction of the United States District Court for the Northern District of California, San Jose Division.

3.     A First Amended Complaint was filed on June 27, 2017, which is attached hereto as Exhibit "J". The First Amended Complaint only added an additional exhibit.

4.     The Complaint alleges the following claims for relief against all defendants:

Class action claims:  (a) Failure to pay compensation due; (b) Failure to furnish itemized wage statements; (c) Failure to pay wages timely upon termination; (d) Failure to indemnify business expenses; (e) Violation of Cal. Business & Professions Code Section 17203; and (f) Recovery of Civil Penalties pursuant to the California Private Attorney General Act; and

Individual claims: (a) Violation of California Government Code Section 12940; (b) Intentional infliction of emotional distress; and (c) Wrongful termination in violation of public policy.

5.     Plaintiff seeks, among other things, economic and compensatory damages, punitive damages, penalty damages, attorneys' fees, and costs.

6.     Attached hereto as Exhibits "B" through "E" and "H" through "J" are additional papers that were filed with the Monterey County Superior Court and/or that were served on First Solar, Inc. and California Flats Solar, LLC.:

Exhibit "B"  Summonses showing dates of service on First Solar, Inc.,
             California Flats Solar, LLC; and
             Sachs Electric Company, Inc.;

Exhibit "C"  Notice of Case Assignment;

Exhibit "D"  Alternative Dispute Resolution Information Packet;

Exhibit "E"  Civil Cover Sheet;

Exhibit "H"  Notice of Filing Notice of Removal;

Exhibit "I"   Answer and Affirmative Defenses of Sachs Electric; and
             Company, Inc.

Exhibit "J"  Copy of First Amended Complaint.

7.    As described more fully below, this Action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(a).

8.    This is a civil action that may be removed to this Court by First Solar, Inc. and California Flats Solar, LLC pursuant to the provisions of 28 U.S.C. §§ 1441(a) and 1332(a). This is a civil action between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. The facts described below existed both at the time the Complaint was filed on April 27, 2017 and at the time this Notice of Removal was filed in this Court.

Timeliness of Removal

9.    Copies of the Summons and Complaint were served on Defendants on June 1, 2017. This Notice of Removal is filed within thirty days of the service or receipt by First Solar, Inc. and California Flats Solar, LLC of the Complaint and Summons. Removal is timely under 28 U.S.C. § 1446(b).

Citizenship of the Parties

10.    Griffin.

Griffin was at the time of this suit was filed in California state court, and still is, a citizen of the State of California.

11.    In paragraph 1 of his Complaint, Griffin alleges that he is a resident of the State of California.

12.    Griffin alleges in paragraph 1 of his Complaint that he was employed in Monterey County by Defendants.

13.    First Solar, Inc.

First Solar, Inc. is not and never has been a citizen of the State of California. Under 28 U.S.C. § 1332(c)(1), and as shown below, First Solar, Inc. was at the time of the filing of this Action in California state court, and still is, a citizen of the State of Delaware and of the State of Arizona.

14.    First Solar, Inc. was incorporated under the laws of the State of

Delaware and still is a Delaware corporation. (Declaration of Kara Mullins ("Mullins Decl.", ¶ 2.))

15.    First Solar, Inc.'s principal place of business is located at 350 West Washington Street, Suite 600, Tempe, Arizona 95281. (Mullins Decl., ¶ 2.) This location, at the time the Complaint was filed and it still is, First Solar, Inc.'s principal place of business.

16.    First Solar, Inc.'s corporate offices and officers are not located in California.

17.    All of First Solar Inc.'s executive functions and other major corporate functions, including human resources, finance and accounting, communications, public relations, and legal are located in Tempe, Arizona. (Mullins Decl., ¶ 2.)

18.    Therefore, First Solar, Inc.'s principal place of business is in the State of Arizona and not in the State of California.  First Solar, Inc., therefore, is a citizen of the State of Delaware, where it was and is incorporated, and the State of Arizona where its principal place of business was and is located.

19.    <u>California Flats Solar, LLC</u>.

California Flats Solar, LLC is a limited liability company formed under the laws of Delaware. (Declaration of Mark Osterholt ("Osterholt Decl.", ¶ 2.) California Flats Solar, LLC has one member, First Solar Development, LLC which owns 100% of California Flats Solar, LLC. (Osterholt Decl., ¶ 3.)

20.    First Solar Development, LLC is a limited liability company formed under the laws of Delaware with its. (Osterholt Decl., ¶ 2-3.)

21.    First Solar Development, LLC has one member, First Solar Electric (California), Inc., which owns 100% of First Solar Development, LLC. (Osterholt Decl., ¶ 4.)

22.    <u>First Solar Electric (California), Inc</u>.

NOTICE OF REMOVAL

First Solar Electric (California), Inc. is not and never has been a citizen of the State of California. Under 28 U.S.C. §1332(c)(1), and as shown below, First Solar Electric (California), Inc. was at the time of the filing of this Action in California state court, and still is, a citizen of the State of Delaware and of the State of Arizona. (Mullins Decl., ¶ 3.)

23.    First Solar Electric (California), Inc. was incorporated under the laws of the State of Delaware and still is a Delaware corporation. (Mullins Decl., ¶ 3.)

24.    First Solar Electric (California), Inc.'s principal place of business is located at 350 West Washington Street, Suite 600, Tempe, Arizona 95281. This location, at the time the Complaint was filed and it still is, First Solar Electric (California), Inc.'s principal place of business. (Mullins Decl., ¶ 3.)

25.    First Solar Electric (California), Inc.'s corporate offices and officers are not located in California.

26.    All of First Solar Electric (California), Inc.'s major corporate functions, including employee development, marketing, supply chain (purchasing), human resources, communications, public relations, and its legal department are located in Tempe, Arizona. None of these corporate functions are located in California. (Mullins Decl., ¶ 3.)

27.    Therefore, First Solar Electric (California), Inc.'s principal place of business is in the State of Arizona and not in the State of California.  First Solar Electric (California), Inc., therefore, is a citizen of the State of Delaware, where it was and is incorporated, and the State of Arizona where its principal place of business was and is located.

28.    <u>Sachs Electric Company, Inc</u>.

Sachs Electric Company, Inc. (improperly sued as Sachs Electric Company) is not and never has been a citizen of the State of California. Under 28 U.S.C. §1332(c)(1), and as shown below, Sachs Electric Company, Inc. was at the time of

the filing of this Action in California state court, and still is, a citizen of the State of Missouri.

29.    Sachs Electric Company, Inc. was incorporated under the laws of the State of Missouri and still is a Missouri corporation. (Declaration of Patrick Kriegshauser ("Kriegshauser Decl."), ¶ 3.)

30.    Sachs Electric Company, Inc.'s principal place of business is located at 1572 Larkin Williams Road, Fenton, Missouri 63026. This location, at the time the Complaint was filed and it still is, Sachs Electric Company, Inc.'s principal place of business. (Kriegshauser Decl., ¶ 3.)

31.    Sachs Electric Company, Inc.'s corporate offices and officers are not located in California. (Kriegshauser Decl., ¶ 3.)

32.    All of Sachs Electric Company, Inc.'s major corporate functions, including employee development, marketing, supply chain (purchasing), human resources, communications, public relations and its legal department are located in Fenton, Missouri. None of these corporate functions are located in California. (Kriegshauser Decl., ¶ 4.)

33.    Therefore, Sachs Electric Company, Inc.'s principal place of business is in the State of Missouri and not in the State of California. Sachs Electric Company, Inc., therefore, is a citizen of the State of Missouri, where it was and is incorporated, and the State of Missouri where its principal place of business was and is located.

34.    <u>DOE Defendants</u>:

It is not necessary for DOES 1 through 10 to join in this removal as they have been sued under fictitious names, have not been served or received the Summons or the Complaint, and, under 28 U.S.C. § 1441(b)(1), are disregarded for purposes of removal and are not proper parties in this Court.

<u>The Amount in Controversy Exceeds the Sum or</u>

Value of $75,000 Exclusive of Interests and Costs

35.    A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.    Evidence establishing the amount is required only when the plaintiff contests, or the court questions, the defendant's allegation. *See Dart Cherokee Basin Operating Co., LLC v. Owens¸* 574 U.S. ___, 135 S. Ct. 547, 554 (2014).  As noted in *Dart Cherokee*: "'[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met.  Discovery may be taken with regard to that question.  In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.'" *Id.* (quoting House Judiciary Committee Report on the Federal Courts Jurisdiction and Venue Clarification Act of 2011, H.R. Rep. No. 112-10, p. 16 (2011)).[1]

36.    Here, the Court can reasonably ascertain from Plaintiff's complaint and his prayer for relief that the amount in controversy exceeds $75,000.  The assertions of Defendants herein are limited to their preliminary understanding of Plaintiff's claims and data currently available to Defendants.  "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  "When a '[d]efendant's calculations (are) relatively conservative, made in good faith, and based on evidence whenever

---

[1] The Supreme Court went on to say that "[o]f course, a dispute about a defendant's jurisdictional allegations cannot arise until *after* the defendant files a notice of removal containing those allegations." *Dart Cherokee¸* 135 S. Ct. at 554.

NOTICE OF REMOVAL

possible,' the court may find that the '[d]efendant has established by a preponderance of the evidence that the amount in controversy is met.'"  *Cagle v. C&S Wholesale Grocers, Inc.*, __ F.R.D. ___, 2014 WL 651923, *7 (E.D. Cal. Feb. 19, 2014) (quoting *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (citations omitted)).  Nor do Defendants need to provide summary judgment-type evidence. *Cagle*, 2014 WL 651923, *7.

37.    Here, with just Plaintiff's individual claims, Defendants can easily meet their burden of establishing that the amount in controversy exceeds $75,000. Plaintiff's demand for economic damages, non-economic damages, punitive damages, and attorneys' fees puts more than $75,000 at stake in this litigation.  *See Gonzales v. CarMax Auto Superstores, LLC*, 2016 WL 6122776, *3 (9th Cir. Oct. 20, 2016) ("We have defined the amount in controversy as the amount at stake in the underlying litigation…") (citations omitted).

38.    **Economic Damages**:  Plaintiff alleges that, as a result of Defendants' alleged actions, "Plaintiff has suffered and continues to suffer damages, including lost wages, benefits, and certain other incidental, consequential expenses and losses, and general damages for humiliation, embarrassment, pain and suffering and/or emotional distress (Complaint, ¶ 109.)  Plaintiff was allegedly terminated on March 3, 2017.  (*Id.*, ¶ 85.)  Plaintiff worked full-time (40 hours per week, 5 days per week), with his last rate of pay at $19.71 per hour.  There have been approximately 17 weeks between Plaintiff's termination and the time of removal. Plaintiff's claim for back pay during this time period therefore totals $13,402.80. ($19.71 x 40 hours x 17 weeks).

39.    **Non-economic Damages**.  One of Plaintiff's causes of action is for intentional infliction of emotional distress.  (Complaint, Eighth Cause of Action.) "To establish the amount of emotional distress in controversy, a defendant may introduce evidence of jury verdicts in other cases."  *Cain v. Hartford Life and Acc*

NOTICE OF REMOVAL

*Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012). *See e.g.*, *Hurd v. Am. Income Life Ins.*, 2013 WL 5575073, *7 (C.D. Cal. Oct. 10, 2013) ("emotional damages in disability discrimination cases can be substantial even when lost wages fall short of the jurisdictional minimum").

40.    Jury verdicts in employment discrimination cases make clear that emotional distress is frequently awarded in an amount at least twice the underlying economic damages, or, at the very least, in the same amount as economic damages. *See Saccio v. Romasanta*, 2016 WL 7118673 Case No. 15CV00672, Superior Court, Santa Barbara County (November 22, 2016) (in age discrimination action, jury awards $75,000 in non-economic damages, but less than $70,000 in economic damages); *Abe v. Symantec Corporation*, 2016 WL 6883223 Case No. BC547652, Superior Court, Los Angeles County (July 22, 2016) (verdict in pregnancy, gender and disability discrimination case for $50,000 in "pain and suffering," but only $25,003 in back-pay); *Swinton v. Potomac Corp.*, 270 F.3d 794, 799 (9th Cir. 2001) (affirming award of $30,000 in emotional distress damages in employment discrimination case where back pay was only $5,612); *Escoto v. Metric Machining*, 2013 WL 9554716, Case No. CIVRS-12-06532, Superior Court, San Bernardino County (Nov. 14, 2013) (verdict in wrongful termination, disability discrimination, failure to accommodate, failure to engage in interactive process, and age discrimination case for $55,000 in "pain and suffering," but only $12,000 in back pay); *Izaguirre v. International Coffee & Tea LLC*, 2013 WL 6624243, Case No. BC486877, Superior Court, Los Angeles County (Sept. 26, 2013) (verdict in wrongful termination, disability discrimination, failure to accommodate, failure to engage in interactive process, and retaliation case for $80,000 in "noneconomic damages," but only $40,000 in economic damages); *Cho v. B & B Pharmacy and Healthcare Center*, 2011 WL 8227178, Case No. VC055584, Superior Court, Los Angeles County (July 13, 2011) (verdict in wrongful termination, pregnancy

discrimination, and harassment case for $75,000 in "noneconomic loss," but only $37,500 in economic damages); *Husein v. Selma Unified School District*, 2010 WL 8672016, Case No. 08CECG03528, Superior Court, Fresno County (Oct. 26, 2010) (verdict in wrongful termination and racial discrimination case for $110,000 in past and future "noneconomic damages," but about $70,000 in economic damages); *Perona v. Time Warner Cable, Inc.*, 2016 WL 6440427, Case No. 5:14CV02501, Central District of California (Sept. 8, 2016) (verdict in disability discrimination and failure to accommodate case for $80,000 in "noneconomic damages," and $80,000 in economic damages).

41.    **Punitive Damages.**  Plaintiff alleges that Defendants' alleged conduct warrants punitive damages (Complaint, Prayer for Relief, ¶ 12.)  The Court must take into account punitive damages for purposes of determining the amount in controversy where such damages are recoverable under state law.  *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1009 (N.D. Cal. 2002).

42.    California law does not provide any specific monetary limit on the amount of punitive damages that may be awarded under Civil Code section 3294. *Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994).  "To establish probable punitive damages, defendant may introduce evidence of jury verdicts in cases involving analogous facts." *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).  "The fact that [the verdicts come from] cases involve[ing] distinguishable facts is not dispositive." *Id.  See id.* ("Notwithstanding these differences, the jury verdicts in these cases amply demonstrate the potential for large punitive damage awards in employment discrimination cases.  Although the facts of the instant action are far less egregious, defendant has met its burden of showing by a preponderance of the evidence that the amount in controversy should include a punitive damages award.").

43.    Jury verdicts in employment discrimination cases demonstrate that punitive damages are frequently awarded in an amount significantly higher than the underlying economic damages.  *See Flores v. Office Depot Inc.,* 2017 WL 773850 Case No. BC556173 , Superior Court, Los Angeles County (February 6, 2017) (verdict in disability discrimination case, failure to prevent discrimination and retaliation, and violation of the California Family Rights Act (CFRA) case for $10,000,000 where the jury awarded the Plaintiff $8,000,000 in punitive damages, but only $2,000,000 in economic damages) *Frederick v. Pacwest Security Services, 2015 WL 4771465,* Case No. BC534353, Superior Court, Los Angeles County (July 15, 2015) (verdict in disability discrimination case, failure to accommodate, failure to engage in interactive process case for $78,000 where the jury awarded the Plaintiff $63,000 in punitive damages, but only $15,000 in economic damages) *Escoto, supra* (verdict in wrongful termination, disability discrimination, failure to accommodate, failure to engage in interactive process, and age discrimination case for $75,000 in punitive damages but only $12,000 in back pay); *Lopez v. Bimbo Bakeries USA Inc.*, 2007 WL 4339112 (San Francisco Super. Ct.) (a jury awarded the plaintiff $131,700 in back pay, and $2,000,000 in punitive damages for wrongful termination, failure to prevent discrimination and failure to accommodate a pregnant employee); *Wysinger v. Automobile Club of Southern California*, 2006 WL 397031 (Santa Barbara Super. Ct.) (awarding $284,000 in compensatory damages and $1,000,000 in punitive damages to an employee terminated due to his age and disability).

44.    Further, a punitive damages award may equal as much as four times the amount of the actual damages award.  *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

45.    **Attorneys' Fees**. Attorneys' fees may be considered in determining whether the amount in controversy requirement has been satisfied if a plaintiff sues

under a statute that authorizes an award of fees to the prevailing party." *Ponce v. Medical Eyeglass Center Inc.*, 2015 WL 4554336, *2 (C.D. Cal. Jul. 27, 2015). "[A] conservative estimate of attorneys' fees likely to be incurred through the conclusion of this case properly factors into the amount in controversy determination." *Id.* at *3. *See also Simmons*, 209 F. Supp. 2d at 1034-35 ("Plaintiff insists that attorneys' fees are limited to those accrued at time of removal, maintaining that additional fees are too speculative.  Plaintiff is mistaken…[F]ees necessarily accrue until the action is resolved.  Thus, the Ninth Circuit must have anticipated that district courts would project fees beyond removal...[T]he measure

of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred.").  Further, while Plaintiff's attorneys' fees cannot be precisely calculated, it is reasonable to assume that they likely will at exceed the damages award.  *See id.*, at 1035 ("The court notes that in its twenty-plus years' experience, attorneys' fees in individual discrimination cases often exceed the damages.

46.    **Griffin's Individual Wage Claims**.  Griffin worked on the Project for 17 weeks.  His wage claims are calculated as follows:

Griffin alleges approximately 40 minutes of unpaid travel time each way— approximately 113.33 hours of overtime wages (1 1/3 hours x 5 days x 17 weeks).  At his overtime rate of $29.57 per hour, Griffin seeks $3,351.27 in overtime wages.

California Labor Code section 226(e)(1) provides for a penalty of $50 for the initial pay period and $100 for each and every subsequent pay period that an inaccurate wage statement was provided, up to $4,000.  Cal. Labor Code § 226(e).  Griffin was paid weekly.  Over the course of 17 weeks, he is allegedly owed $1,650 ($50 for the first week and $100 for the 16 weeks after).

Plaintiff claims that he is entitled to waiting time penalties pursuant to Cal. Lab. Code § 203, which provides that employees may recover up to 30 days' wages

if an employer willfully fails to pay all wages owing at the time of termination. (Complaint, ¶ 54.) Plaintiff's individual claim for this cause of action amounts to $13,402.80 ($19.71 per hour x 8 hours x 30 days).

Plaintiff alleges that he is entitled to the reimbursement of mileage for traveling 14 miles each way every day. (Complaint, ¶¶ 30, 62.) At the 2017 IRS standard mileage rate of 53.5 cents per mile, this claim demands $1,273.30 (28 miles x 5 days x 17 weeks x $.535 per mile).

Therefore, Griffin is demanding $19,677.37 in connection with his individual wage and hour claims.

47. **Total Amount in Controversy in connection with Griffin's Individual Claims**. Defendants have met their burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $75,000. Plaintiff's claim for back pay damages amounts to at least $13,402.80, and his individual wage and hour claims demand $19,677.37, for a total of $33,080.17. This means that Plaintiff's demand for emotional distress damages, punitive damages, and attorney's fees must exceed $41,919.83—or each element must be at least $13,979.28 by itself. As demonstrated above, if Plaintiff proves his individual claims, each of these elements of recovery (emotional distress, punitive damages, or fees) will almost certainly exceed $13,979.28. Therefore, Griffin is demanding in excess of $75,000 just for himself.

## B.

## CLASS ACTION FAIRNESS ACT REMOVAL

48. Pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441, 1446, 1453, and 1711 through 1715, Defendant First Solar, Inc. hereby files this Notice of Removal, removing the case Justin Griffin, an individual, on behalf of himself and all others similarly situated, Plaintiff, vs. Sachs Electric Company, a Missouri corporation; First Solar, Inc., a Delaware corporation;

California Flats Solar, LLC, a Delaware Limited Liability Company and Does 1 through 10, Defendants filed in the Superior Court of the State of California for the County of Monterey, Case No. 17cv001525 to the United States District Court for the Northern District of California, San Jose Division.

49.     On April 27, 2017, Plaintiff, Justin Griffin, filed the Complaint in this Action in the Superior Court of the State of California for the County of Monterey.

50.     The Complaint was served on all Defendants on June 1, 2017.

51.     The Complaint alleges the following class action claims for relief against all defendants:

Class action claims:

(a) Failure to pay compensation Due;

(b) Failure to furnish itemized wage statements;

(c) Failure to pay wages timely upon termination;

(d) Failure to indemnify business expenses;

(e) Violation of Cal. Business & Professions Code Section 17203; and

(f) Recovery of Civil Penalties pursuant to the California Private Attorney General Act.

52.     Plaintiff seeks, among other things, economic and compensatory damages, punitive damages, penalty damages, attorneys' fees, and costs.

53.     This is a civil action that may be removed by First Solar, Inc. as it is (1) "filed under . . . [a] State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action"; (2) the class contains 100 or more putative class members; (3) any member of the class is a citizen of a state different from any defendant (i.e., minimum diversity exists); and (4) the amount in controversy exceeds CAFA's jurisdictional threshold of $5 million exclusive of interest and costs. 28 U.S.C. §§ 1332(d), 1441, 1446, 1453 and 1711 through 1715. (Complaint, ¶¶ 15 through 22.)

54.    This action meets CAFA's numerosity requirement because the Complaint alleges that there are "more than 100 class members." (Complaint, ¶ 18.)

55.    This action meets CAFA's minimal diversity requirement because Griffin is a California citizen and no defendant is a citizen of California. (Kriegshauser Decl., ¶ 6.)

56.    First Solar, Inc. is not and never has been a citizen of the State of California. Under 28 U.S.C. §1332(c)(1), and as shown below, First Solar, Inc. was at the time of the filing of this action in California state court, and still is, a citizen of the State of Delaware.

57.    First Solar, Inc. was incorporated under the laws of the State of Delaware and still is a Delaware corporation.

58.    First Solar, Inc.'s principal place of business is located at 350 West Washington Street, Suite 600, Tempe, Arizona 95281. This location, at the time the Complaint was filed and it still is, First Solar, Inc.'s principal place of business.

59.    First Solar, Inc.'s corporate offices and officers are not located in California.

60.    All of First Solar, Inc.'s major corporate functions, including employee development, marketing, supply chain (purchasing), human resources, communications, public relations and its legal department are located in Tempe, Arizona. None of these corporate functions are located in California. (See ¶ ¶ 13-52, supra.)

61.    Therefore, First Solar, Inc.'s principal place of business was and is in the State of Arizona and not in the State of California. First Solar, Inc. therefore is a citizen of the State of Delaware, where it was and is incorporated, and the State of Arizona where its principal place of business was and is located.

<u>The Amount in Controversy Exceeds the Sum or Value</u>
<u>of $5,000,000 Exclusive of Interest or Costs</u>

62.    CAFA requires the "matter in controversy" to exceed "the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount. 28 U.S.C. § 1332(d)(6). Further, CAFA may only be invoked if the proposed class contains at least 100 members. 28 U.S.C. § 1332(d).

63.    "In determining the amount in controversy, courts first look to the complaint. Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." (*Id.*)

64.    Where a plaintiff alleges that a defendant has "adopted and maintained uniform policies, practices and procedures' that caused the purported violations of California's [laws] … [i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied." *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCx, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015). In that instance, "a 100% violation rate is not an unreasonable assumption to use in estimating the amount in controversy in light of the allegations in the complaint." *Id.*

65.    Here, Plaintiff proposes a class consisting of "[a]ll non-exempt employees of any of the Defendants who, at any time within the period beginning our years prior to the filing of this action through the date of judgment, worked on the construction of the California Flats Solar Project." (Complaint, ¶ 15.) Since the commencement

of the California Flats Solar Project ("Project"), there have been approximately 771 non-exempt employees who worked on the Project.

66.     Plaintiff alleges (1) failure to pay minimum wage, (2) failure to pay overtime wages, (3) failure to provide adequate wage statements, (4) failure to pay final wages at time of termination, (5) failure to indemnify, and (6) violations of the Private Attorney General Act ("PAGA").  More specifically, Plaintiff alleges that defendants did not pay class members for travel time between the security gate and the parking lot. (Complaint, ¶ 31, 32.)  This "travel time generally took between 35 and 45 minutes or more each way."  (*Id.*, ¶ 33.)

67.     These class allegations put well more than $5 million in controversy.  First, the complaint puts well more than $5 million in controversy.  Plaintiff claims that the putative class is entitled to waiting time penalties pursuant to Cal. Lab. Code Section 203, which provides that employees may recover up to 30 days' wages if an employer willfully fails to pay all wages owing at the time of termination. (Complaint, ¶ 54.)  Plaintiff expressly seeks 30 days of penalties for each class member who is a former employee.  (Complaint, ¶ 56.)  The statute of limitations for a Section 203 claim is three years.  *Jones v. Tween Brands, Inc.*, 2014 WL1607636, *2 (Apr. 22, 2014).

68.     As of the date of the removal, approximately 747 have been terminated on the project. (Kriegshauser Decl., ¶ 6.) The average rate of pay for class members was $37.42 per hour.  (Kriegshauser Decl., ¶ 7.) If these 747 class members received 30 days of pay, then wages would be owed in the amount of $6,708,657.60 (747 former employees x $37.42 x 8 hours x 30 days).

69.     Accordingly, Plaintiff's claim for Section 203 waiting time penalties alone surpasses the $5 million minimum amount in controversy threshold.  This is without factoring in the class claims for overtime wages or wage statement penalties.

70.     Defendants do not concede Plaintiff's claims have any merit, however, when the relief sought on behalf of the putative class is taken as a whole, the amount in controversy for plaintiff's class claims more likely than not is in excess of the $5 million jurisdiction requirement, exclusive of interest and costs.  Thus, this court has original jurisdiction over the claims asserted by plaintiff in this action based on diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332(d)(2) and 1441(a).  *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs.")  Accordingly, the potential amount in controversy is in excess of the $5 million threshold for CAFA jurisdiction.

71.     This Notice of Removal is timely because it is filed within 30 days of service of the Complaint on June 1, 2017.  See Exhibit "B."

72.     The consent of the other defendants is not required for removal under 28 U.S.C.  § 1453(a)-(b).

73.     In compliance with 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on all parties of record, including all adverse parties, and will be filed with the Clerk of the Superior Court of the State of California for the County of Monterey. (Exhibit "H")

74.     The proper venue for removal is "to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As this Court embraces the County of Monterey, which is in the San Jose Division, removal to this Court is proper. 28 U.S.C. § 1446(a).

75.     In compliance with 28 U.S.C. § 1446(a), "all process, pleadings, and orders served upon" First Solar, Inc. and/or filed in State Court are attached hereto as Exhibits "A" through "E" and "H" through "J".  28 U.S.C. § 1446(a)

76.     No exceptions to CAFA jurisdiction apply.

## C.

## FEDERAL QUESTION JURISDICTION REMOVAL

77.     The facts alleged in paragraphs 78 through 95, below, where true at the time the complaint was filed and at the time this notice is filed.

78.     This Court has original jurisdiction of this action under 28 U.S.C. § 1331, and this case can be removed pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action that presents a federal question under Labor Management Relations Act § 301, 29 U.S.C. §185 ("Section 301").   State-law claims can be removed to federal court where the claims are governed or completely pre-empted by Section 301. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). A civil action that is completely pre-empted by section 301 may be removed to federal court even where no Section 301 claim appears on the face of the Complaint. *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1096-97 (N.D. Cal. 2014).

79.     Federal question jurisdiction under Section 301 arises (1) where the plaintiff asserts a claim based upon a right conferred upon employees by a collective bargaining agreement ("CBA"), or (2) where the resolution of plaintiff's state-law claims are substantially dependent on the interpretation of a CBA. *Firestone v. So. Cal. Gas Co*., 219 F.3d 1063, 1065 (9th Cir. 2000); *Coria*, 63 F.Supp. 3d at 1098.  Both grounds for asserting jurisdiction under Section 301 apply here.

80.     At all material times, Sachs Electric Company, Inc. was and is an employer engaged in commerce and in an industry affecting commerce, and its activities have and do affect commerce within the meaning of Section 301.

81.     At all material times, First Solar, Inc. was and is an employer engaged in commerce and in an industry affecting commerce, and its activities have and do affect commerce within the meaning of Section 301.

82.    At all material times, California Flats Solar, LLC was and is an entity engaged in commerce and in an industry affecting commerce, and its activities have and do affect commerce within the meaning of Section 301.

83.    Sachs Electric Company, Inc. employed Griffin at the project until March 3, 2017.   At all times during his employment, there was in effect a collective bargaining agreement ("CBA") known as the Project Labor Agreement ("PLA") for the California Flats Solar Project, a true and correct copy of which is attached as Exhibit "F."   The PLA was and is an agreement between employers and labor organizations in an industry affecting commerce within the meaning of Section 301.

84.    Each of the employers who is signatory or bound to the PLA was and is an employer engaged in commerce and in an industry affecting commerce, and its activities have and do affect commerce within the meaning of Section 301.

85.    Each of the Unions that is signatory or bound to the PLA was and is a labor organization representing employees in an industry affecting commerce within the meaning of Section 301.

86.    The PLA requires that employees, including Plaintiff, who have, are, or will perform work on the Project be employed in accordance with each of the non-conflicting terms of the applicable Union's Master Labor Agreement.

87.    The Inside Agreement between the Monterey Bay California Chapter of the National Electrical Contractors Association and IBEW, Local 234 ("Local 234 CBA") is one of the Master Agreements that is incorporated into the PLA.  A true and correct copy of the Local 234 CBA is attached as Exhibit "G."   Each of the incorporated Master Labor Agreements, including the Local 234 CBA, was and is an agreement between an employer and a labor organization in an industry affecting commerce within the meaning of Section 301.

88.    At all times when it performed or will perform work on the Project, Sachs Electric Company, Inc. was and is bound the PLA with respect to work that

21

is covered by the PLA.

89.    At all times while Sachs Electric Company, Inc. employed him, and when Griffin performed work covered by the PLA, Griffin's terms and conditions of employment were comprehensively defined by the PLA and by the incorporated Master Labor Agreement that was applicable to that work, including the Local 234 CBA. Local 234 represented Griffin when Griffin performed work covered by the PLA and/or the Local 234 CBA.

90.    At all times when Unpaid Wages Class members and Termination Pay Sub-Class members performed work covered by the PLA, each class member's terms and conditions of employment was defined by the PLA and by the applicable Master Labor Agreement. In addition, the PLA allows for the development and implementation of Project rules.  Those rules become part of the PLA's terms and conditions of employment for employees who perform work covered by the PLA. The Project rules are governed by Section 301.

91.    Here, Griffin asserts six class-action claims and three individual claims against each of the defendants.  As to the class-action claims, Griffin alleges a failure to pay compensation, a failure to furnish itemized wage statements, a failure to pay timely upon termination, a failure to indemnify business expenses, and a violation of Cal. Bus. & Prof. Code § 17203, and seeks the recovery of penalties under the California Private Attorney General Act.  As the allegations of the class-action claims are incorporated into the individual claims, each of the individual claims is pre-empted by Section 301.

92.    Certain class-action claims stated above are derived from the allegations set forth in paragraphs 29, 30, 31, 32 and 33 of the Complaint.  Therein, Griffin alleges that the time spent by class members traveling from a security gate to the Project's parking lot and back again was and is compensable time. The distance between the security gate and the Project's parking lot is alleged to be fourteen miles. Each of the

defendants is alleged to be liable for the claims because they each controlled and managed the Project.  Additionally, each of the defendants is alleged to have created, defined, and managed work-related agreements and policies, the training of workers, wages, hours of work, access to the land, and supervisory personnel, among other things.  As the PLA defines the covered employees' terms and conditions of employment when working on the Project, Griffin is making claims based upon rights created by the PLA.

93.    Griffin cannot avoid Section 301 pre-emption by artful pleading that conceals the true nature of his claims. *Young v. Anthony's Fish Grottos, Inc*., 830 F.2d 993, 997 (9th Cir. 1983).  Thus, removal is allowed even though Griffin does not refer in his Complaint to the aforementioned collective-bargaining agreements.  *Milne Employees Ass'n v. Sun Carriers, Inc*., 960 F.2d 1401, 1402 (9th Cir. 1991).  An artfully plead Section 301 claim is recharacterized as a federal claim under  Section 301 and is removable because such recharacterized claims are deemed to arise under federal law. *Caterpillar*, 482 F.2d at 393.

94.    The following is a non-exhaustive list of circumstances where one or more of the collective-bargaining agreements referred to above will have to be interpreted in order to resolve Griffin's and other class members' claims. <u>PLA Coverage</u>.  By virtue of section 2.1, the PLA applies only to on-site construction work.  The PLA neither defines the Project's geographic parameters, nor does it define the term "on-site construction." The Court will have to interpret what the parties meant by "on-site construction" to determine whether the traveling from the security gate to the Project's parking lot is "on-site construction" covered by the PLA, the Local 234 CBA, or by no agreement at all.

<u>Defendant's Joint Liability</u>.  Defendants First Solar, Inc. and California Flats Solar, LLC are not signatories to the PLA or to the Local 234 CBA. The circumstances under which a non-signatory employer can be deemed liable for breaches of a

collective-bargaining agreement is a question of federal law under Section 301. Section 2.08 of the Local 234 CBA defines the circumstances where a non-signatory entity can be deemed bound to its terms. Like Section 2.1 of the PLA, Section 2.08 of the Local 234 CBA states that it is limited to on-site construction work. The Local 234 CBA does not define the term "on-site construction." The Court will have to interpret what the parties meant by "on-site construction" to determine whether Section 2.08 applies to these non-signatory entities. Additionally, under Section 2.08, a non-signatory entity is liable only where it directly or indirectly controls the terms and conditions of employment. Section 2.08 must be interpreted to determine whether First Solar, Inc. and California Flats Solar, LLC alleged actions meet Section 2.08's definition of control.

Liability Under Labor Code § 2810.3. The Complaint alleges that Sachs Electric Company, Inc. is a labor contractor which furnished employees to First Solar, Inc. and California Flats Solar, LLC which are client employers. However, Section 5.3 of the PLA, and the Master Labor Agreements, including the Local 234 CBA, set the exclusive hiring practices for the Project under which the Unions are The exclusive means of referral of employees to Sachs Electric Company, Inc. and other employers. Those provisions will need to be interpreted to determine whether Labor Code Section 2810.3 applies here.

Union Jurisdiction and Wage Rate For Travel Time. Article 9 of the PLA governs the assignment to each signatory union of the work tasks over which it has jurisdiction. State and federal law permit a different rate to be applied to travel time. Work assignments for each of the signatory unions are set forth in Attachment B to the PLA. Attachment B does not refer to travel time. Assuming the travel time here is covered work, the PLA will have to be interpreted to determine which signatory union has jurisdiction over travel time and to determine which wage rate would apply to travel time.

Overtime.  The Complaint seeks "all overtime worked at the correct rates." The PLA and the Local 234 CBA contain overtime rates that are more generous to the employees than state or federal law.  For example, under Section 3.01(b) of the Local 234 CBA, overtime must be paid for hours worked before and after the scheduled work day, on Saturdays, Sundays, and holidays.  Therefore, by making a claim for overtime at the correct rates, Griffin is making a claim for overtime based upon a right created by a collective-bargaining agreement.  Also, computation of overtime requires a determination of the employees' pay rate.  The PLA and the Local 234 CBA, and other incorporated Master Agreements, set forth a number of classifications with different rates assigned to those classifications based upon the work performed. The PLA and the Master Agreements must be interpreted to determine which classification applies to the work each employee performed.

Travel Time Rules.  There are established rules for traveling to and from the Project.  These rules are authorized by the PLA and are part of the PLA.  These rules must be interpreted to determine the presence of sufficient employer control over the employees to render travel time compensable.

95.    Based upon the above, all or some of Plaintiff's claims are completely preempted by Section 301 and present grounds for removal, under federal question jurisdiction.

## SUPPLEMENTAL JURISDICTION

If this Court does not have removal or original jurisdiction over some of the claims for relief, this Court has supplemental jurisdiction over such claims for relief under 28 U.S.C. § 1367, in that such claims for relief are so related to the claims in the action over which original or removal of jurisdiction exists that they form part of the same case or controversy under Article III of the United States Constitution.

## CONCLUSION

For the foregoing reasons, First Solar, Inc. and California Flats Solar, LLC remove this Action to this Court and request that this Court issue all necessary orders and process, and grant such other and further relief that Defendants may be entitled to receive.

RESPECTFULLY SUBMITTED,

SLOVAK BARON EMPEY MURPHY & PINKNEY LLP

Dated:            /s/_____
                     Stephen J. Schultz, Esq.
                     Attorneys for Defendants First Solar, Inc. and
                     California Flats Solar, LLC

PACIFIC EMPLOYMENT LAW, LLP

Dated:            /s/_____ _
                     Maureen K. Bogue, Esq.
                     Attorney for Defendants First Solar, Inc.,
                     California Flats Solar, LLC

## CONSENT OF SACHS ELECTRIC COMPANY, INC. TO JOIN IN REMOVAL

Sachs Electric Company, Inc. hereby consents to join in the Notice of Removal and removal of this action to this Court.

Dated:            /s/_____
                     Daniel B. Chammas, Esq., SBN 204825
                     Ford & Harrison, LLP
                     350 South Grand Avenue, Suite 2300
                     Los Angeles, CA  90071
                     Attorneys for Sachs Electric Company, Inc.
                     dchammas@fordharrison.com

1

## INDEX OF EXHIBITS

2

3      Exhibit "A"        Copy of Complaint;

4

5      Exhibit "B"        Summonses showing dates of service served on
                          First Solar, Inc.;
6                         California Flats Solar, LLC; and
                          Sachs Electric Company, Inc.;
7

8      Exhibit "C"        Notice of Case Assignment;

9
       Exhibit "D"        Alternate Dispute Resolution
10                        Information Packet;

11
       Exhibit "E"        Civil Cover Sheet;
12

13     Exhibit "F"        Project Labor Agreement for the California
                          Flats Solar Project;
14

15     Exhibit "G"        2015-2018 I.B.E.W. Local 234 Master Labor
                          Agreement;
16

17     Exhibit "H"        Notice to Parties and State Court of Filing
                          Of Notice of Removal;
18

19
       Exhibit "I"        Answer and Affirmative Defenses Filed in
20                        State Court by Sachs Electric Company, Inc.;

21     Exhibit "J"        Copy of First Amended Complaint

22

23

24

25

26

27

28

NOTICE OF REMOVAL

**CERTIFICATE OF SERVICE**

I, Susan Sartain, certify and declare as follows:

I am a citizen of the United States and a resident of the State of California. I am over the age eighteen years, and not a party to the within action. I am employed in the County of Riverside, State of California with the law firm of Slovak Baron Empey Murphy & Pinkney, LLP.  My business address is 1800 E. Tahquitz Canyon Way Palm Springs, CA   92262.   My email address is sartain@sbemp.com.

On June 30, 2017, I served the: *Class Action Defendants First Solar, Inc. And California Flats Solar, LLC's Notice Of Removal Under 28 U.S.C. § 1441(A) Based On: (Diversity Of Citizenship, 28 U.S.C. § 1332(A)); (Class Action Fairness Act,28 U.S.C. § 1332(D)); And (Federal Question, 28 U.S.C. § 1331)* on all interested parties as follows:

*See Attached Service List*

(By UPS OVERNIGHT) I am "readily familiar" with the firm's business practice of  for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to facility regularly maintained by UPS for overnight delivery.

I declare that I am employed by a member of the bar of this Court at whose direction the service was made.

Executed on June 30, 2017, at Palm Springs, California.

_____
Susan Sartain

*Service List:*

| | |
|---|---|
| *Attorneys for Plaintiff:*<br>Peter R. Dion-Kindem, Esq.,<br> SBN 95267<br>THE DION-K1NDEM LAW FIRM<br>21550 Oxnard Street, Suite 900<br>Woodland Hills, CA 91367<br>Telephone⁻. (818) 883-4900<br>Facsimile: (818) 883-4902<br>Email:  peter@dion-kindemlaw,com | *Attorneys for Plaintiff:*<br>Lonnie C Blanchard, III, Esq.,<br>SBN 93530<br>THE  BlANCHARD  LAW  GROUP,<br>APC<br>3311 East Pico Blvd.<br>Los Angeles., CA 90023<br>Telephone: (213) 599-8255<br>Facsimile: {213) 402-3949<br>Email:  lonnieblanchard@gmail.com |
| *Attorney for Plaintiff*<br>Jeff Holmes,. Esq., SBN 100891<br>HOLMES LAW GROUP, APC.<br>3311 East Pico Blvd.<br>Los Angeles, CA 90023<br>Telephone: (310) 396-9045<br>Facsimile: (970) 497-1922<br>E-mail: jeffholmesjh@gmail.com | |
| *Attorney for Defendants*<br>*First Solar, Inc. and California Flats*<br>*Solar, LLC*<br>Maureen K. Bogue, Esq.<br>Pacific Employment Law, LLP<br>101  California Street, Ste. 2300<br>San Francisco, CA  94111<br>Telephone:  415-985-7307<br>Facsimile:  415-985-7301<br>Email:<br>maureen@pacificemploymentlaw.com | |

NOTICE OF REMOVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 4/27/2017 3:31:53 PM
By: Jessica Ray, Deputy

1

PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.

2

3   21550 Oxnard Street, Suite 900
    Woodland Hills, California 91367

4   Telephone:    (818) 883-4900
    Fax:          (818) 883-4902

5   Email:        peter@dion-kindemlaw.com

6   LONNIE C. BLANCHARD, III (SBN 93530)

7   THE BLANCHARD LAW GROUP, APC
    3311 East Pico Boulevard

8   Los Angeles, CA 90023
    Telephone:    (213) 599-8255

9   Fax:          (213) 402-3949
    Email:        lonnieblanchard@gmail.com

10

11  JEFF HOLMES (SBN 100891)
    HOLMES LAW GROUP, APC

12  3311 East Pico Boulevard
    Los Angeles, CA 90023

13  Telephone:    (310) 396-9045
    Fax:          (970) 497-4922

14  Email:        jeffholmesjh@gmail.com

15
    Attorneys for Plaintiff Justin Griffin

16

17          SUPERIOR COURT OF THE STATE OF CALIFORNIA

18                  FOR THE COUNTY OF MONTEREY

19

20  Justin Griffin, an individual, on behalf of himself       Case No. 17CV001525
    and all others similarly situated,                         CLASS ACTION
21

22          Plaintiff,                                         Complaint for:

23      vs.                                                    1.  Failure to Pay Compensation Due
                                                               2.  Failure to Furnish Itemized Wage
24  Sachs Electric Company, a Missouri corporation;                Statements
    First Solar, Inc., a Delaware corporation;
25  California Flats Solar, LLC, a Delaware Limited            3.  Failure to Pay Wages Timely upon
    Liability Company, and Does 1 through 10,                      Termination
26                                                             4.  Failure to Indemnify Business
            Defendants.                                            Expenses
27                                                             5.  Violation of Cal. Business &

28

                                        Complaint
                                            1

Professions Code Section 17203
6. **Recovery of Civil Penalties pursuant to the California Private Attorney General Act**

**INDIVIDUAL CLAIMS**

7. **Violation of California Government Code § 12940**
8. **Intentional Infliction of Emotional Distress**
9. **Wrongful Termination in Violation of Public Policy**

**Demand for Jury Trial**

Plaintiff Justin Griffin ("Plaintiff"), individually, on behalf of all other persons similarly situated and as representative of other class members, alleges:

1. Plaintiff is a resident of California and was primarily employed in Monterey County by Defendants as a non-exempt employee.

2. Defendant First Solar, Inc. ("First Solar") is a Delaware corporation registered with the Secretary of State of California with its entity address listed as 350 West Washington Street, Suite 600, Tempe, Arizona 85281.

3. Defendant California Flats Solar, LLC ("California Flats Solar") is a Delaware corporation registered with the Secretary of State of California with its entity address listed as 350 West Washington Street, Suite 600, Tempe, Arizona 85281.

4. Defendant Sachs Electric Company ("Sachs") is a Missouri corporation registered with the Secretary of State of California with its entity address listed as 1572 Larkin Williams Road, Fenton, Missouri.

5. First Solar and California Flats Solar were involved in the construction and development of photovoltaic ("PV" or "Solar") power projects, including the California Flats Solar Project ("Project"). Such activities fell within the usual course of business of First Solar and California Flats Solar.

6. Labor Code Section 2810.3(a)(1)(A) provides in relevant part:

Complaint

2

1    "Client employer" means a business entity, regardless of its form, that obtains or is
2    provided workers to perform labor within its usual course of business from a labor
     contractor.

3  7.   Labor Code 2810.3(a)(3) provides in relevant part:

4        "Labor contractor" means an individual or entity that supplies, either with or without a
5        contract, a client employer with workers to perform labor within the client employer's
         usual course of business.

6

7  8.   Sachs supplied Plaintiff and other workers to First Solar and California Flats Solar for the

8       California Flats Solar Project. Sachs was a "labor contractor" and First Solar and California Flats

9       Solar were "client employers" pursuant to Section 2810.3.

10 9.   Labor Code Section 2810.3(b) provides in relevant part:

11       (b) A client employer shall share with a labor contractor all civil legal responsibility and
         civil liability for all workers supplied by that labor contractor for both of the following:

12            (1) The payment of wages...

13 10.  Section 2(H) of the applicable Wage Order defines an employer as follows:

14       [A]ny person as defined in Section 18 of the Labor Code, who directly or indirectly, or
15       through an agent or any other person, employs or exercises control over the wages, hours,
         or working conditions of any person.

16 11.  First Solar, California Flats Solar and Sachs also acted as co-employers and/or joint employers of

17      Plaintiff and the Class members. First Solar and California Flats Solar are the owners, operators,

18      and developers of the Project on which Plaintiff and the other Plaintiff Class members worked.

19      Among other things, First Solar and California Flats Solar:

20      a.    controlled the Project site;

21      b.    defined and managed the construction on the Project, including but not limited to design,

22            work flow and scheduling;

23      c.    created, defined and managed the work-related agreements related to the Project;

24      d.    created, defined and managed training for workers on the Project;

25      e.    created, defined and managed policies and procedures for workers on the Project,

26            including but not limited to environmental, safety and transportation rules;

27

28

Complaint
3

f.    created, defined and managed the wages of workers on the Project;

g.    created, defined and managed the hours for workers on the Project;

h.    created, defined and managed the working conditions of the Project;

i.    controlled the access to and the land and roads at the Project;

j.    operated the mandatory on site, badge and security process/procedure/system for the Project;

k.    conducted at least part of the orientation process for Plaintiff and Class members;

l.    maintained vehicles on the Project;

m.    maintained the work quality control and quality assurance for the Project; and

n.    maintained supervisory personnel on the Project.

12.  Plaintiff does not presently know the true names and capacities of the defendants named as Does I through 10 and therefore sues such defendants by these fictitious names. Plaintiff believes that the Doe Defendants are persons or entities who are involved in the acts set forth below, either as independent contractors, suppliers, agents, servants or employees of the known defendants, or through entering into a conspiracy and agreement with the known Defendants to perform these acts, for financial gain and profit, in violation of Plaintiff's and class members' rights. Plaintiff will request leave of Court to amend this Complaint to set forth their true names, identities and capacities when Plaintiff ascertains them.

13.  Each of the Defendants has been or is the principal, officer, director, agent, employee, representative and/or co-conspirator of each of the other defendants and in such capacity or capacities participated in the acts or conduct alleged herein and incurred liability therefor. At an unknown time, some or the Defendants entered into a conspiracy with other of the Defendants to commit the wrongful acts described herein. These wrongful acts were committed in furtherance of such conspiracy. Defendants aided and abetted each other in committing the wrongful acts alleged herein. Each of the Defendants acted for personal gain or in furtherance of their own financial advantage in effecting the acts alleged herein.

14. The named Defendants and the Doe defendants are hereinafter referred to collectively as "Defendants."

## CLASS ACTION ALLEGATIONS

15. Plaintiff brings the first five causes of action for himself and on behalf of a class and sub-class initially defined as follows:

### Unpaid Wages Class

All non-exempt employees of any of the Defendants who, at any time within the period beginning four years prior to the filing of this action through the date of judgment, worked on the construction of the California Flats Solar Project.

### Termination Pay Sub-Class

All members of the Unpaid Wages Class whose employment terminated at any time within the period three years prior to the filing of this action through the date of judgment.

16. The term "Class members" includes the Plaintiff and all Plaintiff Class members.

17. During all or a portion of the class period, Plaintiff and Class members were employed by Defendants in California.

18. Numerosity. The number of Class members is so numerous that joinder of all members is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice. Plaintiff believes there are more than 100 Class members.

19. Existence and Predominance of Common Questions of Law and Fact. Common questions of law and fact exist as to all Class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

a.    Whether Defendants paid Plaintiff and Class members for all hours worked;

b.    Whether Defendants paid Plaintiff and Class members all properly calculated overtime due them;

EXHIBIT "A" PAGE 35

c.    Whether Defendants' conduct in failing to pay all wages due Plaintiff and Class members was willful or reckless;

d.    Whether Defendants violated Labor Code Section 226 by failing to timely furnish Plaintiff and Class members accurate wage statements;

e.    Whether Defendants failed to timely pay all wages due to Plaintiff and Class members upon the termination of their employment;

f.    Whether Defendants failed to indemnify Plaintiff and Class members for all business expenses for which Defendants were responsible;

g.    Whether Defendants engaged in unfair competition in violation of California Business & Professions Code Section 17200, *et seq.*; and,

h.    The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

20.    **Typicality.** Plaintiff's class claims are typical of the claims of the Class members. Plaintiff and all Class members sustained injuries and damages arising out of Defendants' common course of conduct in violation of the law as alleged herein. Plaintiff is entitled to the same relief under the class action causes of action as the Class members.

21.    **Adequacy.** Plaintiff will adequately and fairly protect the interest of the Class members. Plaintiff was employed by the Defendants at times during the Class Period and is an adequate representative for the Class members because Plaintiff has no interest adverse to the interests of the Class members and Plaintiff has retained legal counsel with substantial experience in civil litigation, employment law and class action litigation. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class members.

22.    **Superiority.** A class action is superior to other available means of fair and efficient adjudication of the claims of the Class members. Joinder of all Class members is impractical. Class action treatment will allow numerous similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and

Complaint

6

expense that numerous individual actions would cause to such Plaintiffs or to the court system. Further, the damages of many Class members may be relatively small, and the burden and expenses of individual litigation would make it difficult or impossible for individual members of the class to seek and obtain relief, while a class action will serve an important public interest. Furthermore, questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Individual litigation would present the potential for inconsistent or contradictory judgments. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in one case.

**Claim for Relief No. 1**
**Failure to Pay Wages for Hours Worked**
**(Against All Defendants)**

23.    Plaintiff realleges the preceding paragraphs.

**Failure to Pay at Least Minimum Wage for Each Hour Worked**

24.    Labor Code Section 1197 in relevant part provides:

The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.

25.    Paragraph 4 of the applicable Wage Order provides in relevant part:

(A) Every employer shall pay to each employee wages not less than nine dollars ($9.00) per hour for all hours worked, effective July 1, 2014, and not less than ten dollars ($10.00) per hour for all hours worked, effective January 1, 2016.

(B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

26.    Defendants failed to pay Plaintiff and Class members for all hours worked, for overtime hours worked, and for other compensation due them under California law.

27.    Under California law, "hours worked" is the time during which an employee is subject to the

Complaint

7

control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

28. In addition, paragraph 5(A) of the applicable Wage Order (No. 16) provides:

(A) All employer-mandated travel that occurs after the first location where the employee's presence is required by the employer shall be compensated at the employee's regular rate of pay or, if applicable, the premium rate that may be required by the provisions of Labor Code Section 510 and Section 3, Hours and Days of Work, above.

29. The first location where Defendants required Plaintiff and Class members' presence was a security gate on the Project. Defendants required Plaintiff and Class members to arrive at a security gate controlled by Defendants at the Project at the beginning of their shifts. This was the only way that Plaintiff and Class members could gain access to the Project. Defendants required Plaintiff and Class members to have their personal employee badges scanned ("badged in") by a person employed by Defendants at the security gate. From the time that Plaintiff and Class members badged in at this security gate until they badged out through the security gate at the end of their workday, they were under Defendants' control and were restricted by Defendants' rules, processes, procedures and supervision.

30. After Plaintiff and Class members were "badged in" at the security gate, they were then required to travel approximately 14 miles along a route designated by Defendants, at a slow speed limit designated by Defendants, and using non-public roads controlled by Defendants to reach a parking lot controlled by Defendants and arrive by a specific time designated by Defendants. Plaintiff and Class members were not able to use this time travel time effectively for their own purposes.

31. When they arrived at the parking lot, Plaintiff and Class members were required to locate their crew and take company buggies arranged by Defendants to the specific locations where they would continue their work for the day. Once at this location, foremen or other supervisory personnel would input Plaintiff and Class members' "start time" onto a timesheet, even though Plaintiff and Class members had been under Defendants' control from the time they arrived at

the security gate. Plaintiff and Class members were required to sign off on that "start time." The time input by foremen and/or other supervisory personnel on the timesheets was the designated parking lot meeting time and did not reflect the actual time Plaintiff and Class members arrived at Defendants' security gate and were required to badge in, nor did it reflect the time that Plaintiff and Class members were required to travel from the security gate to the parking lot.

32. At the end of the workday, Plaintiff and Class members were required to initial a timesheet with a clock-out time that was filled out by foremen or other supervisory personnel. This clock-out time reflected the scheduled end of work time rather than the actual end of work time. This time did not accurately reflect the mandatory and controlled travel time spent by Plaintiff and Class members from the parking lot to the security gate, where their badges were again swiped by one of Defendants' employees ("badging out").

33. As detailed above, Defendants controlled Plaintiff and Class members during the mandated travel time before and after their scheduled shifts. This travel time generally took between 35 and 45 minutes or more each way.

34. Plaintiff and Class members were entitled to be paid the regular rate of pay (or at least the minimum wage) for all non-overtime hours worked for Defendants, including the time from when they passed through the security gate and traveled to the parking lot and when they traveled from the parking lot to the security gate.

35. In violation of Section 1197 and Paragraph 4 of the applicable Wage Order, Defendants did not pay class members at least the minimum wages and/or regular time wages for all hours worked.

36. Labor Code Section 1194.2 in relevant part provides:

> In any action under Section 1193.6 or Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Nothing in this subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation.

37. Plaintiff and Class members are also entitled to liquidated damages pursuant to Labor Code Section 1194.2.

Complaint

**Failure to pay Overtime Wages**

38.   Labor Code Section 510 provides in relevant part:

(a) Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

39.   Paragraph 3 of the applicable Wage Order provides in relevant part:

3. HOURS AND DAYS OF WORK

(A) Daily Overtime - General Provisions

(1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:

(a) One and one-half (11/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and

(b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

40.   Plaintiff and class members worked over eight hours in a day and/or more than 40 hours in a week and/or seven or more consecutive days. Defendants failed to correctly compensate Plaintiff and class members for all overtime worked at the correct rates in violation of California Labor Code Section 510 and Paragraph 3 of the applicable Wage Order.

41.   Labor Code Section 1194 in relevant part provides:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of

Complaint

10

1    this minimum wage or overtime compensation, including interest thereon, reasonable
2    attorney's fees, and costs of suit.

3    42.    Labor Code Section 218.6 in relevant part provides:

4    In any action brought for the nonpayment of wages, the court shall award interest on all
     due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289
5    of the Civil Code, which shall accrue from the date that the wages were due and payable
     as provided in Part 1 (commencing with Section 200) of Division 2.
6

7    43.    Plaintiff has incurred and is entitled to attorney's fees, costs and interest.

8                                **Claim for Relief No. 2**
                    **Wage Statement and Record-Keeping Violations**
9                            **(Against All Defendants)**

10   44.    Plaintiff realleges the preceding paragraphs.

11   45.    Labor Code Section 226 provides in relevant part:

12   (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish
     each of his or her employees, either as a detachable part of the check, draft, or voucher
13   paying the employee's wages, or separately when wages are paid by personal check or
     cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total
14   hours worked by the employee, except for any employee whose compensation is solely
     based on a salary and who is exempt from payment of overtime under subdivision (a) of
15   Section 515 or any applicable order of the Industrial Welfare Commission, (3) the
     number of piece-rate units earned and any applicable piece rate if the employee is paid on
16   a piece-rate basis, (4) all deductions, provided that all deductions made on written orders
     of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the
17   inclusive dates of the period for which the employee is paid, (7) the name of the
     employee and only the last four digits of his or her social security number or an employee
18   identification number other than a social security number, (8) the name and address of the
     legal entity that is the employer and, if the employer is a farm labor contractor, as defined
19   in subdivision (b) of Section 1682, the name and address of the legal entity that secured
     the services of the employer, and (9) all applicable hourly rates in effect during the pay
20   period and the corresponding number of hours worked at each hourly rate by the
21   employee and, beginning July 1, 2013, if the employer is a temporary services employer
     as defined in Section 201.3, the rate of pay and the total hours worked for each temporary
22   services assignment. The deductions made from payment of wages shall be recorded in
     ink or other indelible form, properly dated, showing the month, day, and year, and a copy
23   of the statement and the record of the deductions shall be kept on file by the employer for
     at least three years at the place of employment or at a central location within the State of
24   California. For purposes of this subdivision, "copy" includes a duplicate of the itemized
     statement provided to an employee or a computer-generated record that accurately shows
25   the information required by this subdivision.
26

27   . . .

28

                                    Complaint
                                        11

(e)(1) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

(2)(A) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.

(B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:

(i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).

(ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period. Nothing in this subdivision alters the ability of the employer to aggregate deductions consistent with the requirements of item (4) of subdivision (a).

(iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.

(iv) The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

(C) For purposes of this paragraph, "promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information. . . .

46.   California Labor Code Section 1174 provides in relevant part:

Every person employing labor in this state shall:

. . . (d) Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned.

47.    Paragraph 6 of the applicable Wage Order provides in relevant part:

### 6. RECORDS

(A) Every employer who has control over wages, hours, or working conditions shall keep accurate information with respect to each employee, including the following: (1) The employee's full name, home address, occupation, and social security number. The employee's date of birth, if under 18 years of age, and designation as a minor. Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals, and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded. (2) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee. (3) Total hours worked during the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request. When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.

(B) Every employer who has control over wages, hours, or working conditions shall semimonthly or at the time of each payment of wages furnish each employee an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item. (See Labor Code Section 226.) This information shall be furnished either separately or as a detachable part of the check, draft, or voucher paying the employee's wages.

(C) All required records shall be in the English language and in ink or other indelible form, dated properly, showing month, day and year. The employer who has control over wages, hours, or working conditions shall also keep said records on file at the place of employment or at a central location for at least three years. An employee's records shall be available for inspection by the employee upon reasonable request.

(D) Employers performing work on public works projects should refer to Labor Code Section 1776 for additional payroll reporting requirements.

48.    Labor Code Section 1174.5 provides:

Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

49.    Defendants knowingly and intentionally, as a matter of uniform policy and practice, failed to

maintain and furnish Plaintiff and Class members with accurate and complete wage statements

regarding their gross wages earned, total hours worked, total net wages earned, and all applicable

Complaint

13

hourly rates in effect, *inter alia*, in violation of Labor Code Sections 226 and/or 1174.

50. Defendants' failure to furnish Plaintiff and Class members with complete and accurate itemized wage statements resulted in actual injury because such failures led to, among other things, the non-payment of all their regular and overtime wages and deprived them of the information necessary to identify the discrepancies in Defendants' reported data.

51. Plaintiff and the other Class members are entitled to damages and/or penalties pursuant to Labor Code Section 226.

**Claim for Relief No. 3**
**Failure to Pay Waiting Time Wages Pursuant to Labor Code Section 203**
**(Against All Defendants)**

52. Plaintiff realleges the preceding paragraphs.

53. Labor Code Section 201 in relevant part provides:

> (a) If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately. . . .

54. Labor Code Section 202 in relevant part provides:

> (a) If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting...

55. Labor Code Section 203 provides in relevant part:

> (a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. . .

> (b) Suit may be filed for these penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise.

56. The employment of Plaintiff and certain Class members with Defendants terminated.

57. When the employment of Plaintiff and certain Class members terminated, Defendants violated Labor Code Sections 201 or 202 by willfully failing to pay the wages earned and unpaid that were due them, including wages due for regular hours worked and wages for overtime hours

Complaint
14

worked within the time required by Sections 201 or 202.

58. Labor Code Section 218.5 provides in relevant part:

> (a) In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. . . .

59. Plaintiff has incurred attorney's fees and costs in pursuing this claim.

**Claim for Relief No. 4**
**Violation of Labor Code Section 2802**
**(Against All Defendants)**

60. Plaintiff realleges the preceding paragraphs.

61. Labor Code Section 2802 in relevant part provides:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

> (b) All awards made by a court or by the Division of Labor Standards Enforcement for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions. Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss.

> (c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section...

62. In violation of Labor Code Section 2802, Defendants required Plaintiff and Class members to use their personal vehicles for on-site, employer-controlled, travel, but failed to reimburse them for all such mileage.

63. As a proximate result of Defendants' wrongful actions alleged above, Plaintiff and the class members have been damaged.

64. Plaintiff has incurred attorney's fees and costs in pursuing this claim.

**Claim for Relief No. 5**
**Violation of California Business and Professions Code Section 17200, *et seq*.**
**(Against All Defendants)**

65. Plaintiff realleges the preceding paragraphs.

Complaint
15

66. Business & Professions Code Section 17200 provides:

As used in this chapter, unfair competition shall mean and include any *unlawful, unfair* or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.) (Emphasis added.)

67. Defendants' violations of the Labor Code and Wage Order provisions set forth above constitute unlawful and/or unfair business acts or practices.

68. Business & Professions Code Section 17203 provides:

Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

69. Defendants have been unjustly enriched because of Defendants' unlawful and/or unfair business acts and/or practices.

70. Plaintiff, individually and on behalf of Class members, seeks restitution of money and/or property by which Defendants were unjustly enriched.

71. Plaintiff, individually, and on behalf of Class members, is further entitled to and seeks a declaration that the above-described business practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendants, and each of them, from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

72. Plaintiff and the Class members have no plain, speedy, and/or adequate remedy at law to redress the injuries that they have suffered because of Defendants' unfair, unlawful and/or fraudulent business practices.

73. If Defendants are not enjoined from the conduct alleged herein, they will continue to violate their legal obligations.

74. Plaintiff is entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5.

EXHIBIT "A" PAGE 46

**Cause of Action No. 6**
**For Recovery of Civil Penalties under the California Private Attorney General Act,**
**Labor Code Section 2698, *et seq.***
**(Against All Defendants)**

75. Plaintiff realleges the preceding paragraphs.

76. Pursuant to Labor Code Sections 2698, *et seq.*, the Private Attorney General Act of 2004 ("PAGA"), Plaintiff is entitled to recover civil penalties on behalf of himself and other persons who are or were employed by the alleged violator and against whom one or more of the alleged violations was committed. Plaintiff is pursuing civil penalties for violations of the Labor Code sections alleged herein.

77. Defendants, as alleged above, have committed Labor Code violations against Plaintiff and the other class members.

78. Plaintiff and the other class members seeks to recover all civil penalties recoverable under PAGA against Defendants, including without limitation penalties pursuant to Labor Code Sections 203, 210, 226.3, 256, 558, 1174.5, 1197.1, and 2699(f).

79. Plaintiff's attorney gave written notice by certified mail to the Labor and Workforce Development Agency ("LWDA") and to Defendants identifying violations set forth above, a copy of which is attached as Exhibit 1 hereto.

80. Labor Code Section 2699(g) provides that any "employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Plaintiff has incurred attorney's fees and costs in pursuing this claim.

**Claim for Relief No. 7**
**Violation of California Government Code § 12940**
**(Against All Defendants)**

81. Plaintiff realleges the preceding paragraphs.

**Harassment**

82. California Government Code § 12940(j)(1) in relevant part provides the following:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

Complaint

17

...

(i)(1) For an employer. labor organization. employment agency. apprenticeship training program or any training program leading to employment. or any other person. *because of race*. religious creed. color. national origin. ancestry. physical disability. mental disability. medical condition. genetic information. marital status. sex. gender. gender identity. gender expression. age. sexual orientation. or military and veteran status. to harass an employee. an applicant. an unpaid intern or volunteer. or a person providing services pursuant to a contract. Harassment of an employee. an applicant. an unpaid intern or volunteer. or a person providing services pursuant to a contract by an employee. other than an agent or supervisor, shall be unlawful if the entity. or its agents or supervisors. knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees. applicants. unpaid interns or volunteers. or persons providing services pursuant to a contract in the workplace. where the employer. or its agents or supervisors. knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees. the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those nonemployees shall be considered. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment. (Emphasis added.)

83. Plaintiff was mistreated because of his race.

84. Among other things, for example, Plaintiff was treated differently than other workers who were not African American, he was not chosen for certain jobs that were available to other workers who were not African American and he was not allowed to sit in the front seat of vehicles like other workers who were not African American. When Plaintiff complained about these things, Plaintiff was given a write up and forced to work with a different crew.

85. In retaliation for his complaints, on or about March 3, 2017, a superintendent accused Plaintiff of having left the job site mid-shift on March 1, 2017. Plaintiff did not go to work at all that day. The foreman claimed that Plaintiff had signed in and that they were unable to find him at the end of the day. He mentioned having spoken to Plaintiff that morning. By that time, there was a second African-American man on the crew. This man told Plaintiff that the foreman had talked to him (the other African American man) that morning, not to Plaintiff.

86. When Plaintiff asked to see his supposed sign-in signature and the electronic badge-in records, the foreman refused, telling Plaintiff he had to take up the matter with First Solar. When Plaintiff

EXHIBIT "A" PAGE 48

asked the foreman if he had confused him with the only other African-American on the crew, the foreman became defensive. Approximately four hours later, Plaintiff was given a write-up containing false allegations, which Plaintiff refused to sign. Plaintiff was then wrongfully terminated based on a pretext and in the absence of his union steward.

## Failure to Prevent Harassment

87. California Government Code § 12940(k) in relevant part provides the following:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
>
> ...
>
> (k) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

88. Plaintiff complained about the unfair treatment by his superiors.

89. Defendants knew or should have known that Plaintiff was being harassed because of his race.

90. Defendants failed to take all reasonable steps to prevent discrimination and/or harassment from occurring.

## Unlawful Retaliation

91. California Government Code § 12940(h) in relevant part provides:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
>
> ...
>
> (h) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part. (Emphasis added.)

92. Plaintiff complained about his unfair treatment to his supervisors, and directly questioned the behavior of supervisors who were discriminating against him.

93. Plaintiff was written up more than once and was terminated because of his complaints.

## Discrimination

94. Violation of California Government Code § 12940(a) provides in relevant part:

> It shall be an unlawful employment practice . . .:
>
> (a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

95. Defendants terminated Plaintiff because of his race and because of his demand to be treated fairly regardless of his race.

## Damages

96. As a proximate cause of the Defendants' wrongful acts, Plaintiff has suffered and continues to suffer damages, including lost wages, benefits, and certain other incidental, consequential expenses and losses, and general damages for humiliation, embarrassment, pain and suffering and/or emotional distress.

97. The individuals committing the wrongful acts alleged were the employees of Defendants and Defendants:

a.   had advance knowledge of the unfitness of the employee(s) and employed the employee(s) with a conscious disregard of the rights or safety of others,

b.   authorized or ratified the wrongful conduct alleged herein, and/or

c.   were personally guilty of oppression, fraud or malice based on the acts alleged herein in that the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an officer, director or managing agent of Defendants.

98. Plaintiff has incurred and will incur attorney's fees in prosecuting this claim and is entitled to an

award of attorney's fees under Government Code section 12965(b).

99.  Plaintiff filed a complaint with DFEH and received a right to sue letter on April 5, 2017.  (See Exhibit 2.)

**Claim for Relief No. 8**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

100.  Plaintiff realleges the preceding paragraphs.

101.  Defendants' conduct was extreme and outrageous and was intended to cause severe emotional distress and was done in conscious disregard of the probability of causing such distress.

102.  As a proximate cause of the Defendants' wrongful acts, Plaintiff has suffered and continues to suffer damages, including lost wages, benefits, and certain other incidental, consequential expenses and losses, and general damages for humiliation, embarrassment, pain and suffering and/or emotional distress.

103.  The individuals committing the wrongful acts alleged were the employees of Defendants and Defendants:

    a.  had advance knowledge of the unfitness of the employee(s) and employed the employee(s) with a conscious disregard of the rights or safety of others,

    b.  authorized or ratified the wrongful conduct alleged herein, and/or

    c.  were personally guilty of oppression, fraud or malice based on the acts alleged herein in that the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an officer, director or managing agent of Defendants.

**Claim for Relief No. 9**
**Wrongful Termination in Violation of Public Policy**
**(Against All Defendants)**

104.  Plaintiff realleges the preceding paragraphs.

105.  At all relevant times, there existed in the State of California a public policy against racial discrimination, harassment and retaliation. Defendants were aware and should have known of the

public policy. Despite this knowledge, Defendants harassed and allowed harassment on the job and discriminated against Plaintiff because of his race.

106. Plaintiff complained to Defendants about harassing and discriminatory behavior by his superiors.

107. Plaintiff also questioned Defendants' failure to pay employees for all time worked. On at least one occasion, Plaintiff complained to a General Foreman that he and other construction workers should be paid from the point at which they badged in at the security gate. In response, the General Forman told him that they (the construction workers) were on their own after the gate so they should not be paid.

108. Defendants terminated Plaintiff because of his race or because he had complained about Defendants' wrongful conduct, including Defendants' failure to pay for all regular time and overtime hours worked.

109. As a proximate cause of the Defendants' wrongful acts, Plaintiff has suffered and continues to suffer damages, including lost wages, benefits, and certain other incidental, consequential expenses and losses, and general damages for humiliation, embarrassment, pain and suffering and/or emotional distress.

110. The individuals committing the wrongful acts alleged were the employees of Defendants and Defendants:

    a.   had advance knowledge of the unfitness of the employee(s) and employed the employee(s) with a conscious disregard of the rights or safety of others,

    b.   authorized or ratified the wrongful conduct alleged herein, and/or

    c.   were personally guilty of oppression, fraud or malice based on the acts alleged herein in that the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an officer, director or managing agent of Defendants.

WHEREFORE, Plaintiff demands a jury trial and requests that judgment be entered against all Defendants as follows:

EXHIBIT "A" PAGE 52

1.  Certification of this action as a class action and the appointment of Plaintiff as the representative
    of the Classes and Plaintiff's counsel as Lead Counsel for the Class;

2.  Damages for unpaid wages including minimum wages, regular time wages and overtime wages;

3.  Compensatory damages according to proof;

4.  Waiting time penalties due pursuant to Labor Code Section 203;

5.  Penalties pursuant to Labor Code Section 226(e);

6.  Penalties pursuant to the PAGA;

7.  Restitution pursuant to Business & Professions Code Sections 17200, *et seq.*;

8.  Prejudgment interest;

9.  Reasonable attorneys' fees;

10. Costs as allowed by law;

11. A declaratory judgment that the practices complained of herein are unlawful under the Labor
    Code and/or the Unfair Competition Law and injunctive relief requiring termination or
    modification of the unlawful practices alleged;

12. Punitive damages according to proof;

13. Such other relief as this Court shall deem just and proper.

Dated: April 27, 2017          THE DION-KINDEM LAW FIRM

By: _____
    PETER R. DION-KINDEM, P.C.
    PETER R. DION-KINDEM
    Attorney for Plaintiff Justin Griffin

# Exhibit 1



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.

DIRECTOR KEVIN KISH

April 05, 2017

RE: **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 175638-282506
Right to Sue: Griffin / Sach Electric Company

Dear Complainant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer. You or your attorney must serve the complaint. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.

DIRECTOR KEVIN KISH

April 05, 2017

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 175638-282506
Right to Sue: Griffin / Sach Electric Company

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

April 05, 2017

Justin Griffin
C/o 3311 East Pico Boulevard
Los Angeles, California 90023

RE:  Notice of Case Closure and Right to Sue
DFEH Matter Number: 175638-282506
Right to Sue: Griffin / Sach Electric Company

Dear Justin Griffin,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective April
05, 2017 because an immediate Right to Sue notice was requested. DFEH will take no
further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

GOVERNOR EDMUND G. BROWN JR.

DIRECTOR KEVIN KISH

Enclosures

cc:

1  **COMPLAINT OF EMPLOYMENT DISCRIMINATION**

2  **BEFORE THE STATE OF CALIFORNIA**

3  **DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**

4  **Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

5

6  In the Matter of the Complaint of                    DFEH No. 175638-282506
   Justin Griffin, Complainant.

7  C/o 3311 East Pico Boulevard
   Los Angeles, California 90023

8

9  vs.

10 Sach Electric Company, Respondent.
   1572 Larkin Williams Road

11 Fenton, Missouri 63026

12

13 Complainant alleges:

14
   1. Respondent **Sach Electric Company** is a **Private Employer** subject to suit under

15 the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et
   seq.). Complainant believes respondent is subject to the FEHA.

16
   2. On or around **March 03, 2017**, complainant alleges that respondent took the

17 following adverse actions against complainant: **Discrimination, Harassment,
   Retaliation Terminated, .** Complainant believes respondent committed these

18 actions because of their: **Color, Race** .

19
   3. Complainant **Justin Griffin** resides in the City of **Los Angeles**, State of

20 **California**. If complaint includes co-respondents please see below.

21

22

Date Filed: April 05, 2017

1

2   **Additional Complaint Details:**

3
    Complainant is an African American.  He was treated differently than co-workers who
4   were not African American. When he complained, he as harrassed, retaliated against
    and ultimately terminated.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

FEH 802-1                                        -6-
                                 *Complaint ± DFEH No. 175638-282506*
          Date Filed: April 05, 2017

## VERIFICATION

**I, Lonnie C. Blanchard III, Attorney,** am the Attorney for Complainant in the above-entitled complaint.   I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On April 05, 2017, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**3311 East Pico Blvd., Los Angeles, CA 90023**
**Lonnie C. Blanchard III, Attorney**

-7-
*Complaint ± DFEH No. 175638-282506*

Date Filed: April 05, 2017

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Peter R. Dion-Kindem (95267)<br>Peter R. Dion-Kindem, P.C.<br>21550 Oxnard Street, Suite 900<br>Woodland Hills, CA 91367<br>TELEPHONE NO: 818-883-4900    FAX NO: 818-883-4902<br>ATTORNEY FOR (Name): Plaintiff Henry Roman | ELECTRONICALLY FILED BY<br>Superior Court of California,<br>County of Monterey<br>On 4/27/2017 3:31:53 PM<br>By: Jessica Ray, Deputy |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Monterey
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: Monterey Division

CASE NAME:
Griffin v. Sachs Electric Company, et al.

| CIVIL CASE COVER SHEET<br>☑ Unlimited      ☐ Limited<br>(Amount            (Amount<br>demanded         demanded is<br>exceeds $25,000)  $25,000 or less) | Complex Case Designation<br>☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>17CV001525 |
|---|---|---|
| | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort | ☐ Other collections (09) | ☐ Construction defect (10) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Medical malpractice (45) | Real Property | ☐ Environmental/Toxic tort (30) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| Non-PI/PD/WD (Other) Tort | ☐ Wrongful eviction (33) | |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | Enforcement of Judgment |
| ☐ Civil rights (08) | Unlawful Detainer | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | Miscellaneous Civil Complaint |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint (not specified above) (42) |
| ☐ Professional negligence (25) | Judicial Review | Miscellaneous Civil Petition |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| Employment | ☐ Petition re: arbitration award (11) | ☐ Other petition (not specified above) (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☑ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☑ Large number of witnesses
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☑ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary    b. ☐ nonmonetary; declaratory or injunctive relief    c. ☐ punitive
4. Number of causes of action (specify): 9
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 4/27/2017
Peter R. Dion-Kindem
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

EXHIBIT "A" PAGE 62

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

| SUPERIOR COURT OF MONTEREY COUNTY<br>Monterey Branch, 1200 Aguajito Road, Monterey, CA 93940 | |
|---|---|
| **Justin Griffin**<br>vs.<br>Sachs Electric Company, et al. | **CASE NUMBER**<br>**17CV001525** |
| | **Case Management Conference** |

## NOTICE OF ASSIGNMENT AND CASE MANAGEMENT CONFERENCE

**Your case number ending EVEN is assigned for all purposes to the Hon. Thomas W. Wills**

**Your case number ending ODD is assigned for all purposes to the Hon. Susan J. Matcham**

This notice and Alternative Dispute Resolution (ADR) information packet <u>must</u> be served together with the Summons and Complaint pursuant to California Rule of Court 3.221  *Parties are required to follow the case management rules as outlined in California Rule of Court 3.722 and Chapter 6 of the Local Rules of Court found on the court website at www.montereycourt.ca.gov* .  A case management statement from each party or joint statement shall be filed prior to the conference as outlined in California Rule of Court 3.725.

---

**Date: <u>August 29, 2017</u>    Time:<u>9:00 AM</u>    <u>Department 15</u>**

**Location: <u>Monterey Courthouse, 1200 AGUAJITO ROAD, MONTEREY, CA 93940</u>**

---

Pursuant to statutes of the State of California, it is the responsibility of the court to establish procedures for the timely and effective disposition of civil cases.

The court is charged with the responsibility of ensuring all parties a fair and timely resolution of their disputes, and the court is in the best position to establish neutral rules and policies without adversely affecting all parties' right to a fair trial.  Effective management of the judicial system will build continuing respect by the community of government, minimize the costs to the parties and the public, and maximize the probability that cases will be timely resolved.

The goals of the Monterey County civil case and trial management system are:
1. To provide an effective and fair procedure for the timely disposition of civil cases;
2. To provide a mechanism to gather needed case information in order to make appropriate judicial management decisions; and
3. To establish reasonable rules and policies to require that cases reporting "ready" for trial may be tried without unnecessary delays or interruptions.

NOTICE OF ALL PURPOSE CASE ASSIGNMENT
(Civil)

[Rev. January 2016]

CI-127

# Alternative Dispute Resolution

(INFORMATION PACKET)

OPTIONS FOR RESOLVING YOUR DISPUTE

## There Are Alternatives to Going to Trial

Did you know that 95 percent of all civil cases filed in court are resolved without going to trial?  Many people use processes other than trial to resolve their disputes.  These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach an agreement.

## Advantages of ADR

Here are some potential advantages of using ADR:

**Save Time**: A dispute often can be settled or decided much sooner with ADR, often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

- **Save Money**: When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, and expert's fees.

- **Increase Control over the Process and the Outcome**: In ADR, parties typically play a greater role in shaping both the process and its outcome.  In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial.  Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial.  Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

- **Preserve Relationships**: ADR can be a less adversarial and hostile way to resolve a dispute.  For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side.  This can be an important advantage where the parties have a relationship to preserve.

- **Increase Satisfaction**: In a trial, there is typically a winner and a loser.  The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome.  ADR can help the parties find win-win solutions and achieve their real goals.  This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

- **Improve Attorney-Client Relationships**: Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants.  Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

Because of these potential advantages, it is worth considering using ADR early in a lawsuit or even before you file a lawsuit.

## What Are the ADR Options?

The most commonly used ADR processes are mediation, arbitration, neutral evaluation, and settlement conferences.

## Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute.  The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves.  Mediation leaves control of the outcome with the parties.  The Monterey County Superior Court offers a Court-Directed Mediation Program.

Form Approved for Mandatory Use
CI-127 Rev. September, 2013

**ALTERNATIVE DISPUTE RESOLUTION**
**INFORMATION PACKET**
EXHIBIT "A" PAGE 65

Monterey County Superior Court
Page 1 of 2

Cases for Which Mediation May Be Appropriate: Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use.

Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

Cases for Which Mediation May Not Be Appropriate: Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

## Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed.

Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision in binding arbitration. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision. The Monterey County Superior Court offers a nonbinding judicial arbitration program.

Cases for Which Arbitration May Be Appropriate: Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

Cases for Which Arbitration May Not Be Appropriate: If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

## Neutral Evaluation

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is nonbinding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

Cases for Which Neutral Evaluation May Be Appropriate: Neutral evaluation may be most appropriate in cases in which there are technical issues that require expertise to resolve or the only significant issue in the case is the amount of damages.

Cases for Which Neutral Evaluation May Not Be Appropriate: Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

## Settlement Conference

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

Form Approved for Mandatory Use
CI-127 Rev. September, 2013

ALTERNATIVE DISPUTE RESOLUTION
INFORMATION PACKET
EXHIBIT "A" PAGE 66

Monterey County Superior Court
Page 2 of 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "B"

6/1/17 1:25p.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Sachs Electric Company, a Missouri corporation; First Solar, Inc., a Delaware corporation; California Flats Solar, LLC, a Delaware Limited Liability Company, and Does 1 through 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Justin Griffin, an individual, on behalf of himself and all others similarly situated

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 4/27/2017 3:31:53 PM
By: Jessica Ray, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Monterey County Superior Court

CASE NUMBER:
(Número del Caso) 17CV001525

1200 Aguajito Road
Monterey, CA 93940

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Peter R. Dion-Kindem, 21550 Oxnard Street, Suite 900, Woodland Hills, CA 91367, 818-883-4900

| DATE: (Fecha) 4/27/2017 | Clerk, by (Secretario) /s/ Jessica Ray | , Deputy (Adjunto) |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* FIRST SOLAR, INC., A DELAWARE CORPORATION
under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 6/1/17

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|

6/1/17  1:28 p.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Sachs Electric Company, a Missouri corporation; First Solar, Inc., a
Delaware corporation; California Flats Solar, LLC, a Delaware
Limited Liability Company, and Does 1 through 10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Justin Griffin, an individual, on behalf of himself and all others similarly
situated

<table>
<tr><td>FOR COURT USE ONLY<br>SOLO PARA USO DE LA CORTE<br>ELECTRONICALLY FILED BY<br>Superior Court of California,<br>County of Monterey<br>On 4/27/2017 3:31:53 PM<br>By: Jessica Ray, Deputy</td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Monterey County Superior Court

| CASE NUMBER:<br>*(Número del Caso)*17CV001525 |
|---|

1200 Aguajito Road
Monterey, CA 93940

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Peter R. Dion-Kindem, 21550 Oxnard Street, Suite 900, Woodland Hills, CA 91367, 818-883-4900

| DATE:<br>*(Fecha)*  4/27/2017 | Clerk, by<br>*(Secretario)*  /s/ Jessica Ray | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* CALIFORNIA FLATS SOLAR, LLC, A
DELAWARE LIMITED LIABILITY
COMPANY

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☒ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*

4. ☒ by personal delivery on *(date):* 6/1/17

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

6/1/17 1:25p

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
Sachs Electric Company, a Missouri corporation; First Solar, Inc., a Delaware corporation; California Flats Solar, LLC, a Delaware Limited Liability Company, and Does 1 through 10

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

Justin Griffin, an individual, on behalf of himself and all others similarly situated

FOR COURT USE ONLY
SOLO PARA USO DE LA CORTE
ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 4/27/2017 3:31:53 PM
By: Jessica Ray, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER: |
| (El nombre y dirección de la corte es): Monterey County Superior Court | (Número del Caso) 17CV001525 |

1200 Aguajito Road
Monterey, CA 93940

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Peter R. Dion-Kindem, 21550 Oxnard Street, Suite 900, Woodland Hills, CA 91367, 818-883-4900

| DATE: | | Clerk, by | | , Deputy |
| (Fecha) 4/27/2017 | | (Secretario) /s/ Jessica Ray | | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): SACHS ELECTRIC COMPANY, A MISSOURI CORPORATION

under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other (specify):

4. ☒ by personal delivery on (date): 6/1/17

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

# EXHIBIT "C"

| SUPERIOR COURT OF MONTEREY COUNTY<br>Monterey Branch, 1200 Aguajito Road, Monterey, CA 93940 ||
|---|---|
| Justin Griffin<br>vs.<br>Sachs Electric Company, et al. | **CASE NUMBER**<br>**17CV001525** |
| | **Case Management Conference** |

## NOTICE OF ASSIGNMENT AND CASE MANAGEMENT CONFERENCE

**Your case number ending EVEN is assigned for all purposes to the Hon. Thomas W. Wills**

**Your case number ending ODD is assigned for all purposes to the Hon. Susan J. Matcham**

This notice and Alternative Dispute Resolution (ADR) information packet must be served together with the Summons and Complaint pursuant to California Rule of Court 3.221. *Parties are required to follow the case management rules as outlined in California Rule of Court 3.722 and Chapter 6 of the Local Rules of Court found on the court website at* www.montereycourt.ca.gov . A case management statement from each party or joint statement shall be filed prior to the conference as outlined in California Rule of Court 3.725.

---

**Date: August 29, 2017      Time:9:00 AM      Department 15**

**Location: Monterey Courthouse, 1200 AGUAJITO ROAD, MONTEREY, CA 93940**

---

Pursuant to statutes of the State of California, it is the responsibility of the court to establish procedures for the timely and effective disposition of civil cases.

The court is charged with the responsibility of ensuring all parties a fair and timely resolution of their disputes, and the court is in the best position to establish neutral rules and policies without adversely affecting all parties' right to a fair trial. Effective management of the judicial system will build continuing respect by the community of government, minimize the costs to the parties and the public, and maximize the probability that cases will be timely resolved.

The goals of the Monterey County civil case and trial management system are:
1. To provide an effective and fair procedure for the timely disposition of civil cases;
2. To provide a mechanism to gather needed case information in order to make appropriate judicial management decisions; and
3. To establish reasonable rules and policies to require that cases reporting "ready" for trial may be tried without unnecessary delays or interruptions.

NOTICE OF ALL PURPOSE CASE ASSIGNMENT            [Rev. January 2016]
(Civil)

# EXHIBIT "D"

Cl-127

# Alternative Dispute Resolution

(INFORMATION PACKET)

OPTIONS FOR RESOLVING YOUR DISPUTE

## There Are Alternatives to Going to Trial

Did you know that 95 percent of all civil cases filed in court are resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach an agreement.

## Advantages of ADR

Here are some potential advantages of using ADR:

Save Time: A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

- Save Money: When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, and expert's fees.

- Increase Control over the Process and the Outcome: In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

- Preserve Relationships: ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

- Increase Satisfaction: In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

- Improve Attorney-Client Relationships: Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

Because of these potential advantages, it is worth considering using ADR early in a lawsuit or even before you file a lawsuit.

## What Are the ADR Options?

The most commonly used ADR processes are mediation, arbitration, neutral evaluation, and settlement conferences.

## Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties. The Monterey County Superior Court offers a Court-Directed Mediation Program.

Form Approved for Mandatory Use
Cl-127 Rev. September, 2013

**ALTERNATIVE DISPUTE RESOLUTION
INFORMATION PACKET**
(Civil)

Monterey County Superior Court
Page 1 of 2

Cases for Which Mediation May Be Appropriate: Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use.

Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

Cases for Which Mediation May Not Be Appropriate: Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

## Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed.

Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision in binding arbitration. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision. The Monterey County Superior Court offers a nonbinding judicial arbitration program.

Cases for Which Arbitration May Be Appropriate: Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

Cases for Which Arbitration May Not Be Appropriate: If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

## Neutral Evaluation

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is nonbinding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

Cases for Which Neutral Evaluation May Be Appropriate: Neutral evaluation may be most appropriate in cases in which there are technical issues that require expertise to resolve or the only significant issue in the case is the amount of damages.

Cases for Which Neutral Evaluation May Not Be Appropriate: Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

## Settlement Conference

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

Form Approved for Mandatory Use
CI-127 Rev. September, 2013

ALTERNATIVE DISPUTE RESOLUTION
INFORMATION PACKET
(Civil)

Monterey County Superior Court
Page 2 of 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "E"

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): <br> Peter R. Dion-Kindem (95267) <br> Peter R. Dion-Kindem, P.C. <br> 21550 Oxnard Street, Suite 900 <br> Woodland Hills, CA 91367 <br> TELEPHONE NO.: 818-883-4900    FAX NO.: 818-883-4902 <br> ATTORNEY FOR (Name): Plaintiff Henry Roman | ELECTRONICALLY FILED BY <br> Superior Court of California, <br> County of Monterey <br> On 4/27/2017 3:31:53 PM <br> By: Jessica Ray, Deputy |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Monterey
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS:
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: Monterey Division

CASE NAME:
Griffin v. Sachs Electric Company, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 17CV001525 |
|---|---|---|---|---|
| ☑ Unlimited <br> (Amount demanded exceeds $25,000) | ☐ Limited <br> (Amount demanded is $25,000 or less) | ☐ Counter    ☐ Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | | JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☑ Wrongful termination (36)
- ☑ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. ☐ Large number of separately represented parties
   - b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. ☑ Substantial amount of documentary evidence
   - d. ☑ Large number of witnesses
   - e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action (specify): 9
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 4/27/2017

Peter R. Dion-Kindem
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courtinfo.ca.gov |
|---|---|---|

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

EXHIBIT "E" PAGE 78

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "F"

# PROJECT LABOR AGREEMENT

# FOR THE

# CALIFORNIA FLATS SOLAR PROJECT

# MONTEREY COUNTY, CALIFORNIA

2842-051cv

# ARTICLE 1
## INITIAL PROVISIONS

1.1     This Project Labor Agreement ("Agreement") is entered into by McCarthy Building Companies, Inc. ("Primary Employer"), Operating Engineers Local 3, Carpenters Local 605, Pile Drivers Local 34, Millwrights Local 102, Laborers Local 270, IBEW Local 234, and Ironworkers Local 155 who have executed this Agreement (the "Unions").

1.2     The California Flats Solar Facility Project (the "Project") is an approximately 280 MW photovoltaic solar power plant located in Monterey County, California.  The Project is owned by CA Flats Solar 130, LLC and CA Flats Solar 150, LLC ("Owner").  It is understood and agreed by and between the Parties to this Agreement that the final plans for the Project may be subject to modifications and approval by those public agencies possessing lawful approval authority over the Project and that this Agreement applies to the Project as it is finally approved by such entities and agencies and only to the Project.

1.3     Primary Employer is an employer primarily engaged in the construction industry and has the authority to enter into this agreement.

1.4     As provided below, other than Primary Employer, all construction managers, contractors, subcontractors or other persons or entities assigning, awarding or subcontracting Covered Work (as defined in Article 2 below), or performing Covered Work, will be subject to this Agreement by executing Attachment A, the Agreement to be Bound (all of whom, including the Primary Employer, are individually and collectively referred to as "Employer" or "Employers").

1.5     The Unions are labor organizations whose members are construction industry employees.  The Unions are party to multi-employer collective bargaining agreements ("Master Agreement") applicable to employers working within the geographic jurisdiction.  Primary Employer is a signatory to the Carpenters and Laborers Master Agreements only.

1.6     A large labor pool represented by the Unions will be required to execute the Covered Work involved in the Project.  Employers wish and it is the purpose of this Agreement to ensure that a sufficient supply of skilled craft workers are available at the Project, that all construction work performed by the members of the Unions on this Project shall proceed continuously, without interruption, in a safe and efficient manner, economically with due consideration for the protection of labor standards, wages and working conditions.  In furtherance of these purposes and to secure optimum productivity, harmonious relations between the parties and

2842-051cv                                    1

the orderly performance of the work, the parties to this Agreement agree to establish adequate and fair wage levels and working conditions.

1.7     In the interest of the future of the construction industry in the local area, of which the Unions are a vital part, and to maintain the most efficient and competitive posture possible, the Unions pledge to work and cooperate with the Primary Employer, Employers and with other construction employers engaged on the Project to produce the most efficient utilization of labor and equipment in accordance with this Agreement.  In particular, the Unions shall make all efforts to first source local labor to the Project and shall cooperate with each Employer's efforts to comply with all applicable laws and regulations related to such local hiring requirements.

1.8     The parties recognize the importance of solar power in assuring that California is provided with adequate supplies of renewable energy for economic growth, the creation of job opportunities and for a greater degree of energy independence.  By entering into this Agreement, the parties recognize the unique nature of a solar photovoltaic power plant and that the terms and conditions covered by this Agreement are therefore unique.  Accordingly, the parties have in good faith arrived at the special conditions contained in this Agreement, and the parties agree to work together jointly to support the Project and make it successful.

## ARTICLE 2
## SCOPE OF AGREEMENT

2.1     This Agreement covers all on-site construction, alteration, demolition or repair of buildings, structures, and other works which are part of the Project.  All work covered by this Agreement is referred to as "Covered Work."  As of the execution of this agreement there is no work planned to be performed in temporary yards or at adjacent facilities; in the event that Primary Employer determines it is necessary to use a temporary yard or adjacent facility this Agreement shall govern that work.

2.2     The following are specifically excluded from the definition of Covered Work:

2.2.1   Any work performed on or near the Project site by federal, state, county, city or other governmental bodies and/or agencies or their contractors or work performed by utilities or their contractors;

2.2.2   Work performed by supervisors not covered by a collective bargaining agreement, technical or non-manual employees including but not limited to executives, office and clerical personnel, drafters, staff engineers, technical advisors, vendor quality control representatives, logistic and materials support, timekeepers, messengers,

2842-051cv                                    2

or any other employees above the classification of general foreman who perform administrative/clerical functions; and

      2.2.3   Operations and maintenance work.

    2.3   Fabrication provisions in local and/or national agreements shall not apply.  Any manufactured items produced in a manufacturing facility for the supply of products to the Project is not Covered Work and shall not be considered subcontracting under Article 3 below.  However, any offsite assembly of components (other than manufacturing products at a manufacturing facility) for the Project is Covered Work and shall be performed onsite.

## ARTICLE 3
## SUBCONTRACTING

    3.1   Primary Employer and each other Employer agree that they will contract for the assignment, awarding or subcontracting of Covered Work, or authorize another party to assign, award or subcontract Covered Work, only to a person, firm, corporation or other entity that, at the time the contract or subcontract is executed, has become a party to this Agreement by executing Attachment A, the Agreement to be Bound.

    3.2   Primary Employer is a signatory to the Carpenters and Laborers Master Agreements only.  Primary Employer intends to self-perform those portions of the Carpenters and Laborers Covered Work identified on Attachment B.  Nothing herein is intended to bind Primary Employer to any other Master Agreements than those the Primary Employer is already a signatory to so long as Primary Employer self-performs only work assigned to the Carpenters or Laborers as provided in Attachment B.

    3.3   Primary Employer and each other Employer agree that they will subcontract Covered Work only to a person, firm, corporation or other entity who is or becomes a party to this Agreement, who is primarily a C-10 electrical contractor (for IBEW Covered Work only), and who is or becomes signatory to the applicable Master Agreement pertaining to the scope of work identified in Attachment B for that particular Employer, or, in the case of a national contractor, a national agreement with the applicable Union.  Before being authorized to perform any Covered Work, Employers (other than Primary Employer) shall become a party to this Agreement by signing Attachment A, the Agreement to be Bound and the applicable Master Agreement.  Every Employer shall notify the Union in writing within five business days after it has subcontracted work, and shall at the same time provide to the Union a copy of the executed Attachment A,

2842-051cv                         3

Agreement to be Bound.

3.4    Nothing in this Agreement shall in any manner whatsoever limit the rights of the Primary Employer and every other Employer, to subcontract Covered Work or to select its contractors or subcontractors; provided, however, that all Employers, at all tiers, assigning, awarding, contracting or performing, or authorizing another to assign, award, contract or perform Covered Work shall be required to comply with the provisions of this Agreement.  Primary Employer and every other Employer shall notify each of its contractors and subcontractors of the provisions of this Agreement and require as a condition precedent to the assigning, awarding or subcontracting of any Covered Work or allowing any subcontracted Covered Work to be performed, that all such contractors and subcontractors at all tiers become signatory to this Agreement, and the applicable Master Agreement or national agreement as provided in Section 3.2 above.  Any Employer that fails to obtain the signature of its lower tier contractors or subcontractors shall be liable for any failure of that lower tier contractor or subcontractor to comply with the provisions of this Agreement, including any contributions to any trust funds that the lower tier contractor or subcontractor fails to make.  Each Employer shall provide a copy of their signature and their subcontractors' signature to the Agreement to Be Bound to the applicable union.

## ARTICLE 4
## WAGES AND BENEFITS

4.1    All employees performing Covered Work and covered by this Agreement (including foremen and general foremen if they are covered by the Master Agreement) shall be classified and paid wages and benefits, and contributions made on their behalf to multi-employer trust funds, all in accordance with the applicable Union's Master Agreement in effect at the time of the execution of the Agreement to be Bound and any subsequently negotiated Master Agreement, however Employers shall not be liable for any retroactive increase in compensation (wages or benefits of any kind) unless otherwise agreed to within the new Master Agreement.

4.2    Employees performing Covered Work in the IBEW CW classification shall receive wages and benefits as specified in Attachment C.

2842-051cv                                         4

## ARTICLE 5
## UNION RECOGNITION AND
## REFERRAL

5.1    The Employers recognize the Unions signatory to this Agreement which have craft jurisdiction over such Employer's scope of work on the Project as the sole and exclusive collective bargaining agent for their construction craft employees performing Covered Work for the Project, and further recognize the traditional and customary craft jurisdiction of the Unions.

5.2    All employees performing Covered Work shall be or shall become and then remain members in good standing of the applicable Union as a condition of employment on or before the eighth (8th) day of employment, or the eighth (8th) day following the execution of this Agreement, whichever is later.

5.3    The Unions shall be the source of all craft employees for Covered Work for the Project.  Employers agree to be bound by the hiring practices of the Unions as set forth in each applicable Master Agreement, including hiring of apprentices, and to utilize its registration facilities and referral systems.

5.4    The Unions shall exert their utmost efforts, including requesting assistance from other local unions, to recruit a sufficient number of skilled craftsmen to fulfill the manpower requirements of the Employers.  In the event the referral facilities maintained by the Union does not refer the employees as requested by an Employer within a forty-eight (48) hour period after such requisition is made by an Employer (Saturdays, Sundays and holidays excepted), the Employer may employ applicants from any source, but shall arrange for a dispatch to be issued for those applicants from the Union within forty-eight (48) hours of the commencement of employment, and the dispatch shall upon request be issued by the Union to the employee.  Employer will notify the Union of such gate-hires.

5.5    If specified in the applicable Master Agreement, each Union shall have the right to designate a working journeyperson as a working steward.  The steward shall be a qualified employee performing the work of that craft and shall not exercise any supervisory functions.  The steward shall be concerned with the employees of the steward's Employer and not with the employees of any other Employer.  A steward shall be allowed sufficient time to perform his/her duties.

2842-051cv

5

## ARTICLE 6
## WORK STOPPAGES AND LOCKOUTS

6.1    During the term of this Agreement, there shall be no strikes, sympathy strikes, picketing, work stoppages, slow downs, handbilling where the handbilling relates to the Project or to the Owner, Primary Employer, or other Employer working or providing work on the Project, or interference with the work or other disruptive activity of any kind at the Project site for any reason by the Unions, their agents, representatives, or by any employee, and there shall be no lockout by any Employer.  Failure of either a Union or an employee to cross any picket line established at the Employer's project site is a violation of this Article.

6.2    The Unions shall not sanction, aid, abet, encourage, condone or participate in or continue any work stoppage, delay, strike, picketing or any other disruptive activity at the Project site and shall undertake all reasonable means to prevent or to terminate any such activity.  No employee shall engage in activities which violate this Article.  Any employee who participates in or encourages any activities which interfere with the normal operation of the Project or which violate this Article,  shall be subject to disciplinary action, including discharge, and, if justifiably discharged for the above reasons, shall not be eligible for rehire or further work on the Project.

6.3    A Union shall not be liable for acts of employees that it does not represent.  With respect to employees the Union does represent, the principal officer or officers of the Union will immediately instruct, and order and use the best efforts of his office to cause such employees to cease any violations of this Article.  A Union complying with this obligation shall not be liable for any unauthorized acts of the employees it represents.  The failure of the Employer to exercise its right in any instance shall not be deemed a waiver of its right in any other instance.

6.4    The Unions agree that if any union or any other persons, whether parties to this Agreement or otherwise, engage in any picketing or work stoppages, the signatory Unions shall consider such work stoppage or picketing to be illegal and refuse to honor such picket line or work stoppage.

6.5    In the event of any work stoppage, strike, sympathy strike, picketing, handbilling or interference with the work or any other disruptive activity at the Project site in violation of this Article, the Primary Employer may suspend all or any portion of the Project work affected by such activity at the Primary Employer's discretion and without penalty.

2842-051cv                                    6

6.6    In lieu of, or in addition to, any other action at law or equity or any rights an Employer may have under the applicable Master Agreement, any party may institute the following procedure when a breach of this Article is alleged, after the Union has been notified of the fact, understanding that the grieving party has the discretion to opt for resolution of any dispute under this Article or through Article 8 instead.

6.6.1    The party invoking this procedure shall notify the American Arbitration Association who shall select an arbitrator within twenty-four (24) hours of notice.  Notice to the Arbitrator shall be by the most expeditious means available, with notice by fax or electronic means or any other effective written means to the party alleged to be in violation and the Union.

6.6.2    Upon receipt of said notice, the Arbitrator selected above shall set and hold a hearing within twenty-four (24) hours if it is contended that the violation still exists or is threatened to resume.

6.6.3    The Arbitrator shall notify the parties by fax or electronic means or any other effective written means of the place and time he has chosen for this hearing.  Said hearing shall be completed in one session.  A failure of any party or parties to attend said hearing shall not delay the hearing of evidence or issuance of an Award by the Arbitrator.

6.6.4    The sole issue at the hearing shall be whether or not a violation of this Article has in fact occurred.  The Award shall be issued in writing within three (3) hours after the close of the hearing, and may be issued without an opinion.  If any party desires an opinion, one shall be issued within fifteen (15) days, but its issuance shall not delay compliance with, or enforcement of, the Award.  The Arbitrator may order cessation of the violation of this Article by the Union, and such Award shall be served on all parties by hand or registered mail or by electronic mail upon issuance.  The Union accepts service pursuant to any of the foregoing means of notice and expressly waives notice by more formal means.

6.6.5    Such Award may be enforced by any court of competent jurisdiction upon the filing of this Agreement and all other relevant documents referred to hereinabove in the following manner.  The fax or electronic notice of the filing of such enforcement proceedings shall be given to the other party.  In the proceeding to obtain a temporary order enforcing the Arbitrator's Award as issued under Section 6.6.4 of this Article, all parties waive the right to a hearing and agree that such proceedings may be ex parte.  Such agreement does not waive any party's right to participate in a hearing for a final order of enforcement.  The

2842-051cv

7

Court's order or orders enforcing the Arbitrator's Award shall be served on all parties by hand or by delivery to their last known address or by registered mail or by electronic mail. All parties waive the right to require the issuance of a bond or other security for issuance of an injunction or an appeal to a refusal to issue one under this Article.

6.6.6  Any rights created by statute or law governing arbitration proceedings inconsistent with the above procedure or which interfere with compliance therewith are hereby waived by the parties to whom they accrue. The fees and expenses of the Arbitrator shall be borne by the party or parties found in violation, or in the event no violation is found, such fees and expenses shall be borne by the moving party.

6.6.7  If the Arbitrator determines that a violation has occurred in accordance with Section 6.6.4 above, the party or parties found to be in violation shall pay as liquidated damages the following amounts:  for the first shift in which the violation occurred, $10,000; for the second shift, $15,000; for the third shift, $20,000; for each shift thereafter on which the craft has not returned to work, $20,000 per shift.  The Arbitrator shall retain jurisdiction to determine compliance with this section and this Article.

6.7    The procedures contained in this Article shall be applicable to alleged violations of this Article.  Disputes alleging violation of any other provision of this Agreement, including any underlying disputes alleged to be in justification, explanation or mitigation of any violation of this Article, shall be resolved under the grievance procedures of Article 8.

6.8    Notwithstanding the provisions of Section 6.1 above, it is agreed that with forty eight (48) hours prior written notice to the Primary Employer, the Union retains the right to withhold the services of its members from a particular contractor or subcontractor who fails with respect to work on the Project to make timely payments to the Union's benefit plans or to pay timely its weekly payroll in accordance with its agreements with the Union; provided, however, that in the event the Union or any of its members withhold their services from such contractor or subcontractor, Primary Employer shall have the right to replace such contractor or subcontractor with any other contractor or subcontractor who executes the Agreement to be Bound.

6.9    If a Master Agreement expires, both the Employer and the Union will abide by the terms of the expired Master Agreement for the duration of the Project until such time as a new Master Agreement is entered into.

2842-051cv

8

## ARTICLE 7
## WORK RULES, HOLIDAYS

7.1   The standard work day shall consist of eight (8) hours of work between 6:00 a.m. and 5:30 p.m. with one-half hour designated as an unpaid period for lunch.  The standard work week shall be five (5) consecutive days starting on Monday.  Nothing herein shall be construed as guaranteeing any employee eight (8) hours of work per day or forty (40) hours of work per week.

7.2   Moved to Attachment B
7.3   Moved to Attachment B
7.4   Moved to Attachment B

7.5   It will not be considered a violation of this Agreement when the Primary Employer shuts down the Project at the discretion of the Primary Employer for any reason other than a labor dispute or any Employer considers it necessary to shut down to avoid loss of human life because of an emergency situation that could endanger life or safety.  In such cases, employees will be compensated only for the actual time worked.  In case of a situation described above whereby the Primary Employer or any Employer requests employees to wait in a designated area available for work the employees will be compensated for the waiting time.

7.6   Recognized holidays shall be as follows: New Year's Day, Martin Luther King Jr. Day, President's Day, Memorial Day, Fourth of July, Labor Day, Veterans Day, Thanksgiving Day, Day after Thanksgiving and Christmas Day.  Under no circumstances shall any work be performed on Labor Day except in cases of emergency involving life or property.  In the event a holiday falls on Saturday, the previous day, Friday, shall be observed as such holiday.  In the event a holiday falls on Sunday, the following day, Monday, shall be observed as such holiday. There shall be no paid holidays.  If employees are required to work on a holiday, they shall receive the appropriate rate as provided in the applicable Master Agreement not to exceed double the straight time rate of pay.

## ARTICLE 8
## GRIEVANCE  PROCEDURE

8.1   It is mutually agreed that any question arising out of and during the term of this Agreement involving its interpretation and application (other than successorship) shall be considered a grievance. Questions between or among parties signatory to the Master Agreement arising out of or involving the interpretation of the Master Agreement

EXHIBIT "F" PAGE 89

shall be resolved under the grievance procedure(s) provided in the applicable Master Agreement.

8.2    The Primary Employer and other Employers, as well as a Union, may bring forth grievances under this Article.

8.3    A grievance shall be considered null and void if not brought to the attention of the Employer(s) within five (5) working days after the incident that initiated the alleged grievance occurred or reasonably should have been discovered, whichever is later.  The term "working days" as used in this Article shall exclude Saturdays, Sundays or holidays regardless of whether any work is actually performed on such days.

8.4    Grievances shall be settled according to the following procedure (provided that grievances that do not involve an individual grievant or grievants shall be discussed by Primary Employer and the Union, and then, if not resolved within five (5) working days of written notice unless extended by mutual consent, shall commence at Step 2):

<u>Step 1</u>

The Steward and the grievant shall attempt to resolve the grievance with the craft supervisor within five (5) working days after the grievance has been brought to the attention of the Employer.

<u>Step 2</u>

In the event the matter remains unresolved in Step 1 above after five(5) working days, within five (5) working days thereafter, the alleged grievance may be referred in writing to the Business Manager of the Union or his designee and the site construction manager or Labor Relations representative of the Employer(s) for discussion and resolution.  A copy of the written grievance shall also be mailed, faxed or emailed to the Primary Employer.

<u>Step 3</u>

In the event the matter remains unresolved in Step 2 above within five (5) working days, within five (5) working days thereafter, the grievance may be referred in writing to the Business Manager of the Union or his designee and the Manager of Labor Relations of the Employer(s) or the Manager's designated representative and the Primary Employer for discussion and resolution.

2842-051cv

10

Step 4

If the grievance is not settled in Step 3 within five (5) working days, within five (5) days thereafter, either party may request the dispute be submitted to arbitration or the time may be extended by mutual consent of both parties. The request for arbitration and/or the request for an extension of time must be in writing with a copy to the Primary Employer. Should the parties be unable to mutually agree on the selection of an Arbitrator, selection for that given arbitration shall be made by seeking a list of seven (7) labor arbitrators with construction experience from the Federal Mediation and Conciliation Service and alternately striking names from the list of names on the list until the parties agree on an Arbitrator or until one name remains. The first party to strike a name from the list shall alternate between the party bringing forth the grievance and the party defending the grievance.

8.5    The Arbitrator shall conduct a hearing at which the parties to the grievance shall be entitled to present testimonial and documentary evidence. Hearings will be transcribed by a certified court reporter. The parties shall be entitled to file written briefs after the close of the hearing and receipt of the transcript.

8.6    Upon expiration of the time for the parties to file briefs, the Arbitrator shall issue a written decision that will be served on all parties and on the Primary Employer. The Arbitrator shall have the authority to utilize any equitable or legal remedy to prevent and/or cure any breach or threatened breach of this Agreement. The Arbitrator's decision shall be final and binding as to all parties signatory to this Agreement.

8.7    The cost of the Arbitrator and the court reporter, and any cost to pay for facilities for the hearing, shall be borne equally by the parties to the grievance. All other costs and expenses in connection with the grievance hearing shall be borne by the party who incurs them.

8.8    The Arbitrator's decision shall be confined to the issue(s) posed by the grievance and the Arbitrator shall not have the authority to modify, amend, alter, add to or subtract from any provision of this Agreement.

8.9    Any party to a grievance may invite the Primary Employer to participate in resolution of a grievance. The Primary Employer may, at its own initiative, participate in Steps 1 through 3 of the grievance procedure.

2842-051cv                                      11

8.10   In determining whether the time limits of Steps 2 through 4 of the grievance procedure have been met, a written referral or request shall be considered timely if it is personally delivered, sent by overnight mail, electronic mail, or faxed within the five (5) working day period.  Any of the time periods set forth in this Article may be extended in writing by mutual consent of the parties to the grievance.  Failure to process a grievance, or failure to respond in writing within the time limits provided above, without a request for an extension of time, shall be deemed a waiver of such grievance to the other without prejudice, or without precedent to the processing of and/or resolution of like or similar grievances.

8.11   In order to encourage the resolution of disputes and grievances, the parties agree that settlements shall not be precedent setting.

## ARTICLE 9
## WORK JURISDICTION AND PRE-JOB MEETINGS

9.1    All Covered Work will be assigned to the appropriate Union as identified in Attachment B.

9.2    Prior to the commencement of work at the site of construction the Primary Employer shall hold a Pre-job Conference with the Unions for the purpose of discussing the scope, schedule, manpower requirements, and jurisdictional work assignments.  A Pre-job Conference will be held prior to the commencement of work to establish the scope of work in each contractor's contract.

9.3    In the event of any jurisdictional or similar dispute concerning an Employer's assignment of work on this Project, the Employer and the Unions agree to cooperate to attempt to resolve such dispute expeditiously and efficiently; however, nothing in this Section shall require the Unions to agree to any modification of this Agreement.  Until the jurisdictional or similar dispute is resolved, the Employer's work assignment shall be followed.  This Article (including Attachment B), rather than any jurisdictional dispute resolution procedure in a Union's Master Agreement, shall apply to jurisdictional disputes involving the assignment of work on this Project to a Union.

2842-051cv

12

## ARTICLE 10
## GENERAL WORKING CONDITIONS

10.1    The selection of craft foremen and/or general foremen shall be entirely the responsibility of each Employer, it being understood that in the selection of such foremen and/or general foremen the Employer will give primary consideration to the qualified individuals referred to the Employer who are available in the local area. After giving such consideration, the Employer may select such individuals from other areas.  All foremen shall take orders from the designated Employer representatives.

10.2    There shall be no limit on production by employees or restrictions on the full use of tools or equipment.  Employees using tools shall perform any of the work of the trade and shall work under the direction of the craft foremen.  There shall be no restrictions on efficient use of manpower other than as may be required by safety regulations.

10.3    The Primary Employer and/or any Employer may establish and employees shall observe such reasonable project job site work rules as the Primary Employer and/or Employer deems appropriate.  These rules will be reviewed and discussed at the pre-job conference, distributed to all employees, posted at the project site by the Primary Employer, and may be amended thereafter as necessary.

## ARTICLE 11
## MANAGEMENT RIGHTS

11.1    The Primary Employer and Employers retain and shall exercise full and exclusive authority and responsibility for the management of their respective operations and work forces, except as expressly limited by the terms of this Agreement or the applicable Master Agreement.  This authority includes, but is not limited to, the rights retained by Employers under the Master Agreement and the rights to:

11.1.1  Plan, direct and control the operation of all the work.

11.1.2  Decide the number and type of employees required for the work.

11.1.3  Hire, promote and layoff employees as deemed appropriate to meet work requirements and/or skills required, and to select and hire directly all supervisory personnel above the classification of general foreman it considers necessary and desirable, without such persons being referred by the Union.

2842-051cv

13

11.1.4  Discharge, suspend or discipline employees in accordance with the applicable Master Agreement.

11.1.5  Require all employees to observe the Primary Employer's, Employer's and Owner's reasonable Project Rules, Security, Environmental and Safety Regulations, consistent with the provisions of this Agreement. These Project Work Rules and Regulations shall be supplied to the Union, to all employees and posted on the job site.

11.1.6  Determine the work methods and procedures.

11.1.7 Determine the competency of all employees.

11.1.8 Assign and schedule work at its sole discretion and determine when overtime will be worked.  There shall be no refusal by any Union to perform work, including overtime work, assigned.  Such cases shall be subject to the grievance procedure.

11.1.9 Utilize any safe work methods, procedures or techniques and select and use any type or kind of materials, apparatus or equipment regardless of source, manufacturer or designer.

11.1.10 Purchase materials or equipment from any source it deems appropriate.

11.2  The foregoing listing of management rights shall not be deemed to exclude other functions not specifically set forth herein.  The Employers, therefore, retain all legal rights not specifically given up in this Agreement.

## ARTICLE 12
## SUCCESSORSHIP AND SURVIVABILITY

12.1  The subcontracting obligations described in Article 3 are independent obligations of Primary Employer which shall survive any full or partial termination of Primary Employer's involvement in the Project for any reason, including, without limitation: (i) any full or partial termination or transfer of Primary Employer's right to control and coordinate construction work on the Project; (ii) any full or partial termination or transfer of a contract, if any, between Primary Employer and any Owner for any Covered Work; (iii) the transfer of all or any portion of the Project or any interest in the Project by any Project Owner; or (iv) any other event that results in the replacement of Primary Employer with another contractor.

12.2    The parties agree that:  (i) if Primary Employer's involvement

2842-051cv                                    14

in the Project is terminated as described in Section 12.1, and (ii) Covered Work is performed by a contractor or subcontractor that is not in compliance with the provisions of Article 3, then Primary Employer shall pay liquidated damages, as described in Section 12.3, to compensate for the actual damages caused by reason thereof. The parties agree that such damages would be unreasonably difficult, costly, inconvenient or impracticable to calculate and, accordingly, they agree to liquidated damages which bear a reasonable relationship to the actual harm suffered by the Union and their members, as provided in Section 12.3 ("Liquidated Damages").

12.3    In that Liquidated Damages are owed as described in Section 12.2, Primary Employer shall pay an amount equal to the journeyman total compensation package of the applicable Union for each hour that work was performed on the Project within the scope of this Agreement by employees of contractors or subcontractors who are not signed to this Agreement. The Liquidated Damages shall be paid as follows: Half to the qualified pension plan and half to the qualified health and welfare plan of the Union having jurisdiction over the work performed by the contractor not signatory to this Agreement. The parties agree that the Unions shall enforce, collect and receive Liquidated Damages pursuant to Article 12 on behalf of its qualified pension plan and its qualified health and welfare plan. The qualified pension plans and the qualified health and welfare plans shall have no right to enforce independently the provisions of this Agreement, including, but not limited to, the Liquidated Damages provisions contained in Article 12.

12.4    Primary Employer shall be released from all obligations under this Agreement with respect to all or any portion of the Project, including liability for the payment of Liquidated Damages, and shall have no liability for any breach of this Agreement by a successor upon Primary Employer's receipt of a fully executed release by the Union. Such release shall not be withheld if, under all the circumstances, the Union, in the exercise of its reasonable judgment, determines that the successor has the financial means to complete the Project and to comply with the successor Primary Employer's obligations and undertakings under this Agreement, including any obligation to pay Liquidated Damages.

12.5    This Article shall be enforceable in any court of competent jurisdiction, and shall not be subject to the grievance procedure of Article 8.

## ARTICLE 13
## HELMETS TO HARDHATS

13.1   The Employers and Unions recognize a desire to facilitate the entry into the building and construction trades of veterans and members of the National Guard and Reserves who are interested in careers in the building and construction industry.  The Employers and Unions agree to utilize the services of the Center for Military Recruitment, Assessment and Veterans Employment ("Center"), a joint Labor-Management  Cooperation Trust Fund, established under the authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. Section 175(a), and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. Section 186(c)(9), and a charitable tax exempt organization under Section 501(c)(3) of the Internal Revenue Code, and the Center's "Helmets to Hardhats" program to serve as a resource for preliminary orientation, assessment of construction aptitude, referral to apprenticeship programs or hiring halls, counseling and mentoring, support network, employment opportunities and other needs as identified by the parties.

13.2   The Unions and Employers agree to coordinate with the Center to create and maintain an integrated database of veterans and members of the National Guard and Reserves interested in working on this Project and apprenticeship and employment opportunities for this Project.  To the extent permitted by law, the Union will give credit to such veterans and members of the National Guard and Reserves for bona fide, provable past experience.

## ARTICLE 14
## GENERAL PROVISIONS

14.1   If any article or provision of this Agreement shall become invalid, inoperative and/or unenforceable by operation of law or by declaration of any competent authority of the executive, legislative, judicial or administrative branches of the federal or state government, the parties shall suspend the operation of such article or provision during the period of its invalidity, and the Primary Employer and the Unions shall negotiate in its place and stead an article or provision that will satisfy the objections to its validity and that, to the greatest extent possible, will be in accord with the intent and purpose of the article or provision in question.  The new article or provision negotiated by the Primary Employer and the Unions shall be binding on all parties signatory to this Agreement.  At all times relevant the provisions of Article 6 will apply.

14.2   If any article or provision of this Agreement shall be held invalid, inoperative or unenforceable by operation of law, or by any of the above mentioned tribunals of competent jurisdiction, the remainder of the Agreement or application of such article or provision to persons or

2842-051cv                                  16

circumstances other than to which it has been held invalid, inoperative or unenforceable shall not be affected thereby.

14.3    The provisions of this Agreement shall take precedence over conflicting provisions of the applicable Master Agreement or any other local, area, regional, or national collective bargaining agreement.

14.4    Except as enumerated in this Agreement, all other terms and conditions of employment described in the Master Agreement shall apply.

14.5    This Agreement may be amended or otherwise modified by mutual agreement in writing between Primary Employer and the Unions. Employers executing Attachment A, the Agreement to be Bound, acknowledge and accept all such amendments and modifications executed prior to their respective execution of the Agreement to be Bound.

14.6    Each person executing this Agreement represents and warrants that he or she is authorized to execute this Agreement on behalf of the party or parties indicated.

14.7    This Agreement may be executed in any number of counterparts, and each counterpart shall be deemed to be an original document. All executed counterparts together shall constitute one and the same document, and any signature pages may be assembled to form a single original document.

## ARTICLE 15
## TERM OF AGREEMENT

15.1  The term of this Agreement shall commence on the date indicated below as the date of execution, and shall continue in effect until completion of all Covered Work at the Project pursuant to Article 2.

EXHIBIT "F" PAGE 97

IN WITNESS WHEREOF, the Parties have caused this
Agreement to be executed and effective as of March *13*, 2015.

McCarthy Building Companies, Inc.          Laborers Local Union 270

By:_____        By: *Enrique G. Arguello*
Its: *Vice President Operations*      Its: Business Manager

                                   Carpenters Local Union 605


                                   By:_____
                                   Its: Business Manager

                                   Pile Drivers Local Union 34


                                   By:_____
                                   Its: Business Manager

                                   Millwrights Local Union 102


                                   By:_____
                                   Its: Business Manager

                                   Operating Engineers Local Union 3


                                   By:_____
                                   Its: Business Manager


                                   International Brotherhood of Electrical
                                   Workers Local Union 234


                                   By:_____
                                   Its: Business Manager

                                   Iron Workers Local Union 155


                                   By:_____
                                   Its: Business Manager

2842-051cv                    18

IN WITNESS WHEREOF, the Parties have caused this
Agreement to be executed and effective as of March _13_, 2015.

McCarthy Building Companies, Inc.            Laborers Local Union 270

By: _____            By: _____
Its: _Vice President Operations_            Its: Business Manager

                                            Carpenters Local Union 605

                                            By: _____
                                            Its: Business Manager

                                            Pile Drivers Local Union 34

                                            By: _____
                                            Its: Business Manager

                                            Millwrights Local Union 102

                                            By: _____
                                            Its: Business Manager

                                            Operating Engineers Local Union 3

                                            By: _____
                                            Its: Business Manager

                                            International Brotherhood of Electrical
                                            Workers Local Union 234

                                            By: _____
                                            Its: Business Manager

                                            Iron Workers Local Union 155

                                            By: _____
                                            Its: Business Manager

2842-051cv                     18

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and effective as of March _13_, 2015.

McCarthy Building Companies, Inc.                    Laborers Local Union 270

By: _____                        By: _____
Its: _Vice President Operations_                      Its: Business Manager

                                                     Carpenters Local Union 605


                                                     By: _____
                                                     Its: Business Manager

                                                     Pile Drivers Local Union 34


                                                     By: _____
                                                     Its: Business Manager

                                                     Millwrights Local Union 102


                                                     By: _____
                                                     Its: Business Manager

                                                     Operating Engineers Local Union 3


                                                     By: _____
                                                     Its: Business Manager


                                                     International Brotherhood of Electrical
                                                     Workers Local Union 234


                                                     By: _____
                                                     Its: Business Manager

                                                     Iron Workers Local Union 155


                                                     By: _____
                                                     Its: Business Manager

2842-051cv                          18

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and effective as of March _13_, 2015.

McCarthy Building Companies, Inc.  Laborers Local Union 270

By:_____  By:_____
Its:_____  Its: Business Manager

          Carpenters Local Union 605

          By:_____
          Its: Business Manager

          Pile Drivers Local Union 34

          By:_____
          Its: Business Manager

          Millwrights Local Union 102

          By:_____
          Its: Business Manager

          Operating Engineers Local Union 3

          By:_____
          Its: Business Manager

          International Brotherhood of Electrical Workers Local Union 234

          By:_____ 3·24·2015
          Its: Business Manager

          Iron Workers Local Union 155

          By:_____
          Its: Business Manager

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and effective as of March _13_, 2015.

McCarthy Building Companies, Inc.          Laborers Local Union 270

By:_____          By:_____
Its:_____          Its:  Business Manager

                                     Carpenters Local Union 605

                                     By:_____
                                     Its:  Business Manager

                                     Pile Drivers Local Union 34

                                     By:_____
                                     Its:  Business Manager

                                     Millwrights Local Union 102

                                     By:_____
                                     Its:  Business Manager

                                     Operating Engineers Local Union 3

                                     By:_____
                                     Its:  Business Manager

                                     International Brotherhood of Electrical
                                     Workers Local Union 234

                                     By:_____
                                     Its:  Business Manager

                                     Iron Workers Local Union 155

                                     By:_____
                                     Its:  Business Manager

2842-051cv          18

**EXHIBIT 5**

ATTACHMENT A
AGREEMENT TO BE BOUND

PROJECT LABOR AGREEMENT
CALIFORNIA FLATS SOLAR PROJECT

The undersigned hereby certifies and agrees that:

1.)     It is an Employer as that term is defined in Section 1.4 of the California Flats Solar Project Labor Agreement ("Agreement") because it has been, or will be, awarded a contract or subcontract to assign, award or subcontract Covered Work on the Project (as defined in Article 2 of the Agreement), or to authorize another party to assign, award or subcontract Covered Work, or to perform Covered Work.

2.)     In consideration of the award of such contract or subcontract, and in further consideration of the promises made in the Agreement and all attachments thereto (a copy of which was received and is hereby acknowledged), it accepts and agrees to be bound by the terms and conditions of the Agreement, together with any and all amendments and supplements now existing or which are later made thereto.

3.)     If it performs Covered Work, it will be bound by the legally established trust agreements designated in local master collective bargaining agreements, and hereby authorizes the parties to such local trust agreements to appoint trustees and successor trustee to administer the trust funds, and hereby ratifies and accepts the trustees so appointed as if made by the undersigned.

4.)     It has no commitments or agreements that would preclude its full and complete compliance with the terms and conditions of the Agreement.

5.)     It will secure a duly executed Agreement to be Bound, in form identical to this document, from any Employer(s) at any tier or tiers with which it contracts to assign, award, or subcontract Covered Work, or to authorize another party to assign, award or subcontract Covered Work, or to perform Covered Work.

DATED:                          Name of Employer

_Sachs Electric Co._

_Steven J. Domm_ - Vice President

(Authorized Officer &

_1572 Larkin Williams Rd_

_Fenton, MO 63026_

Title) (Address)

**ATTACHMENT B**
**WORK ASSIGNMENTS**

| ITEM | WORK ACTIVITY | ASSIGNMENT |
|------|---------------|------------|
| 1. | Surveying | OE |
| 2. | Soil testing, compaction testing | OE |
| 3. | Grading, cranes, trenching machines, forklift work serving multiple crafts | OE |
| 4. | Curbs and gutters | Carp/IW/Laborers |
| 5. | Vegetation management and weed control | Laborers |
| 6. | Chain link perimeter fencing | Laborers/OE |
| 7. | Dust control | Laborers |
| 8. | Landscaping and erosion control | Laborers |
| 9. | Rigging for off-loading of large equipment or materials of multiple crafts | IW |
| 10. | Excavation and backfilling of trenches by hand | Laborers |
| 11. | Drinking water distribution | Laborers |
| 12. | General site cleanup | Laborers |
| 13. | Concrete foundations | Carp/IW/Laborers |
| 14. | Post insertion<br>• Seated equipment<br>• Walk-behind equipment (no seat and <50 HP) | OE/Piledrivers<br>Laborers |
| 15. | Uncrating of metallic components of the racking system | Laborers |
| 16. | Supporting steel, brackets, I-Beams, and other metallic components of the racking system between the post and module attachment | IW |
| 17. | Cleanup of crating materials for the racking system | Laborers |
| 18. | Handling and installation of PV Modules:<br><br>   The staging area placement, inspection, uncrating of panels will be the work of the Laborers, including cleanup of crate materials.<br>   The installation of PV panels/modules is the work of the IBEW | Laborers<br><br><br><br>IBEW |

2842-051cv                                    20

| ITEM | WORK ACTIVITY | ASSIGNMENT |
|------|---------------|------------|
| 19. | Electrical and communications wiring, cables and conduit below and above ground, AC and DC connections, wire trays, combiner boxes, tracking control boxes and other electrical equipment | IBEW |
| 20. | Mounting and alignment of drive motors; pivot shaft | Millwright |
| 21. | Handling and installation of inverter enclosures | IBEW/IW |
| 22. | Industry standard electrical startup and commissioning | IBEW |
| 23. | Buildings | BTs Plan Jurisdiction |
| 24. | Water storage tanks and piping | Boilermaker/UA |

Any other work assignments will be based on this table and traditional building trades' jurisdiction.

### Journeyman and Apprenticeship Ratios

Handling and installation of PV modules will be primarily performed by employees in the IBEW CW classification. There shall be at least one journeyman and one apprentice for each four CWs.

There shall be at least one journeyman for each apprentice for IBEW Covered Work other than PV module handling and installation.

Employers may utilize Ironworker apprentices for all Ironworker Covered Work, provided that there shall be at least one journeyman for each one apprentice.

2842-051cv

# ATTACHMENT C
# Construction Wireman



Construction Electrician/Construction Wireman
Wage and Fringe Benefits

California Bay Area Region
For Locals 6, 180, 234, 302, 332, 551, 595W, and 617
Effective January 1, 1015 to May 31, 2015



| CE/CW Classifications | WAGE | HEALTH & WELFARE (refer to Appendix D) | NEBF (3% of wages) | NLMCC | TRAINING (JATC) | AMF (0.5% of wages) | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|
| Construction Electrician Level 2, (Lead/Foreman (110%) | $31.60 | $5.01 | $0.95 | $0.01 | $0.85 | $0.16 | $38.58 |
| Construction Electrician Level 2 (10,001 and above) | $28.73 | $5.01 | $0.86 | $0.01 | $0.85 | $0.14 | $35.60 |
| Construction Electrician Level 1 (8,001 - 10,000 hrs) (80%) | $22.98 | $5.01 | $0.69 | $0.01 | $0.85 | $0.11 | $29.65 |
| Construction Wireman Step 6 (7,001 - 8,000 hrs) (75%) | $21.55 | $5.01 | $0.65 | $0.01 | $0.85 | $0.11 | $28.18 |
| Construction Wireman Step 5 (6,001 - 7,000 hrs) (70%) | $20.11 | $5.01 | $0.60 | $0.01 | $0.85 | $0.10 | $26.68 |
| Construction Wireman Step 4 (5,001 - 6,000 hrs) (65%) | $18.67 | $5.01 | $0.56 | $0.01 | $0.85 | $0.09 | $25.19 |
| Construction Wireman Step 3 (4,001 - 5,000 hrs) (60%) | $17.24 | $5.01 | $0.52 | $0.01 | $0.85 | $0.09 | $23.72 |
| Construction Wireman Step 2 (3,001 - 4,000 hrs) (55%) | $15.80 | $5.01 | $0.47 | $0.01 | $0.85 | $0.08 | $22.22 |
| Construction Wireman Step 1 (2,000 -3,000 hrs) (50%) | $14.37 | $5.01 | $0.43 | $0.01 | $0.85 | $0.07 | $20.74 |

1. All trust contributions shall paid on hours worked.
2. Apprenticeship contributions shall be paid to the Local Union where the work is being performed.
3. Working assessments will be 3% of the hourly wage and shall be paid to the Local Union where the work is being performed.
4. June 1, 2015 – cost of living increase using the Bay Area index

2842-051cv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "G"

# INSIDE AGREEMENT

by and between

The Monterey Bay California Chapter

of the

National Electrical Contractors Association (NECA)



and



International Brotherhood of Electrical Workers (IBEW)

Local Union No. 234

Effective June 1, 2015 – May 31, 2018

**TABLE OF CONTENTS**

BASIC PRINCIPLES ............................................................................................................. 1
STANDARD CIR ................................................................................................................... 1
EFFECTIVE DATE/ CHANGES/GRIEVANCES/DISPUTES .............................................. 1
EMPLOYER RIGHTS – UNION RIGHTS ........................................................................... 3
HOURS/WAGES/WORKING CONDITIONS ....................................................................... 9
REFERRAL PROCEDURE ................................................................................................ 23
STANDARD INSIDE APPRENTICESHIP & TRAINING LANGUAGE ................................ 26
VACATION ........................................................................................................................ 30
HEALTH AND WELFARE PLAN ....................................................................................... 30
EDUCATIONAL AND TRAINING FUND ........................................................................... 30
PENSION PLAN ................................................................................................................ 31
NEBF ................................................................................................................................ 32
NATIONAL ELECTRICAL INDUSTRY FUND (NEIF) ....................................................... 32
LOCAL LABOR-MANAGEMENT COOPERATION COMMITTEE (LMCC) ....................... 33
NATIONAL LABOR-MANAGEMENT COOPERATION COMMITTEE (NLMCC) .............. 34
ADMINISTRATIVE MAINTENANCE FUND ...................................................................... 35
SUBSTANCE ABUSE ....................................................................................................... 35
TRANSMITTAL FORMS .................................................................................................... 35
CODE OF EXCELLENCE .................................................................................................. 37
SEPARABILITY CLAUSE .................................................................................................. 37

## INSIDE AGREEMENT

Agreement by and between the Monterey Bay California Chapter of the National Electrical Contractors Association (NECA) and Local Union No. 234, IBEW.

It shall apply to all firms who sign a Letter of Assent to be bound by the terms of this Agreement.

As used hereinafter in this Agreement, the term "Chapter" shall mean the Monterey Bay California Chapter of NECA and the term "Union" shall mean Local Union No. 234, IBEW.

The term "Employer" shall mean an individual firm who has been recognized by an assent to this Agreement.

## BASIC PRINCIPLES

The National Electrical Contractors Association and the International Brotherhood of Electrical Workers having common and sympathetic interest in the Electrical Industry and wishing to further the use of electricity in a manner safe to life and property while protecting the legitimate interests of both the public and the people engaged in the industry, realize that a system of maintaining harmonious relations and continuous peace between the Employer and the Employee is necessary, and in good faith agree to adjust any differences by rational and common sense methods.

The Employer and the Union recognize the desirability of providing continued employment in the Electrical Construction Industry and the necessity of having available at all times, a supply of competent Employees with experience and training in the various types of work covered by this Agreement.

In accordance with the Federal Government Executive Orders, the Fair Employment Practices Act of the State of California, and other applicable laws, the parties to this Agreement are obligated not to discriminate against Employees or applicants for employment because of race, religion, color, age, sex, creed, national origin or disability.

Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto do agree as follows:

## ARTICLE I
## STANDARD CIR
## EFFECTIVE DATE/ CHANGES/GRIEVANCES/DISPUTES

**EFFECTIVE DATE:**
**Section 1.01.**  This Agreement shall take effect June 1, 2015, and shall remain in effect until May 31, 2018 unless otherwise specifically provided for herein.  It shall continue in effect from year to year thereafter, from June 1 through May 31 of each year, unless changed or terminated in the way later provided herein.

**CHANGES:**
**Section 1.02(a).**  Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b). Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c). The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d). Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

(e). When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

(f). Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

**Section 1.03.** This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW for approval, the same as this Agreement.

**Section 1.04.** There shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

**GRIEVANCES/DISPUTES:**
**Section 1.05.** There shall be a Labor-Management Committee of three representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

**Section 1.06.** All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

**Section 1.07.** All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

**Section 1.08.** Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

**Section 1.09.**  When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

**Section 1.10.**  Any grievance not brought to the attention of responsible opposite parties to this Agreement in writing within 20 working days of its occurrence shall be deemed to no longer exist.  No committee member shall sit on a case in which he is directly involved.

## ARTICLE II
## EMPLOYER RIGHTS – UNION RIGHTS

### Section 2.01. EMPLOYEES WITH C-10
(a) No Employee, employed by or available for employment by Employers covered by this Agreement, shall himself become a contractor for the performance of any electrical work.  Any employee that possesses a C-10 license shall deactivate the license.

(b) Employee Definition: Anyone performing work that is covered by the Scope of this Agreement shall be considered as an Employee under this Agreement.

### Section 2.02. FAVORED NATIONS
The Union agrees that if, during the life of this Agreement, it grants to any other Employer in the Electrical Contracting Industry on work covered by this Agreement any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement and the Union shall immediately notify the Employer of any such concession.

### Section 2.03. UNION
The Employer recognizes the Union as the sole bargaining agent of the Employees covered under this Agreement.

### Section 2.04. UNION SECURITY
All Employees covered by the terms of the Agreement shall be required to make application for membership, become and remain members of the Union as a condition of employment from and after the eighth (8) calendar day following the date of their employment or the effective date of this Agreement, whichever is later.

### Section 2.05. MANAGEMENT RIGHTS
The Union understands the Employer is responsible to perform the work required by the owner.  The Employer shall, therefore, have no restrictions except those specifically provided for in the collective bargaining agreement, in planning, directing and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as Foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

## Section 2.06. EMPLOYER QUALIFICATIONS

(a) Certain qualifications, knowledge, experience and financial responsibilities are required of everyone desiring to be a signatory party to this Agreement.  Therefore, an Employer, by signing this Agreement certified that it is a person, firm, partnership or corporation whose principal business is electrical contracting and who possesses the following qualifications and possesses documentary evidence substantiating the following:

    (1) Maintains a legal place of business, which means an established office and shop, displaying a sign stating the nature of the business, conducts the ordinary tasks of operating his business and maintains a telephone and complete payroll records.

    (2) Agrees to comply with all fringe benefit trust provisions.

(b) The Union shall refer job applicants at the request of the Employer to either shop or job.

(c) The Employer shall make available, as required, sufficient job payroll data in order that prevailing wages may be properly certified under Davis-Bacon and similar acts.

## Section 2.07. RESPONSIBLE MANAGING OFFICER & RESPONSIBLE MANAGING EMPLOYEE*

Any signatory party or firm that becomes RMO or RME to any other person, firm, or corporation that does not immediately upon demand, become signatory to this Agreement, shall upon written notice by the Union immediately withdraw as RMO or RME.  Failure to withdraw shall be cause for cancellation of the individual Employer's Agreement.

*(As defined in Chapter 9, Article 5, of the Business & Professions Code, State of California Contractors License Law.)

## Section 2.08. WORK PRESERVATION CLAUSE

(a) In order to protect and preserve, for the Employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners or stockholders, exercises either directly or indirectly, management, control or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.  All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

(b) As a remedy for violations of this section, the Labor-Management Committee, the Council on Industrial Relations for the Electrical Contracting Industry and/or an independent arbitrator, as the case may be, are empowered, in their discretion and at the request of the Union, to require an Employer to (1) pay to affected Employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such Employees as a result of violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations.  Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or other articles of this Agreement.

(c) If, as a result of violations of this section, it is necessary for the Union and/or the Trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (b) above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or fund Trustees plus costs of the litigation, which have resulted from the bringing of such court action.

## Section 2.09. INSURANCE

For all Employees covered by this Agreement, the Employer shall carry Workman's Compensation (and other employee related) Insurance as required by law of the State of California. The Employer shall furnish, upon request by the Union, a certificate of insurance which contains a ten (10) day cancellation notice clause to the Union as proof.

## Section 2.10. FRINGE BENEFIT REMEDY

(a) The failure of an individual Employer to comply with the provisions set forth covering contributions to the funds required by this Agreement shall also constitute a breach of the labor agreement. As a remedy for such violation, the Labor-Management Committee and/or the form of arbitration provided for in this Agreement, as the case may be, are empowered at the request of the Union to require an Employer to pay into the affected joint trust funds established under this Agreement, any delinquent contributions to such funds which have resulted from the violation.

(b) If, as a result of violations of this section, it is necessary for the Union and/or the Trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (a) above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountant's and attorneys' fees incurred by the Union and/or Fund Trustees, plus the cost of the litigation which have resulted from the bringing of such action.

(c) Individual Employers who fail to remit as provided shall be additionally subject to having this Agreement terminated after three (3) business days written notice being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid.

## Section 2.11. SURETY BOND

Any contractor employing up to five (5) employees covered by this Agreement will have to post a seventy-five hundred dollar ($7,500) bond or cash; any contractor employing from five (5) to ten (10) employees covered by this Agreement will have to post a ten thousand dollar ($10,000) bond or cash; any contractor employing more than ten (10) employees covered by this Agreement will have to post a fifteen thousand dollar ($15,000) bond or cash. Said bond shall be presented to the IBEW Union office within five (5) business days following the referral of the first employee and in a form acceptable to the parties to this Agreement, and guarantee payment of current, delinquent and future wages and/or fringe benefits provided for in this Agreement. Certification of participation in the NECA West Payroll and Fringe Benefit Guarantee Trust Fund will satisfy this bond requirement.

## Section 2.12. PICKET LINE

It shall not be considered a violation of this Agreement, nor shall any Employee be discharged by the Employer if he recognizes another Labor Union's primary picket line which is sanctioned by the local Central Labor Council, or the Building Trades Council. Should Employees leave the job where there is such sanctioned picket line, they shall carefully put away all tools, material, and equipment or other property of the Employer in a safe manner. The Union will be financially responsible for any loss to the Employer by Employees for neglect in carrying out this provision, but only when a safe place is provided for such property by the Employer. The Union will provide verbal confirmation of the sanction to the NECA Chapter within two (2) business days after an inquiry has been made regarding active pickets by any signatory party.

## Section 2.13. LOANING OF EMPLOYEES
The Employer shall not loan, or cause to be loaned, any of his Employees to any other Employer.

## Section 2.14. WORKING CONTRACTOR
One (1) Employer member of the firm shall be allowed to work with the tools, provided the Employer:

(a) Applies to the Local Union for an application.  The Union shall notify the Chapter of the one (1) Employer member of the firm who may work with the tools.  Upon receipt of such notification, this working member cannot be changed without sixty (60) days prior written notice to the Union and the Chapter.

(b) Any and all work, as defined under the scope of this Agreement performed outside of regular working hours shall not be performed by the designated working member of the firm, if an employee exists, except in the case of an emergency.  (Danger to life, limb or loss of property).

(c) The Employer hereby agrees that he has an obligation to provide gainful employment for his Employees prior to the Employer performing any work.

(d) Circumventing the intent of "Employer" shall not be permitted by the pretense of ownership by an immediate member of the family or by other means.  He must be a journeyman of the trade or be included on the State License of the firm.  He shall provide proof of ownership of at least twenty-five percent (25%) of the business to the satisfaction of the Union.

(e) The working Employer shall not be permitted to work behind sanctioned lawful picket lines in order to perform work that comes under the scope of the Agreement.

## Section 2.15. STEWARDS
(a) The Union shall have the right to appoint a Steward at any shop or on any job where Employees are employed under the terms of this Agreement.  Such Stewards shall see that this Agreement and working conditions are observed, and he shall be allowed sufficient time to perform these duties during regular working hours.  The Steward shall be offered the opportunity to be included in the crew when overtime is worked, the same as other Employees.

(b) The Steward shall be notified prior to starting all premium time work on the job(s) under his area of concern, including but not limited to overtime, hightime, etc.  The daily makeup of each crew on any job with more than one (1) crew shall be made available to the Steward.

(c) Under no circumstances shall an Employer dismiss or otherwise discriminate against an Employee for making a complaint or giving evidence with respect to an alleged violation of any provision of the Agreement.

(d) The Union shall notify the Employer of the name of the Steward(s).  The Employer shall not remove, transfer, or dismiss any Steward from a shop or job site where a Steward has been appointed, except for just cause, unless mutually agreed upon with the Business Manager.  JOB SITE means any location where work is being performed under the terms and conditions of this Agreement.

(e) Employers shall cooperate with the Steward in adjusting grievances and jurisdictional disputes, and in seeing that all overtime is equally distributed among the men on the job or in the shop insofar as is practical.

(f) The Steward shall be notified of all new hires, and all terminations as set forth below:
    (1) Shop Steward - On the same day when a man quits, is laid off, or is discharged.
    (2) Job Steward - Prior to the issuance of the termination check.

(g) The appointment of a second (2nd) Steward may be made on any job after thirty (30) men are working on the job.

## Section 2.16. UNION ACCESS

(a) Time cards indicating the amount of time per job and the date worked shall be maintained by the Employer and shall be made available to the Business Manager or the Union for the purpose of checking the amount of time worked by Employees.

(b) The Business Manager or his assistant, shall have the right to visit the Employer's place of business during normal business hours to inspect the books of the Employer as they deal with the time records and methods of pay and expenses applying to Employees covered by this Agreement.

(c) The Business Manager of the Union or his assistant shall be allowed reasonable access to any shop or job where Employees are employed under the terms of this Agreement.

## Section 2.17. SUBCONTRACTING AND PIECE WORK

(a) No Employer shall directly or indirectly, or by any subterfuge, sublet, or contract with any Employee, all or any part of the labor services required by any contract of such Employer.

(b) There shall be no piece-work, and no Employer, Employees or other agents shall give or accept, directly or indirectly, any rebate of wages.  No Employer shall directly or indirectly or by any subterfuge, sublet or contract with any Employee to perform any labor or provide any services required of an Employer except as provided herein.  No Employer shall sublet, borrow, or contract with any Employee for the use of any tools, equipment or vehicle.

## Section 2.18. ANNULMENT/SUBCONTRACTING

The Local Union is a part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

All charges of violations of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provision of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

## Section 2.19. UNION LABEL

The Employer agrees that he will not require any Employee to work on any products, equipment or materials which do not bear a union label or are manufactured under substandard wages and/or conditions.  Any such requirement shall be considered a grievance as hereinbefore provided for.

## Section 2.20. WAGE OR PRICE FREEZE

All or any part of any negotiated wage increase agreed to by the parties that is prohibited or deferred by a Governmental wage or price freeze, shall become effective immediately following the day the wage or price freeze is lifted.

## Section 2.21. EFFECTIVE RATE CHANGE

The parties hereby agree that due to difficulties encountered in the reporting process, all changes in the reporting shall become effective on the first (1st) day of the pay week of the month that the change becomes effective.

## Section 2.22. DISTRIBUTION OF WAGES ON FRINGE BENEFITS

It is mutually agreed that any portion of the agreed wage rate change may be added to any of the fringe benefits that exist as stipulated by the membership of I.B.E.W. Local Union No. 234.

## Section 2.23. NON-RESIDENT EMPLOYEES: *(Portability)*

An Employer signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, who signs an assent to this Agreement, may bring up to four bargaining unit employees employed in that Local Union's jurisdiction into this Local's jurisdiction and up to two bargaining unit employees per job from that Local's jurisdiction to this Local's jurisdiction for specialty or service and maintenance work.   All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of this agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on Employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director, is subject to review, modification, or rescission by the Council on Industrial Relations.

## Section 2.24. FOREMAN CALL-OUT

The Employer shall have the right to call Foremen by name provided:

(1) The Employer shall notify the business manager in writing of the name of the individual who is to be requested for employment as a Foreman.   Upon such request, the business manager shall refer said Foreman provided the name appears on the highest priority group. If no Foremen are on the highest priority list, (Book One), Foremen shall be referred from Book Two.

(2) When an Employee is called as a Foreman, he must remain as a Foreman or must receive a reduction in force.

(3) Requested individuals shall possess a valid CPR certificate.

(4) Requested individuals shall have passed a recognized Industry Foremanship class after January 1, 1995 or shall be able to document a minimum of one (1) year's experience working as a Foreman in the Electrical Contracting Industry.

Requested individuals, Employees and/or Employers who falsify information or violate any eligibility requirement may be considered ineligible and no longer be able to participate in this program.

**Section 2.25 JOURNEYMAN RECALL**

An employer shall have the right to recall for employment any former employee that the employer has laid off, provided that:

(1) The former employee is in the highest level Group on the referral list containing applicants available for work, regardless of the individual's position on the list; or,

(2) The recall is made within 30 days from the time of layoff;

(3) The former employee has not quit his most recent employer under this agreement within the two weeks prior to the recall request;

(4) As a former employee was employed 30 days or more prior to layoff;

(5) And the former employee is not an apprentice."

## ARTICLE III
## HOURS/WAGES/WORKING CONDITIONS

**Section 3.01. WORK DAY AND WORKWEEK**

(a) Eight (8) hours shall constitute a days work from 8:00 a.m. to 12:00 noon, and from 12:30 p.m. to 4:30 p.m. on Monday through Friday.  A paid rest break shall be provided to all employees approximately midway through the morning and afternoon work periods.  The rest periods shall be no more than ten (10) minutes in length and are to be taken in designated break areas as dictated by the owner.  Additional rest periods shall be furnished if work continues outside of the normal workday.

(b) The first two (2) hours of overtime that is worked <u>contiguous or in conjunction</u> with the scheduled work day, either before or after, and up to eight (8) hours on Saturday between 8:00 a.m. and 4:30 p.m. may be worked at the time and one-half (1 ½) rate of pay.

(c) Time worked outside of (a) and (b) above and on Sundays and Holidays as set forth in 3.10 shall be paid at double (2x) rate of pay.

(d) An Employee reporting to the shop at the end of the regular workday shall be at the shop by 4:30 p.m. or the applicable overtime rate shall apply.

(e) Employees shall be required to report to an assigned area designated by the Employer.  All Employees that are part of an assigned crew shall report to the same assignment area which shall be a job shack or a company owned gang box.  This location shall not be more that 1,000' from the parking area. If the parking area is further than 1000 feet from the assignment area, the employee will walk in on his/her time and will walk out on the employer's time.  The applicable rate of pay shall apply.

(f) When directed by the owner or General Contractor, an adjusted workday of 8 ½ continuous hours (unpaid lunch) may be performed Monday through Friday, excluding Saturdays, Sundays and Holidays.

The adjusted workday shall be eight (8) hours of work between the hours of 4:30 p.m. and 8:00 a.m.  Workmen shall be paid for a minimum of eight (8) hours for the shift regardless of hours worked (unless time off is requested by the Employee).  The thirty-minute lunch period is to be taken at the end of four (4) hours of work.  The starting time of the adjusted workday may be adjusted with the approval of the Union.

The workmen on this shift shall receive the regular hourly rate plus 25% of the basic Journeyman Wireman rate for each hour paid.

Overtime before or after the shift shall be paid at the double (2x) time rate.

(g) The employer, by mutual consent of the Union, may institute a work week consisting of four (4) consecutive ten (10) hour days between the hours of 7:00 a.m. and 6:00 p.m., Monday through Thursday, with one-half hour allowed for a lunch period.  Friday may be used as a make-up day, and, if utilized, a minimum of eight (8) hours must be scheduled.  After ten (10) hours in a workday, overtime shall be paid at a rate of double (2x) time the regular rate of pay.  The first eight (8) hours worked, after forty (40) hours of work at the regular rate of pay, shall be paid at a rate of one and one-half (1 ½) times the regular rate of pay.  Any subsequent hours worked shall be paid at a rate of double (2x) time the regular rate of pay.  Employees will not be penalized or otherwise discriminated against for refusing to work the make-up day.

## Section 3.02. MEAL PERIOD

(a) When overtime is worked in conjunction with the normal working hours, as set forth in 3.01, the Employee shall receive a one-half (1/2) hour meal period with pay, at the appropriate rate, after the first two (2) hours of cumulative overtime if work is to continue.  Thereafter, a paid meal period of one-half (1/2) hour shall be provided every four (4) hours if work is to continue.

(b) When overtime is worked that is outside of, and not in conjunction with the normal working hours as set forth in 3.01, a meal period of thirty (30) minutes shall occur every four (4) hours if work is to continue.  The first designated meal period shall be on the employees time provided the Employee was given at least two (2) hours prior notice to report for work.  Subsequent meal periods shall be paid at the appropriate rate.

(c) When meals are not readily available, the Employer shall allow one member of the crew time to obtain meals for the Employees prior to the meal period, providing the Employee did not receive notification of the overtime two (2) hours prior to reporting to work.  Employees will be responsible for food expenses.

Clarification: Insofar as 3.02(a), (b) and (c) are concerned, time worked on a Saturday, Sunday, or a Holiday shall be the same as time worked on a normal workday.
Definition: "conjunction with" is an unbroken continuation either before or after the normal working hours.

**Section 3.03. OVERTIME REPORTING**

No overtime work shall be performed without prior notification to the Business Manager or Steward by the Employer or Employee.  The Employer or Employee shall notify the Business Manager or Steward prior to starting all overtime work naming men and job.  At the completion of the overtime, the Business Manager or his office shall be notified that overtime is completed and state the length of the overtime. (831) 633-2311

**Section 3.04. WAGES**

(a) Trade Classifications shall be: Journeyman Wireman, Journeyman Technician and Cable Splicer and shall be paid in accordance with the following wage pages.

(b) <u>Zone Differential</u>

(1) When Employees are directed by the Employer to report to the Employer's shop, the Employer shall furnish transportation and pay for traveling time from shop to job, job to job, and job to shop.

(2) Zone A:  Employees may be required to report directly to any job within Zone A, the free zone, on their own time and in their own transportation, at no cost to the Employer, at the regular starting time and shall work eight (8) hours on the job.  Any Employer may also request the Union to dispatch applicants for employment under the referral procedure directly to any job within the free zone (Zone A), on their own and in their own transportation at no cost to the Employer.

(3) Zone B: Employees may be required to report directly to any job outside the free reporting zone listed above at the regular starting time, on their own time or in their own transportation, and shall work eight (8) hours on the job. Employees shall be required to report directly in their own transportation to only one (1) job per day.  Employees reporting to such jobs shall be paid the following zone differential in addition to their normal wage rate.

(a)    Zone B Differential – 10% of the Basic Journeyman Rate for jobs located outside of Zone A.

(b)    Employees required by the Employer to remain away from home overnight shall receive eighty-five dollars ($85.00) per day, per diem.

**DEFINITIONS OF ZONE A AND B:**
Zone A: All of Santa Cruz County, Monterey and San Benito Counties within twenty-five (25) air-miles of Highway 1 and Dolan Road in Moss Landing, and an area extending five (5) miles east and west of Highway 101 South to the San Luis Obispo County Line.
Zone B:  Any area outside of Zone A described above.

(4) Employers who do not have an established shop within the area covered by this Agreement shall abide by the same travel requirement as other Employers performing work under this Agreement.

(5) Time spent traveling in an Employer furnished vehicle prior to 8:00 a.m. and after 4:30 p.m. shall not be an expense to the Employer, provided the traveling is from the Employee's home to the job and from the job to the Employee's home.

(6) The Employer shall provide transportation for all shop tools and materials.

11

Reference Article 3.04 (b) Zone Differential Hourly Rate:      Zone B

| | |
|---|---|
| Journeyman | $46.37 |
| Foreman | $51.64 |
| General Foreman | $56.91 |
| Cable Splicing | $51.64 |
| Jry. Technician | $46.37 |
| Jry. Welding | $50.59 |

Reference Article 3.04 (b) - $85.00 per day, per diem

NOTE: Health & Welfare, Education & Training, LMCC and Pension are paid on hours PAID, not hours worked. (Must reflect the overtime hours)

### MONTEREY-SAN BENITO-SANTA CRUZ COUNTIES
### IBEW LOCAL 234 INSIDE AGREEMENT

CLASSIFICATIONS/WAGES:

Section 3.04 (a). The minimum hourly rate of wages shall be as follows:

| Classification | Hrly Rate | H&W | Pension Fund | Ed. & Training | LMCC | NEBF 3% | AMF 1.25% | Total Hourly |
|---|---|---|---|---|---|---|---|---|
| Journeyman | $42.15 | $10.70 | $10.45 | $0.95 | $0.20 | $1.26 | $0.53 | $66.24 |
| Foreman (12.5% above JW) | $47.42 | $10.70 | $10.45 | $0.95 | $0.20 | $1.42 | $0.59 | $71.73 |
| General Foreman (25% above JW) | $52.69 | $10.70 | $10.45 | $0.95 | $0.20 | $1.58 | $0.66 | $77.23 |
| Cable Splicing | $47.42 | $10.70 | $10.45 | $0.95 | $0.20 | $1.42 | $0.59 | $71.73 |
| Journeyman Technician | $42.15 | $10.70 | $10.45 | $0.95 | $0.20 | $1.26 | $0.53 | $66.24 |
| Journeyman while Welding | $46.37 | $10.70 | $10.45 | $0.95 | $0.20 | $1.39 | $0.58 | $70.64 |

APPRENTICE WIREMAN - TEN (10) PERIODS

| | |
|---|---|
| 1ST PERIOD | 45% OF JOURNEYMAN WIREMAN RATE |
| 2ND PERIOD | 47% OF JOURNEYMAN WIREMAN RATE |
| 3RD PERIOD | 55% OF JOURNEYMAN WIREMAN RATE |
| 4TH PERIOD | 60% OF JOURNEYMAN WIREMAN RATE |
| 5TH PERIOD | 65% OF JOURNEYMAN WIREMAN RATE |
| 6TH PERIOD | 70% OF JOURNEYMAN WIREMAN RATE |
| 7TH PERIOD | 75% OF JOURNEYMAN WIREMAN RATE |
| 8TH PERIOD | 80% OF JOURNEYMAN WIREMAN RATE |
| 9TH PERIOD | 85% OF JOURNEYMAN WIREMAN RATE |
| 10TH PERIOD | 90% OF JOURNEYMAN WIREMAN RATE |

| Apprentice | Hrly Rate | H&W | Pension Fund | Ed. & Training | LMCC | NEBF 3% | AMF 1.25% | Total Hourly |
|---|---|---|---|---|---|---|---|---|
| 1ST PERIOD @ 45% | $18.97 | $10.70 | $0.00 | $0.95 | $0.20 | $0.57 | $0.24 | $31.63 |
| 2ND PERIOD @ 47% | $19.81 | $10.70 | $0.00 | $0.95 | $0.20 | $0.59 | $0.25 | $32.50 |
| 3RD PERIOD @ 55% | $23.18 | $10.70 | $1.44 | $0.95 | $0.20 | $0.70 | $0.29 | $37.46 |
| 4TH PERIOD @ 60% | $25.29 | $10.70 | $2.07 | $0.95 | $0.20 | $0.76 | $0.32 | $40.29 |
| 5TH PERIOD @ 65% | $27.40 | $10.70 | $3.40 | $0.95 | $0.20 | $0.82 | $0.34 | $43.81 |
| 6TH PERIOD @ 70% | $29.51 | $10.70 | $5.12 | $0.95 | $0.20 | $0.89 | $0.37 | $47.74 |
| 7TH PERIOD @ 75% | $31.61 | $10.70 | $5.88 | $0.95 | $0.20 | $0.95 | $0.40 | $50.69 |
| 8TH PERIOD @ 80% | $33.72 | $10.70 | $6.69 | $0.95 | $0.20 | $1.01 | $0.42 | $53.69 |
| 9TH PERIOD @ 85% | $35.83 | $10.70 | $7.99 | $0.95 | $0.20 | $1.07 | $0.45 | $57.19 |
| 10TH PERIOD @ 90% | $37.94 | $10.70 | $9.41 | $0.95 | $0.20 | $1.14 | $0.47 | $60.81 |

**Scheduled Increases:**
$1.75 effective December 28, 2015 to be allocated by the Union
$1.75 effective December 26, 2016 to be allocated by the Union
$1.50 effective December 25, 2017 to be allocated by the Union
$1.00 effective May 28, 2018 to be allocated by the Union

## Section 3.05. STARTING TIME ADJUSTMENT
(a) The shop or job work day may be adjusted by two (2) hours from 3.01(a) with the half-hour (1/2) lunch break occurring four (4) hours from the start of the work day, after 24 hours advanced written notice has been submitted to the Union.

(b) When the starting time is adjusted, other affected areas of the Agreement shall also be adjusted in keeping with the intent of the original contract language.

## Section 3.06. PAYDAY – TERMINATION SLIPS
(a) Wages shall be paid weekly, the workweek shall end at 12:00 midnight on Sunday, and wages shall be paid before 4:30 p.m. on Wednesday. Not more than three (3) days wages shall be withheld at any time. Should payday fall on a day that the Employees do not work, wages shall be paid before 4:30pm on the following workday. The payroll check stub, or accompanying statement, shall contain the complete payroll date – month, day, year, including company name and home office city, all deductions itemized and gross and net wages.

(b) **LAYOFF** Any employee laid off or discharged by the Employer shall be paid his wages immediately and shall receive a termination slip.

(c)  (1) If an Employee provides notice, three-business day's prior of his intention to quit; the Employee is entitled to his wages at the time of quitting.

(2) In the event an Employee quits without prior notification, the Employer shall pay all wages due within three business days or the next payday whichever occurs first. The check shall be mailed to the address provided by the Employee unless other arrangements are agreed upon with the Employee, and an authorized office Employee; however, the intent of this section shall not be abrogated or ignored.

(d)  If the terms of section 3.06 (a), (b), or (c) are not complied with, waiting time at the regular rate of pay shall be charged until payment is made; however waiting time shall not exceed eight (8) hours in any one twenty-four (24) hour period.  When an employee is still employed or has returned to work or is drawing unemployment, a penalty of $50 per day shall be assessed.

(e)  The discharged Employee(s) shall check in all Employer's tools and materials and shall be allowed one-half (1/2) hour to pick up his own tools on Employer's time, and then shall leave the job site immediately.

## Section 3.07. DUES CHECK OFF
The Employer agrees to deduct and forward to the Financial Secretary of the Local Union, upon receipt of a voluntary written authorization, the additional working dues from the pay of each IBEW member. The amount to be deducted shall be the amount specified in the approved Local Union Bylaws.  Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

## Section 3.08. GENERAL PROVISIONS
(a)  LUNCH PERIODS WORKED Employees required to work during any regular lunch period shall receive the appropriate overtime rate for that period and then be granted a thirty (30) minute lunch period as soon as practical thereafter.

   Exception to the above shall be as follows:
       Two (2) Employees, one (1) of which may be an Apprentice, may have their meal period scheduled up to one-half (1/2) hour early in order to cover work to be performed during the regular scheduled meal period.

(b)  UNSCHEDULED WORK Employees called to report for unscheduled work four (4) or more hours before the normal start time, shall be paid at the double time rate for all work performed on that call, on that day.  A minimum of two hours at the double time rate shall be paid.

(c)  Employees required to continue working beyond the regular workday, past 12:30 a.m. shall have at least an eight (8) hour break before returning to work.

(d)  OVERTIME PREFERENCE When it is necessary to work overtime on any job covered by this Agreement, Employees working on the job shall be given first preference, except where an Employee with special skills or job knowledge is required, who shall be paid at the Foreman's rate.

(e)  INJURIES – JOB RELATED When an Employee is injured on the job, and is required to leave the job to receive medical aid, his wages shall continue at the rate paid at the time of injury and he shall remain in the course and scope of employment until he returns to the job, is lodged in a hospital or is released to go home.

(f)  EMPLOYEES FIFTY (50) YEARS OLD OR OLDER On all jobs requiring five (5) or more Journeymen, at least every fifth (5th) Journeyman, if available, shall be fifty (50) years of age or older.

**Section 3.09. SCOPE**

Employees employed under the terms of this Agreement shall do all the construction, installation, cutting, fitting, binding and erection of electrical electronic work and all electrical electronic maintenance thereon, meggering, hy-potting, calibrating and setting of all meters, control devices, overloads, electronic devices, electronic systems, communication systems and all related control wiring, including the final running tests. This shall include the installation and maintenance of temporary wiring and the installation and maintenance of electrical lighting, heat, and power equipment. Welding, burning, brazing, bending, drilling and shaping for fabricating of materials used in connection with the installation and erection of electrical wiring and equipment shall be performed by Employees employed under the terms of this Agreement. All conduit, tubing and equipment shall be cut and fitted by Employees employed under the terms of this Agreement. It shall be understood and agreed that the scope of work covered by this Agreement shall cover all of the electrical and other related work included in the specification of each and every job.

When a contractor has knowledge that a portion of the electrical work covered under this Agreement is not included under his work to be performed, the contractor shall notify the Union.

**Section 3.10. HOLIDAYS**

(a) All work performed on Sundays, and the following Holidays, days celebrated as such, or Building Trades Holidays shall be paid at double the straight rate of pay.

New Year's Day, January 1;
Martin Luther King, Jr.'s Birthday, observed third Monday in January;
President's Day, the third Monday in February;
Memorial Day, the last Monday in May;
Fourth of July;
Labor Day, the first Monday in September;
Veteran's Day, November 11;
Thanksgiving Day, the fourth Thursday in November;
The day after Thanksgiving Day;
Christmas Eve, December 24;
Christmas Day, December 25;
New Year's Eve, December 31.

Any of the above designated holidays occurring on Sunday shall be observed on the following Monday. Any of the above-designated Holidays occurring on Saturday shall be observed the previous Friday. Double-time shall be paid for work performed on a Saturday that immediately follows a designated Holiday that is observed on a Friday.

(b) Two (2) additional days each year shall be selected by mutual agreement as designated "Off Days". Designated Off Days shall be paid at time and one-half the straight time rate. Selection of Off Days will be coordinated with other Holidays to make four-day weekends or align with Holidays with other Building Trades.

(c) **WORK PERFORMED ON FLOATING HOLIDAYS**. For Service and Maintenance Work (as defined below) Employers shall be allowed to have Employee(s) work on the "Designated OFF DAY" at the straight time rate of pay during the regular work hours provided the Employee does not work the following regular work day, otherwise the Employee shall be paid at time and one-half the straight time rate. The Employer shall notify the Union office in advance by leaving a message on the recorder or fax machine at the Union office.

Service and Maintenance Work shall be defined as trouble or service calls that are received to perform work that is necessary to maintain the operation of an existing electrical system.

## Section 3.11. LABOR DAY
No work shall be performed on Labor Day except in case of emergency and then only after notice is given to the Business Manager of the Union or the Union Office prior to the work being performed.

## Section 3.12. SHOW UP PAY
(a) **LAID OFF** Any Employee reporting for work and being laid off, or any Employee not having been notified the day prior to a layoff, shall receive not less than four (4) hours wages.

(b) **BAD WEATHER** When Employees are directed to report to the shop or job and do not start work due to weather conditions or other causes beyond their control, they shall receive two (2) hours show-up time unless notified between a minimum of one hour prior to the start of the day to be worked.  If an Employee is not available for notification (has not provided a telephone number where he can be reached, or cannot be reached at the number), the Employer shall notify the Union office; such call shall constitute notification.  When Employees report to the shop or job and start work, but due to inclement weather conditions or other causes beyond their control are required to cease working, they shall receive at a minimum two (2) hours of pay and benefits.

In lieu of the notification referred to above, the Employer may provide a toll-free message number, staffed by a live, identifiable person, for Employees to call and receive instructions at least two (2) hours before they are required to report for work.

(c) **DISPATCH** If an Employer rejects an applicant for employment who is otherwise prepared to commence work in a timely manner and within normal industry requirements, the applicant is entitled to a reporting expense allowance in the amount of two (2) hours straight time pay.  If this expense cannot be paid at the time of rejection, it must be postmarked in the mail to the applicant at the Local Union office within twenty-four (24) hours unless other arrangements have been made between the Employer and the applicant.    If there is on file with the Local Union office a current termination slip that the applicant is ineligible for rehire, the union will notify the contractor prior to dispatching to determine whether the applicant will be referred for employment.

## Section 3.13. PREVAILING RATE WORK
(a) Labor agrees to provide protection for all prevailing wage jobs (both federal and state) bid after the date of adoption, by agreeing to perform the work at the rate established in this Agreement in effect at the time the job was bid, and to continue to cover the work at that rate until the job is completed or for a maximum of two (2) years, whichever comes first.

Management assumes the responsibility to monitor the wage rates being advertised on prevailing rate jobs they bid and to work with Labor to assure that these advertised rates are correct.

(b) **Protection of Prevailing Wage jobs when the prevailing wage goes down**. If during the term of this Agreement, the Davis-Bacon prevailing wage rate is lowered as the result of a wage survey causing the lowering of such prevailing wage rate, subject to the requirements set forth below, all signatory contractors shall be permitted to bid future federal public works projects, not already awarded or bid, at the lower prevailing wage rate. If during the term of this Agreement, the state prevailing wage rate is lowered as the result of a wage survey causing the lowering of such prevailing wage rate, subject to the requirements set forth below, all signatory contractors shall be permitted to bid future state public works projects, not already awarded or bid, at the lower wage rate.  Before a contractor is permitted to pay less than the contractual wage rate as the result of a wage survey lowering the prevailing wage rate as described above, the contractor must:

(1) Give written notice to IBEW Local 234, and the Monterey Bay California Chapter, NECA, of said contractor's intent to bid a public works project and pay a prevailing wage rate which is less than the contractual wage rate, at least ten (10) working days prior to submitting any such bid; and

(2) Received written verification from the parties to the Agreement that the lesser rate is the prevailing rate of pay for that project.

## Section 3.14. HIGHTIME

(a) All Employees working on temporary staging, ladders, apparatus, devices and other structures that are not protected by a "permanent" guard rail or if you have no permanent guard rail and are within five feet (5') of a direct fall of forty (40) to eighty (80) feet or on wood poles at a distance from fifty-five (55) to seventy-five (75) feet, shall be paid at one and one-half (1 ½) times the straight time rate of pay for all such work performed during regular working hours.  On work in excess of eighty (80) feet, as defined above, they shall be paid at double (2x) the straight time rate of pay for all such work performed during regular working hours.

(b) When the above described work is performed outside the regular working hours at forty (40) and eighty (80) feet, the rate shall be two and one-half (2 ½) times the straight time rate of pay.  When overtime work is performed in excess of eighty (80) feet, the rate of pay shall be three (3) times the straight time rate of pay.

An assignment of fifteen (15) minutes of work referred to in this section shall entitle the Employee to one (1) hour of premium pay.

## Section 3.15. HAZARD PAY

(a) Where Employees are required to work under compressed air in excess of five (5) pounds above normal atmospheric pressure, or in areas where injurious gasses, dust, obnoxious fumes or spray painting are present in amounts necessitating the use of gas masks or respirators as required by OSHA or MSHA standards, they shall be paid an additional hazard bonus of one-half (1/2) the straight time rate of pay.

(b) When Employees are required to work where other than climatic temperatures exceed one hundred and thirty (130) degrees F., maximum, or twenty (20) degrees minimum, they shall be paid an additional hazard bonus of one-half (1/2) times the straight time rate of pay.

An assignment of two (2) hours or more of work referred to in this Section shall entitle the Employees to the applicable premium rate for that half day.

## Section 3.16. SHIFT WORK

When so elected by the contractor, multiple shifts of at least five (5) days' duration may be worked. When two (2) or three (3) shifts are worked:

The first shift (day shift) shall be worked between the hours of 8:00 A.M. and 4:30 P.M.  Workmen on the "day shift" shall receive eight (8) hours' pay at the regular hourly rate for eight (8) hours' work.

The second shift (swing shift) shall be worked between the hours of 4:30 P.M. and 12:30 A.M. Workmen on the "swing shift" shall receive eight (8) hours' pay at the regular hourly rate plus 10% for seven and one-half (7 1/2) hours' work.

The third shift (graveyard shift) shall be worked between the hours of 12:30 A.M. and 8:00 A.M. Workmen on the "graveyard shift" shall receive eight (8) hours' pay at the regular hourly rate plus 15% for seven (7) hours' work.

A lunch period of thirty (30) minutes shall be allowed on each shift. All overtime work required after the completion of a regular shift shall be paid at one and one-half times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight rate shall be the maximum compensation for any hour worked. There shall be no requirement for a day shift when either the second or third shift is worked.

## Section 3.17. FOREMAN

(a) All foremen and general foremen shall have the trade classification and qualification of journeyman wireman.

(b) No foreman shall give orders to or take orders from another foreman. On all jobs requiring foremen, a foreman shall only give orders to Employees under his direct supervision. Likewise, Employees shall take orders from their appointed foreman only.

No foreman of one job shall, at the same time, perform or supervise work on another job. The only exception to the above is in case of an emergency.

(c) Any job on which four (4) or more Employees under this Agreement are employed, shall require a foreman. A foreman shall not supervise over ten (10) Employees. Another foreman shall be named as soon as additional Employees are employed.

(d) On any job requiring four (4) or more Employees, employed under this Agreement for more than fifteen (15) days continuously or accumulatively, the foreman's rate of pay shall continue until the completion of the job, regardless of whether four (4) Employees remain for the duration of the job.

(e) A Job General Foreman shall not supervise more than six (6) foremen. Whenever a job has two (2) or more foremen, a Job General Foreman shall be assigned to that job only. A Job General Foreman shall not give orders to anyone other than the foremen under his direct supervision. Another General Foreman shall be named as soon as additional foremen are appointed. A Job General Foreman shall not work with the tools except in case of extreme emergency.

(f) An Area General Foreman may be assigned to any combination of jobs provided that none of the jobs require a second foreman and the total number of Employees under supervision does not exceed forty (40). An Area General Foreman shall not give orders to anyone other than the foremen under his direct supervision, unless he has also been assigned to a job that does not require a foreman (see Article 3.17 (c)). In this case, the Area General Foreman may give orders to any Employee under his direct supervision. An Area General Foreman shall not work with the tools except in case of extreme emergency.

This section is not intended, nor shall it be used to circumvent any other sections of Article 3.17 as they pertain to Foreman or General Foreman ratios on any individual job site.

## Section 3.18. TOOLS – EMPLOYEE PROVIDED

Journeymen shall be required to furnish the following kit of hand tools for the performance of their work.

| | |
|---|---|
| TOOL BOX | With locking device 20" x 8 ½ " x 9 minimum, with locking device |
| PLIERS | Sidecutters 8" or 9" Klein type, long nose, diagonal Cutters (2 allowed), pump (channel lock) (2 allowed) |
| WIRE STRIPPERS | |
| PIPE WRENCH (1) | Not over 14", small chain tongs accepted |
| CRESCENT WRENCHES (2) | 2 allowed 6" and 12" (one of each) |
| ALLEN WRENCHES | Small set not over ¼" |
| TAP WRENCH | Up to ¼" |
| 3/8" SOCKET SET | Up to ¾" or set of Spin Tite |
| CHISEL (1) | Wood ¾" |
| CENTER PUNCH | |
| AWL | |
| PLUMB BOB (1) | 8 oz. |
| COMBINATION SQUARE (1) | 12" maximum |
| LEVEL (1) | 12" maximum |
| CHALK LINE BOX (Optional) | |
| TIN SNIPS (1) | 10" maximum |
| KNIFE  (1) | |
| RULES (2) | 30 ft. tape and/or 6 ft. folding rule |
| SCREWDRIVERS (7) | Stubby (2) 1 Blade and 1 Phillips |
| | Phillips (2) 6" and 8" |
| | Blade (3) 6", 8" and 12" |
| HACKSAW FRAME (1) | Adjustable (only) |
| KEYHOLE or SHEET ROCK SAW | Handle (only) |
| HAMMER (1) | Claw |
| TESTER (1) | Category II or III, 600-1000v |
| | |
| TOOL POUCH (Optional) | |
| FLASHLIGHT (1) | One-piece |
| CODE BOOK | National Electrical Code |
| PENCIL | |
| CONTINUITY TESTER (Optional) | |
| NON-CONTACT VOLTAGE TESTER | |

Apprentices, during the first year of indenture, shall supply at least the following tools:

| | |
|---|---|
| TOOL BOX | With locking device 20" x 8 ½ " x 9 minimum with locking device |
| PLIERS | Sidecutters 8" or 9" Klein type, long nose, diagonal Cutters (2 allowed), pump (channel lock) (2 allowed) |
| WIRE STRIPPERS | |
| PIPE WRENCH (1) | Not over 14", small chain tongs accepted |
| CENTER PUNCH (1) | |
| LEVEL (1) | 12" maximum |
| KNIFE (1) | |
| RULES (2) | 30 ft. tape and/or 6 ft. folding rule |
| SCREWDRIVERS (7) | Stubby (2) 1 Blade and 1 Phillips |
| | Phillips (2) 6" and 8" |
| | Blade (3) 6", 8" and 12" |
| HACKSAW FRAME (1) | Adjustable (only) |
| HAMMER (1) | Claw |
| PENCIL | |

Apprentices, during the last year of their indenture, shall be required to carry a journeyman's kit of hand tools.

## Section 3.19. TOOLS – EMPLOYER PROVIDED

(a) The Employer shall furnish all other necessary tools and equipment to do the job.  Journeymen shall be responsible for storage of Employer's tools if storage space is provided. The Employer shall be financially responsible in an amount not to exceed eight hundred dollars ($890.00) for the loss of an employee's tools and/or tool box by fire or theft where substantial evidence of loss is established, providing that at the time of loss said tools were locked in the "suitable safe place or locked box" as provided by the Employer.  When the Employer does not provide a locked safe building, room, tool shed or a job box for the safe storage of the employee's tools, and when the tools are in the care, control and custody of the Employer or his representative, the Employer shall be responsible for the complete replacement of the employee's tools to the extent as covered above.  The above replacement value of tools shall be established per item at the beginning of the term of each Agreement.  Written notice for reimbursement must be submitted to the Employer within five (5) days from the date of knowledge by the employee of such loss.  The Employer shall effect such reimbursement within four (4) working days of submittal of such claim of tools lost by fire or theft.  The contractor shall pay a penalty of $20.00 per day for each day of non-reimbursement after the 4th working day after notice.  Employee will sign receipt for tool reimbursement.

(b) **EMPLOYEE RESPONSIBILITY FOR EMPLOYER'S TOOLS**

Employees under this Agreement shall not use the Employer's property such as tools, for other than the Employer's business, except as may be herein provided.  If any Employee loses or through negligence, damages or destroys the Employer's tools, the Employee shall repair, replace or compensate the Employer for such loss or actual damage sustained.  Any disputes arising out of this section shall be resolved by the Labor-Management Committee.

(c) **HARD HATS**

The Employer shall provide and maintain all hard hats.  Upon receiving a hard hat the Employee assumes the responsibility of seeing that he does not lose or intentionally render the hat unusable. Sweatbands will be replaced twice a year or upon presenting proof of a broken band.  A hard hat that is broken or damaged will be replaced if turned in.

### Section 3.20. WORKMANSHIP

(a) Employees shall install all electrical work in a safe and workmanlike manner in accordance with applicable code and contract specifications.

(b) A Journeyman shall be required to make corrections (labor only) on improper workmanship for which he is responsible on his own time and during regular working hours unless errors were made by the order of the Employer, or the Employer's representative.  Employer shall notify the Union and the Chapter of the Journeyman who fails to adjust improper workmanship and the Union assumes responsibility for the enforcement of this provision for its members only.  Corrections to be made only after a fair investigation by the Employer and the Business Manager of the Union or his Representative.  Every effort will be made to address this within two (2) business days of a written notice.

### Section 3.21. WELDING

(a) An Employee who is required to weld shall receive a bonus of 10% of the Journeyman base rate per hour, for the number of hours worked.

(b) Where Certified Welders are required, they shall receive a bonus of 15% of the Journeyman base rate per hour, for the number of hours worked.

(c) The time and expense of Certified Electrical Welders having to take additional certification test if required by the Employer, shall be paid for by the Employer.

### Section 3.22. CABLE SPLICING

All work of joining, splicing, and insulating and placing of the flame-proof covering, where wiped lead joints are necessary, and on all splices over 2300 volts between any two (2) conductors on synthetic cable, shall be performed by cable splicers.  Only Journeymen shall be used in assisting cable splicers.  When a Journeyman is used to assist the cable splicer and provided the assistant is not required to perform work of a technical nature, the assistant may be paid at the Journeyman rate.  Cable splicers shall not be required to work on wires or cable when the difference in potential is over three hundred (300) volts between any two (2) conductors or between any conductor and ground, unless assisted by another Journeyman.  In no case, shall cable splicers be required to work on energized cables carrying in excess of four hundred and forty (440) volts.

### Section 3.23. PAID PARKING

Where free parking is not available at the job or project, the Employer shall reimburse the Employees for their parking costs.  The employer may elect to furnish transportation from a central location.

Where the employer provides transportation, the employee will ride in on his/her time and will ride out on the employer's time.  The applicable rate of pay shall apply.

### Section 3.24. TRANSPORTATION

Adequate and safe transportation furnished by an Employer for transportation of Employees within the jurisdiction of Local 234 shall be by nationally or internationally manufactured vehicles with no additional seating arrangement other than the manufacturer's passenger seating rating.  Converted trucks **are** not acceptable.

## Section 3.25. TRUCK SIGNS

All trucks or vehicles used to transport Employees or materials or used in connection with the operation of any firm, other than those operated by management, shall have permanent* signs or decals with letters at least three inches (3") high, stating the firm's name, affixed to the exterior surface of the right and left sides in contrasting color and in English.  The vehicle state registration slip shall conform to the requirements of the State of California.  Temporary signs shall be used on vehicles not owned by the Employer for up to twenty (20) consecutive working or thirty (30) calendar days.

*Permanent – Meaning difficult to remove.  Magnetic stick-on signs are not permitted.

## Section 3.26. SAFETY

(a) The Employer agrees to abide by all applicable local, State and Federal health, safety and sanitary regulations.  In the event that there are conditions, which are detrimental to the Employee's health or safety, the Employee shall not be required to work under such conditions.

(b) It is the Employer's exclusive responsibility to ensure the safety of its Employees and their compliance with these safety rules and standards.

(c) On all energized circuits carrying four hundred and forty (440) volts or over, as a safety measure, two (2) or more journeymen must work together, one (1) standing by, wearing proper PPE.

(d) Adequate safety protective devices shall be supplied to Employees by the Employer on all hazardous and wet work, which shall comply with the applicable law and regulations and the rules of the Union.  They shall also observe instructions of the Employer in the matter of safety, provided such instructions are not in conflict with the applicable law and regulations and recognized practices of the trade.

(e) The Union and Employers recognize the importance of safety in accordance with good industry practice, and agree to jointly sponsor CPR and first aid classes for all workmen and supervision.  Workmen and supervision are required to attend these classes and shall, after attending such classes, keep a current first-aid and CPR certificate.

## Section 3.27. OFF SHORE DRILLING

(a) An additional eighteen percent (18%) per hour shall be paid to all Employees for work on all off-shore installations away from the mainland when the Employees are required to remain away from home overnight, plus room and board.  The contractor shall also furnish towels soap and linens daily.  Clean sterilized blankets shall be furnished at the beginning of each job and every thirty (30) days thereafter.  All Employees will be furnished with a locker and at least one hundred (100) square feet of living quarters which shall comply with applicable law and regulations.  Only Employees working under the terms of this Agreement shall be housed together.  When working under the terms of this Agreement, Employees shall eat their meals in the facilities provided them by a civilian catering service when available.

(b) When Employees are required to remain away from home overnight they shall receive no less than eight (8) hours pay per day.

(c) The point of embarkation for all off-shore facilities shall be considered job site for the purpose of establishing working hours and/or daily travel expense.  The Employer shall be responsible for belongings left at the point of embarkation.

**Section 3.28. TUNNEL, TUBE, CAISSON AND BORE WORK**

(a) Work Day, Work Week, Wages and Working Conditions shall be the same as
Those set forth in the Inside Agreement with the following exceptions:

    (1) The week shall be a forty (40) hour week, Monday through Friday.

    (2) Change of work hours shall be a provision of this section.

    (3) The workday including Shift Work shall start and end at the change house, provided it is located adjacent to a suitable parking lot, otherwise from such a parking lot.

(b) Wages

    (1) The minimum hourly rates of pay in any tunnel or shaft shall be 2% over and above the basic wage rate set forth in the regular Wage Section.

    (2) The minimum hourly rate of pay for anyone assigned to work at the Heading shall be 15% over and above the basic wage rate set forth in the regular Wage Section.

(c) Foremen in addition to the minimum set forth elsewhere in this Agreement shall be maintained in order to properly supervise the crew(s) and in order to maintain health and safety.

(d) Conditions of Work

    (1) Whenever there is electrical work, including temporary power and lighting done or maintained in or about a tunnel, shaft or adit, tube, caisson or bore, it shall be done by Employees covered by this Agreement.  Employees shall take orders from assigned supervisors and cooperate with the shift supervisor.

    (2) Whenever a shift crew or major portion thereof is working in the tunnel, tube, caisson, or bore, an Employee shall work, except when only hand mucking and/or clean up is in progress, and providing no blasting is being done.  Employees shall take orders from assigned supervision and cooperate with shift supervision.

    (3) When two (2) headings are being worked from one (1) adit or shaft, Employees shall be assigned to each shift, and one (1) to each heading when the distance makes it impossible for one Employee to do all the electrical work on both headings.

    (4) Employees shall not be required to enter the heading after a blast until all the requirements of the State Safety Codes have been complied with.

    (5) The Employer shall furnish all rubber and protective clothing without charge when required by working conditions.  Employees shall be responsible for clothing and rubber goods issued to him, and shall return same to Employers at the time of termination.

    (6) All Employees shall receive eight (8) hours pay as a minimum per shift worked.

(e) In addition to the safety provisions set forth elsewhere in this Agreement, all Electrical work being performed under the terms of this supplement shall be governed by applicable law and regulations.

**ARTICLE IV**
**REFERRAL PROCEDURE**

**Section 4.01.**  In the interest of maintaining an efficient system of production in the Industry, providing for an orderly procedure of referral of applicants for employment, preserving the legitimate interests of employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

**Section 4.02.**  The Union shall be the sole and exclusive source of referral of applicants for employment.

**Section 4.03.**  The Employer shall have the right to reject any applicant for employment.

**Section 4.04.**  The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements.  All such selection and referral shall be in accord with the following procedure.

**Section 4.05.**  The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below.  Each applicant for employment shall be registered in the highest priority Group for which he qualifies.


### JOURNEYMAN WIREMAN -- JOURNEYMAN TECHNICIAN

**GROUP I**    All applicants for employment who have four or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee, and, who have been employed in the trade for a period of at least one year in the last four years in the geographical area covered by the collective bargaining agreement.

Group I status shall be limited to one Local Union at one time.  An applicant who qualifies for Group I in a local union shall be so registered electronically and remain on Group I in that local union unless and until the applicant designates another local union as his or her Group I local union.  If an applicant qualifies for Group I status in a local union other than his or her home local union and designates that local as his or her Group I local union, the business manager of the new Group I status local union shall by electronic means notify the business manager of the applicant's former Group I status local union.

**GROUP II**    All applicants for employment who have four or more years' experience in the trade and who have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee.

**GROUP III**    All applicants for employment who have two or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, and who have been employed for at least six months in the last three years in the geographical area covered by the collective bargaining agreement.

**GROUP IV**    All applicants for employment who have worked at the trade for more than one year.

**Section 4.06.**  If the registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within 48 hours from the time of receiving the Employer's request, Saturdays, Sundays and holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure but such applicants, if hired, shall have the status of "temporary employees".

**Section 4.07.**  The Employer shall notify the Business Manager promptly of the names and Social Security numbers of such "temporary employees" and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

**Section 4.08.**  "Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto which includes the area from which the normal labor supply is secured: Monterey, Santa Cruz, and San Benito Counties in the State of California.

The above geographical area is agreed upon by the parties to include the area defined by the Secretary of Labor to be the appropriate prevailing wage area under the Davis-Bacon Act to which the Agreement applies.

**Section 4.09.**  "Resident" means a person who has maintained his permanent home in the above defined geographical area for a period of not less than one year or who, having had a permanent home in this area, has temporarily left with the intention of returning to this area as his permanent home.

**Section 4.10.**  An "Examination" shall include experience rating tests if such examination shall have been given prior to the date of this procedure, but from and after the date of this procedure, shall include only written and/or practical examinations given by a duly constituted Inside Construction Local Union of the I.B.E.W.  Reasonable intervals of time for examinations are specified as ninety (90) days. An applicant shall be eligible for examination if he has four years' experience in the trade.

**Section 4.11.**  The Union shall maintain an "Out of Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

RE-REGISTRATION:
**Section 4.12.**  An applicant who has registered on the "Out of Work List" must renew his application every 30 days or his name will be removed from the List.

**Section 4.13.**  An applicant who is hired and who receives, through no fault of his own, work of forty hours or less shall, upon re-registration, be restored to his appropriate place within his Group.

**Section 4.14(a).**  Employers shall advise the Business Manager of the Local Union of the number of applicants needed.  The Business Manager shall refer applicants to the Employer by first referring applicants in Group I in the order of their place on the "Out of Work List" and then referring applicants in the same manner successively from the "Out of Work List" in Group II, then Group III, and then Group IV.  Any applicant who is rejected by the Employer shall be returned to his appropriate place within his Group and shall be referred to other employment in accordance with the position of his Group and his place within his Group.

REPEATED DISCHARGE:
**Section 4.14(b).**  An applicant who is discharged for cause two times within a 12-month period shall be referred to the neutral member of the Appeals Committee for a determination as to the applicant's continued eligibility for referral.  The neutral member of the Appeals Committee shall, within three business days, review the qualifications of the applicant and the reasons for the discharges.  The neutral member of the Appeals Committee may, in his or her sole discretion: (1) require the applicant to obtain further training from the JATC before again being eligible for referral; (2) disqualify the applicant for referral for a period of four weeks, or longer, depending on the seriousness of the conduct and/or repetitive nature of the conduct; (3) refer the applicant to an employee assistance program, if available, for evaluation and recommended action; or (4) restore the applicant to his/her appropriate place on the referral list.

**Section 4.15.**  The only exceptions which shall be allowed in this order of referral are as follows:

(a). When the Employer states bona fide requirements for special skills and abilities in his request for applicants, the Business Manager shall refer the first applicant on the register possessing such skills and abilities.

(b). The age ratio clause in the Agreement calls for the employment of an additional employee or employees on the basis of age.  Therefore, the Business Manager shall refer the first applicant on the register satisfying the applicable age requirements provided, however, that all names in higher priority Groups, if any, shall first be exhausted before such overage reference can be made.

**Section 4.16.**  An Appeals Committee is hereby established composed of one member appointed by the Union, one member appointed by the Employer or the Association, as the case may be, and a Public Member appointed by both these members.

**Section 4.17.**  It shall be the function of the Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by the Local Union of Sections 4.04 through 4.15 of the Agreement.  The Appeals Committee shall have the power to make a final and binding decision on any such complaint which shall be complied with by the Local Union.  The Appeals Committee is authorized to issue procedural rules for the conduct of its business but it is not authorized to add to, subtract from, or modify any of the provisions of this Agreement and its decisions shall be in accord with this Agreement.

**Section 4.18.**  A representative of the Employer or of the Association, as the case may be, designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during normal business hours.

**Section 4.19.**  A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

**Section 4.20.**  Apprentices shall be hired and transferred in accordance with the Apprenticeship provisions of the Agreement between the parties.

## ARTICLE V
## STANDARD INSIDE APPRENTICESHIP & TRAINING LANGUAGE

**Section 5.01.**  There shall be a local Joint Apprenticeship and Training Committee (JATC) consisting of a total of either 6 or 8 members who shall also serve as Trustees to the local apprenticeship and training trust.  An equal number of members (either 3 or 4) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the local union of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study.  All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all others (unindentured, intermediate journeymen, etc.)

**Section 5.02.**  All JATC member appointments, re-appointments and acceptance of appointments shall be in writing.  Each member shall be appointed for a three (3) year term, unless being appointed for a lesser period of time to complete an unexpired term.  The terms shall be staggered, with one (1) term from each side expiring each year.  JATC members shall complete their appointed term unless removed for cause by the party they represent or they voluntarily resign.  All vacancies shall be filled immediately.

The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges.  The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for Trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

**Section 5.03.**  Any issue concerning an apprentice or an apprenticeship matter shall be referred to the JATC for its review, evaluation, and resolve; as per standards and policies.  If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article I of this agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

**Section 5.04.**  There shall be only one (1) JATC and one (1) local apprenticeship and training trust.  The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunication apprenticeship.  The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent.  A subcommittee member may or may not be a member of the JATC.

**Section 5.05.**  The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary.  In considering the qualification, duties, and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC.  All employees of the JATC shall serve at the pleasure and discretion of the JATC.

**Section 5.06.**  To help ensure diversity of training, provide reasonable continuous employment opportunities, and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another.  The employer shall cooperate in providing apprentices with needed work experiences.  The local union referral office shall be notified, in writing, of all job training assignments.  If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

**Section 5.07.**  All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selection procedures.

An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards.  Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship.  Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at some time in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

**Section 5.08.**  The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs.  The JATC is authorized to indenture the number of apprentices necessary to meet the job site ratio as per Section 5.12.

**Section 5.09.**  Though the JATC cannot guarantee any number of apprentices; if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request.  If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants.  An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

**Section 5.10.**  To accommodate short-term needs when apprentices are unavailable, the JATC shall assign unindentured workers who meet the basic qualification for apprenticeship.  Unindentured workers shall not remain employed if apprentices become available for OJT assignment.  Unindentured workers shall be used to meet job site ratios except on wage and hour (prevailing wage) job sites.

Before being employed, the unindentured person must sign a letter of understanding  with the JATC and the employer - agreeing that they are not to accumulate more than two thousand (2,000) hours as an unindentured, that they are subject to replacement by indentured apprentices and that they are not to work on wage and hour (prevailing wage) job sites.

Should an unindentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an unindentured will be applied toward the minimum OJT hours of apprenticeship.

The JATC may elect to offer voluntary related training to unindentured; such as Math Review, English, Safety, Orientation/Awareness, Introduction to OSHA, First-Aid and CPR.  Participation shall be voluntary.

**Section 5.11.**  The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and unindentured.  Contributions to other benefit plans may be addressed in other sections of this agreement.

**Section 5.12.**  Each job site shall be allowed a ratio of two (2) apprentice(s) for every three (3) Journeyman Wiremen(man) .

| Number of Journeymen | Maximum Number of Apprentices/Unindentured |
|---|---|
| 1 to 3 | 2 |
| 4 to 6 | 4 |
| etc. | etc. |

The first person assigned to any job site shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

**Section 5.13.**  An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in sight of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice.  Supervision will not be of a nature that prevents the development of responsibility and initiative.  Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks.  Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies.  Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman.

An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

**Section 5.14.**  Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC.  The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC.  The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this Agreement.

**Section 5.15.**  The parties to this Agreement shall be bound by the Local Joint Apprenticeship Training Trust Fund Agreement which shall conform to Section 302 of the Labor-Management Relations Act of 1947 as amended, ERISA, and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials, or services furnished by either party.  All funds shall be handled and disbursed in accordance with the Trust Agreement.

**Section 5.16.**  All Employers subject to the terms of this Agreement shall contribute the amount of funds specified by the parties signatory to the local apprenticeship and training trust agreement.  The current rate of contribution is:$0.95.  This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employees Benefit Agreement and Trust.

**Section 5.17**.  First year apprentice may perform all tasks, however, they shall not work on or near live voltage.

**Section 5.18**.  The probationary period for all indentured apprentices shall be not less than two thousand (2,000) hours of OJT and may be extended at the discretion of the JATC.  This is to comply with the National Standards as drafted by the NJATC and submitted to the State of California, Division of Apprenticeship Standards and the United States, Department of Labor.

# ARTICLE VI
# VACATION

## Section 6.01.  VACATION

(a)  All Employees may take a minimum of two (2) week vacation each year.  The Employer shall be given fifteen (15) days notice prior to starting the vacation unless a shorter notification is mutually agreed upon between the Employer and the Employee.

(b)  Not more than twenty percent (20%) of the Employees in any shop or any job shall be granted their vacation at the same time unless agreed to by the Employer.

# ARTICLE VII
# HEALTH AND WELFARE PLAN

## Section 7.01. HEALTH AND WELFARE TRUST FUND CONTRIBUTIONS

The Employer agrees to pay the sum indicated on the effective wage page of this agreement per hour for each hour paid to all Employees working under the terms of this Agreement to the Electrical Workers Health and Welfare Trust Fund.  These payments shall be paid monthly on transmittal forms furnished by the Union.  Contributions are payable on or before the fifteenth (15th) day of the month following the month in which the work was performed.  Contributions not delivered to the office of the IBEW on or before the fifteenth (15th) day of the month or postmarked on or before the fifteenth (15th) of that month, regardless of what day of the week the fifteenth (15th) is on, shall be considered delinquent.  Contributions shall be made on behalf of all Employees working under the terms of this Agreement on the payroll for all payroll weeks ending within the calendar month.

The parties hereto agree to continue in effect, the Electrical Workers Health and Welfare Trust Fund executed December 1, 1971, as last restated December 11, 1975.  The parties agree to be bound by all of the terms and conditions of said amended Agreement and Declaration of Trust, and each Employer contributing to said Trust hereby agrees that by so doing, he does irrevocably designate and appoint the Employer designated Trustees appointed pursuant to said amended Agreement and Declaration of Trust, as Trustees authorized to act in his behalf pursuant to such trust agreement and irrevocably ratifies the designation, selection, appointment, removal and substitution of said Trustees as provided in said amended Agreement and Declaration of Trust.

If the Trustees deem it necessary to increase the amount of contributions to the plan, written notice shall be sent to the signatory parties.

# ARTICLE VIII
# EDUCATIONAL AND TRAINING FUND

## Section 8.01. EDUCATIONAL AND TRAINING FUND CONTRIBUTIONS

The Employer agrees to pay the sum indicated on the effective wage page of this agreement per hour for each hour paid to all Employees working under the terms of this Agreement to the International Brotherhood of Electrical Workers Union, Local 234 Educational and Training Fund.  These payments shall be paid monthly on transmittal forms furnished by the Union.  Contributions are payable on or before the fifteenth (15th) day of the month following the month in which the work was performed.  Contributions not delivered to the office of the IBEW on or before the fifteenth (15th) day of the month or postmarked on or before the fifteenth (15th) of that month, regardless of what day of the week the fifteenth (15th) is on, shall be considered delinquent. Contributions shall be made on behalf of all Employees working under the terms of this Agreement on the payroll for all payroll weeks ending within the calendar month.

Parties hereto agree to continue in effect, the International Brotherhood of Electrical Workers Union, Local 234 Educational and Training Fund executed December 1, 1971, as last restated December 10, 1975. The parties agree to be bound by all of the terms and conditions of said amended Agreement and Declaration of Trust, and each Employer contribution to said Trust hereby agrees that by so doing, he does irrevocably designate and appoint the Employer designated Trustees appointed pursuant to said amended Agreement and Declaration of Trust, as Trustees authorized to act in his behalf pursuant to such trust agreement and irrevocably ratifies the designation, selection, appointment, removal and substitution of said Trustees as provided in said amended Agreement and Declaration of Trust.

# ARTICLE IX
# PENSION PLAN

## Section 9.01. PENSION PLAN CONTRIBUTIONS

Commencing for work performed on or after June 28th, 2004, each employer signatory to or bound by this Agreement shall pay into the International Brotherhood of Electrical Workers District No.9 Pension Plan (hereinafter the "Pension Plan"), a jointly-administered Pension Trust created pursuant to Section 302(c)(5) of the Labor-Management Relations Act, on behalf of each employee performing work covered by this Agreement the sum indicated on the effective wage page of this Agreement for each hour paid to all employees working under the terms of this Agreement, according to their classification.

The parties have approved a procedure which allows employee voluntary contributions to the Pension Plan by making an appropriate payroll deduction _after_ taxes. The authorized payroll deduction for employee voluntary after-tax contributions cannot exceed 10% of the employee's gross wages under the Agreement. An employee who elects to make a voluntary after-tax contribution must inform the employer 30 days prior to the next pay period by signing the appropriate authorization for payroll withholding form notifying the employer to make the appropriate after-tax deduction and payment to the Pension Plan. The employee must also provide the appropriate signed authorization form giving the employer a 30-day notice of when the voluntary contribution is to be discontinued. An employee's voluntary after-tax contribution will be maintained by the Pension Plan separate from the employer contribution to reflect the amount attributable to an employee's voluntary after-tax contributions, the earnings thereon and the expenses incurred.

The employer remittance form and a check for the full amount of the pension contributions (both the employer contributions and a separate entry for any voluntary employee after-tax contributions) must be postmarked by the (15th) day or received by the Administrator for the Pension Plan on or before the twentieth (20th) day of the month following the month in which the work was performed. Contributions not received on or before the twentieth (20th) day or postmarked by the (15th) day of the month shall be considered delinquent. The Monthly Transmittal shall cover every Employee subject to this Agreement on the payroll for all payroll weeks where the payday falls within the calendar month. An employer remittance report form will be provided by the Pension Plan. Each monthly remittance form and check shall include all hours paid and all voluntary after-tax contributions.

In the event the employer fails to file its remittance form and pay all of its required pension contributions (both the employer contributions and voluntary employee after-tax contributions) by the date established in the preceding paragraph, the employer shall be responsible for liquidated damages and interest on the delinquent or late paid pension contribution (both employer contributions and voluntary employee after-tax contributions) in accordance with the terms and conditions of the Amended Trust Agreement of the Pension Plan.

Each employer agrees to be bound by all of the terms and conditions of the aforesaid Amended Trust Agreement and any amendments thereto or restatements thereof.  Each employer further agrees to designate as its representative on the Board of Trustees of the aforesaid Pension Plan, such individuals who are designated "Employer Trustees" together with their successors. The employer agrees to be bound by all lawful actions, rules and regulations adopted by the Board of Trustees.

## ARTICLE X
## NEBF

**NEBF:**
**Section 10.01.**  It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF, the individual employer will forward monthly to the NEBF's designated local collection agent an amount equal to three percent (3%) of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF.  The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee.  The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employee Benefit Agreement and Trust.

An individual Employer who fails to remit as provided above shall be additionally subject to having his agreement terminated upon seventy-two (72) hours notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this Agreement.

## ARTICLE XI
## NATIONAL ELECTRICAL INDUSTRY FUND (NEIF)

**Section 11.01.**  Each individual Employer shall contribute an amount not to exceed one percent (1%) nor less than .2 of 1% of the productive electrical payroll as determined by each local Chapter and approved by the Trustees, with the following exclusions:

1) Twenty-five percent (25%) of all productive electrical payroll in excess of 75,000 man-hours paid for electrical work in any one Chapter area during any one calendar year but not exceeding 150,000 man hours.
2) One hundred percent (100%) of all productive electrical payroll in excess of 150,000 man-hours paid for electrical work in any one Chapter area during any one calendar year.

(Productive electrical payroll is defined as the total wages including overtime paid with respect to all hours worked by all classes of electrical labor for which a rate is established in the prevailing labor area where the business is transacted.)

Payment shall be forwarded monthly to the National Electrical Industry Fund in a form and manner prescribed by the Trustees no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.  Failure to do so will be considered a breach of this Agreement on the part of the individual Employer.

## ARTICLE XII
## LOCAL LABOR-MANAGEMENT COOPERATION COMMITTEE (LMCC)

**Section 12.01.**   The parties agree to participate in a Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor Management Relations Act, 29 U.S.C. §186(c)(9).  The purposes of this Fund include the following:

1) to improve communications between representatives of Labor and Management;
2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;
3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction  industry;
5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and industry;
6) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;
7) to engage in public education and other programs to expand the economic development of the electrical construction industry;
8) to enhance the involvement of workers in making decisions that affect their working lives; and,
9) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

**Section 12.02.**   The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust and any amendments thereto and any other of its governing documents.  Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the LMCC, as provided in said Agreement and Declaration of Trust.

**Section 12.03.**   Each employer shall contribute twenty-cents ($0.20) per hour.  Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.  The Monterey Bay California Chapter, NECA, or its designee, shall be the collection agent for this Fund.

**Section  12.04.**  If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance.  In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.  Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid.  The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

## ARTICLE XIII
## NATIONAL LABOR-MANAGEMENT COOPERATION COMMITTEE (NLMCC)

**Section 13.01.**   The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. §186(c)(9).  The purposes of this fund include the following:

1) to improve communication between representatives of labor and management;
2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organization effectiveness;
3) to assist worker and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;
5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;
6) to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;
7) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;
8) to engage in public education and other programs to expand the economic development of the electrical construction industry;
9) to enhance the involvement of workers in making decisions that affect their working lives; and
10) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

**Section 13.02.**   The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents.  Each employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

**Section 13.03.**   Each Employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year.  Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed.  The Monterey Bay California Chapter, NECA, or its designee, shall be the collection agent for this Fund.

**Section 13.04.**   If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps necessary to secure compliance.  In the event the Employer is in default, the Employer shall be liable for a sum equal to15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.  Such amount shall be added to become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid.  The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

**Section 13.05.**
The 1 cent-per-hour contribution for the National LMCC is to be paid from the Local LMCC Fund. There will be no increase in the wage/fringe package for this contribution.

## ARTICLE XIV
## ADMINISTRATIVE MAINTENANCE FUND

### Section 14.00. ADMINISTRATIVE MAINTENANCE FUND
Effective June 1, 1997, all employers signatory to this labor agreement with the Monterey Bay California Chapter NECA shall contribute an amount equal to 1.25% of the gross monthly labor payroll paid to each employee covered by this labor agreement to the Administrative Maintenance Fund. The moneys are for the purpose of administration of the collective bargaining agreement, grievance handling, and all other management duties and responsibilities in this agreement. The fund is to be administered solely by the employers and enforcement for delinquent payments to the fund shall be the sole responsibility of the fund or the employers and not the Local Union. No part of the funds collected under this trust shall be used for any purpose which is held to be in conflict with the interests of the International Brotherhood of Electrical Workers and its local unions.

## ARTICLE XV
## SUBSTANCE ABUSE

### Section 15.01.   The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component. The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations. Such policies and programs must also be administered in accordance with accepted scientific principles, and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality. To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy. The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

## ARTICLE XVI
## TRANSMITTAL FORMS

### Section 16.01. TRANSMITTAL FORM
(a) The Monthly Transmittal shall cover every Employee subject to this Agreement. The transmittal period ends on the last payday of the month.

(b) Payments shall be paid monthly on the jointly approved transmittal form, or a form containing all of the information listed on the approved form, and shall be postmarked or received no later than the fifteenth (15th) of the month following the month in which the work was performed, regardless of the day of the week the fifteenth falls on. Payments received with postmarks after that date shall be considered delinquent.

The Transmittal Form shall be mailed to the address indicated on the form.

## Section 16.02. ROUNDING

"Hours" of less than sixty (60) minutes shall be expressed as a decimal as follows: ¾ as .75, ½ as .50, ¼ as .25.  The minimum unit of time to be expressed on the transmittal shall be .25 of an hour or multiples of .25, shall not be carried beyond two places.

The final calculation on partial hours as well as full hours shall be to the next full penny per individual, per month.

## Section 16.03. FAILURE TO PAY BENEFIT

(a)  Any Employer who fails to meet his obligation to make the payment of the moneys in the amounts indicated as being due under the Contract in a timely manner on the Monthly Transmittal forms as provided, shall in addition to posting a Surety Bond, be required to make weekly payments to the Tri-County Electrical Trust Funds of the moneys due for the hours paid on all his Employees for the week just completed.  The payment shall be mailed by the Friday following the Wednesday payday of each workweek, and shall be accompanied with an unofficial break-down of the hours and amounts for each category listed on the Monthly Transmittal that will follow.

The Monthly Transmittal (form MPR-176) shall accompany the check that provides for the payment that covers the last pay week of each month.

(b)  When an Employer is placed under the Provisions as set forth in (a) above, all checks shall be in the form of assured or certified checks.

(c)  The conditions set forth in 16.03 (a) & (b) above shall continue until the Employer proves that he has the ability to meet his obligations, but in no event shall it be for less than three (3) months.

(d)  Collection Matters – Pro Rata Allocation for Payroll Audits, Collective Expenses and/or Insufficient Contributions.

In the event collection procedures (including but not limited to expenses related to payroll audits, filing a legal action or allocating delinquent contributions) are instituted to audit or recover wages and/or fringe benefits due pursuant to this Agreement and the sums collected are not sufficient to cover all obligations, the sums collected shall be distributed pro rata among the following entities based upon the aggregate annual contribution payments made to the following entities in the calendar year immediately preceding the current year;

1. IBEW Local 234 Health and Welfare;
2. IBEW District No. 9 Pension Plan ("Pension Plan");
3. IBEW Local 234 Educational and Training Fund;
4. Industry Fund;
5. Monterey Bay Area Labor-Management Cooperative Fund;
6. National Labor-Management Cooperation Committee;
7. National Electrical Benefit Fund;
8. Administrative Maintenance Fund;
9. Monterey Bay California Chapter, National Electrical Contractors Association; and,
10. IBEW Local 234

## ARTICLE XVII
## CODE OF EXCELLENCE

**Section 17.01.** The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity. The Code of Excellence has proven to be a vital element in meeting the customers' expectations. Therefore each IBEW local union and NECA chapter shall implement a Code of Excellence Program. The program shall include minimum standards as designed by the IBEW and NECA.

### SEPARABILITY CLAUSE

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provisions shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

### INSIDE AGREEMENT

SIGNED FOR THE CHAPTER:
The Monterey Bay California
Chapter, N.E.C.A., Inc.

SIGNED FOR THE UNION:
International Brotherhood
of Electrical Workers
Local Union No. 234

Date 5-19/15
Eric Tonnesen,
President

Date 5-13-15
Dennis M. Ihnot,
President

Date 5/8/15
Jerri L. Champlin,
Executive Manager

Date 5-8-15
Andy Hartmann,
Business Manager and Financial Secretary

**APPROVED**
INTERNATIONAL OFFICE - I.B.E.W.

*August 10, 2015*

Lonnie Stephenson, President
This approval does not make the
International a party to this agreement.

37

# INDEX

Administrative Maintenance Fund ..................................................35
Apprentice Wireman ....................................................................12
Basic Principles............................................................................1
Changes......................................................................................1
Code of Excellence......................................................................37
Council on Industrial Relations .....................................................2
Educational and Training Fund Contributions .................................30
Effective Date..............................................................................1
Employee Responsibility for Employer's Tools.................................20
Foreman....................................................................................18
Fringe Benefit Remedy .................................................................5
Grievances/Disputes.....................................................................2
Groups......................................................................................24
Health and Welfare Trust Fund Contributions .................................30
Hightime....................................................................................17
Holidays....................................................................................15
Joint Apprenticeship and Training Committee (JATC) ......................26
Layoff .......................................................................................13
Local Labor-Management Cooperation Committee (LMCC) ..............33
Management Rights.......................................................................3
National Labor-Management Cooperation Committee (NLMCC)........34
NEBF.........................................................................................32
Overtime Reporting......................................................................11
Payday - Termination Slips ...........................................................13
Pension Plan Contributions ..........................................................31
Referral Procedure......................................................................23
Safety.......................................................................................22
Scheduled Increases....................................................................13
Scope........................................................................................15
Shift Work..................................................................................17
Show Up Pay..............................................................................16
Substance Abuse.........................................................................35
Surety Bond .................................................................................5
Tools - Employee Provided...........................................................19
Transmittal Form.........................................................................35
Wages.......................................................................................12
Work Day and Workweek ...............................................................9
Zone Differential .........................................................................11

## Section 3.10 (a) HOLIDAYS

New Year's Day, January 1;
Martin Luther King, Jr.'s Birthday, observed third Monday in January;
President's Day, the third Monday in February;
Memorial Day, the last Monday in May;
Fourth of July;
Labor Day, the first Monday in September;
Veteran's Day, November 11;
Thanksgiving Day, the fourth Thursday in November;
The day after Thanksgiving Day;
Christmas Eve, December 24;
Christmas Day, December 25;
New Year's Eve, December 31.

## Section 3.10 (b) Designated "Off Days"

Friday, September 4, 2015
Friday, May 27, 2016
Friday, September 2, 2016
Friday, May 26, 2017
Friday, September 1, 2017
Friday, May 25, 2018

**IBEW Local 234**
10300 Merritt Street
Castroville, CA  95012
(800) 499-4239
(831) 633-2311
(831) 633-0570 fax
(831) 633-5627 jobline
www.ibew234.org

**Monterey Bay California Chapter NECA**
PO Box 2175
Salinas, CA 93902
Phone: (831) 236-1393
www.mbccneca.org

**Tri-County Electrical JATC**
10300 Merritt Street
Castroville, CA  95012
(831) 633-3063
(831) 633-3068 fax
www.tricountyjatc.org

**Monterey Bay Area LMCC**
PO Box 2175
Salinas, CA 93902

**LETTER OF ASSENT - A**

In signing this letter of assent, the undersigned firm does herby authorize[1] <u>Monterey Bay California Chapter N.E.C.A., Inc.</u>

as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent

approved[2] <u>Inside</u> labor agreement between the

[1] <u>Monterey Bay California Chapter N.E.C.A., Inc.</u> and Local Union[3] <u>234</u>, IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent

approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective

on the[4] <u>27</u> day of <u>May</u>, <u>2015</u>.

It shall remain in effect until terminated by the undersigned employer giving written notice to the

[1] <u>Monterey Bay California Chapter N.E.C.A., Inc.</u> and to the Local Union at least one hundred fifty (150)

days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective
bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all
employees performing electrical construction work within the jurisdiction of the Local Union on all present and future
jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980,
in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of
assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry
Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

**SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW**

<u>Sachs Electric Company</u>
[5] Name of Firm
<u>1572 Larkin Williams Rd.</u>
Street Address/P.O. Box Number
<u>Fenton, MO 63126</u>
City, State (Abbr.) Zip Code
[6] Federal Employer Identification No.: <u>43-0911363</u>

| | |
|---|---|
| SIGNED FOR THE EMPLOYER | SIGNED FOR THE UNION[3] <u>234</u>, IBEW |
| BY[7] *Matthew W. Doell* | BY[7] |
| (original signature) | (original signature) |
| NAME[8] <u>Matthew W. Doell</u> | NAME[8] <u>Andy Hartmann</u> |
| TITLE/DATE <u>VP Systems    5/28/15</u> | TITLE/DATE <u>Business Manager/</u> |

**INSTRUCTIONS** (All items <u>must</u> be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
  Insert full name of NECA Chapter or Contractors Association involved.
[2] TYPE OF AGREEMENT
  Insert type of agreement. Example: Inside, Outside Utility, Outside
  Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree
  Trimming, etc. The Local Union must obtain a separate assent to each
  agreement the employer is assenting to.
[3] LOCAL UNION
  Insert Local Union Number.
[4] EFFECTIVE DATE
  Insert date that the assent for this employer becomes effective. Do not
  use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
  Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
  Insert the identification number which must appear on all forms filed
  by the employer with the Internal Revenue Service.

[7] SIGNATURES
[8] SIGNER'S NAME
  Print or type the name of the person signing the Letter of Assent.
  International Office copy must contain actual signatures-not repro-
  duced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING.
AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW
DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCAL UNION SHALL RETAIN ONE
COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.

IBEW.FORM 302 REV. 9/01

## AGREEMENT TO TRAIN APPRENTICES

| | |
|---|---|
| District No. | 8 |
| DAS File No. | 119 |
| Employer ID | 43-0911363 |

NAME OF EMPLOYER
**Sachs Electric Company**

| MAILING ADDRESS   (STREET AND NUMBER) | CITY | STATE | ZIP CODE | TELEPHONE NUMBER |
|---|---|---|---|---|
| PO Box 96 | St. Louis | MO | 63166 | (636) 532-2000 |

ADDRESS OF TRAINING LOCATION (IF DIFFERENT)

OCCUPATION(S)
Inside Wireman
O*Net Code
824.261.010

NAME OF APPRENTICESHIP COMMITTEE AND STANDARDS
Tri-County Electrical Joint Apprenticeship and Training Committee

AREA COVERED BY APPRENTICESHIP STANDARDS or NAME AND ADDRESS OF PROJECT
Santa Cruz, San Benito, and Monterey Counties

THE OFFICIAL, whose signature follows, agrees on behalf of the above named employer to train apprentices in the designated occupation in accordance with the apprenticeship standards and apprentice agreement and to comply with the provisions thereof.

[SIGNED]    By _Matthew W. Doell_

Printed name   Matthew W. Doell

Title  VP Systems          Date  5/28/18

THE APPRENTICESHIP COMMITTEE accepts and approves the employer as qualified to train apprentices under its standards in the designated occupation.

[SIGNED]    By _____

Printed name          Andy Hartmann

Title        Chairman        Date _____

*Accepted:*
**DIVISION OF APPRENTICESHIP STANDARDS**

Effective until:

[X]  **Revoked**

[ ]  **End of Project**   (Enter project name and address in Area Covered above)

[ ]  **Date** _____
          Date

[ ]  **Other** _____
          Specify

| EFFECTIVE DATE |
|---|

[SIGNED]    By _____    Date _____
          **Apprenticeship Consultant**

**REMARKS:**

STATE OF CALIFORNIA
DEPARTMENT OF INDUSTRIAL RELATIONS
DIVISION OF APPRENTICESHIP STANDARDS

DAS 7 (REV 04/14)

# EXHIBIT "H"

1   Thomas S. Slovak, Esq., SBN 062815
2   sartain@sbemp.com
    Stephen J. Schultz, Esq., SBN 90187
3   schultz@sbemp.com
4   1800 E. Tahquitz Canyon Way
    Palm Springs, CA  92262
5   Telephone:  (760) 322-2275
6   Facsimile:  (760) 322-2107

7
    Maureen K. Bogue, Esq., SBN 194775
8   Maureen@pacificemploymentlaw.com
9   Pacific Employment Law, LLP
    101 California Street, Suite 2300
10  San Francisco, CA 94111
11  Telephone:  (415) 985-7307
    Facsimile:  (415) 985-7301
12  Attorneys for Defendants FIRST SOLAR, INC. and
13       CALIFORNIA FLATS SOLAR, LLC

14          SUPERIOR COURT OF THE STATE OF CALIFORNIA
15              FOR THE COUNTY OF MONTEREY

16
    Justin Griffin, an individual,        )   CASE NO. 17-CV-001525
17  on behalf of himself and all          )
18  others similarly situated             )   **NOTICE TO PARTIES AND STATE**
                                          )   **COURT OF FILING OF NOTICE OF**
19       Plaintiff,                        )   **REMOVAL**
                                          )
20                                        )
21  vs.                                    )   Hon. Thomas W. Wills
                                          )   Department 15
22  Sachs Electric Company,               )
23  a Missouri corporation;               )   Complaint Filed:  April 27, 2017
    First Solar, Inc., a Delaware         )
24  Corporation; California Flats         )
25  Solar, LLC, a Delaware Limited)
    Liability Company, and Does 1 )
26  through 10,                           )
27       Defendants.                       )
                                          )
28  _____)

          NOTICE TO PARTIES AND STATE COURT OF FILING OF NOTICE OF REMOVAL

TO ALL PARTIES AND TO THE CLERK OF THE SUPERIOR COURT:

PLEASE TAKE NOTICE that Defendants First Solar, Inc. and California Flats Solar, LLC filed a Notice of Removal in the United States District Court, for the Northern District of California, San Jose Division, pursuant to 28 U.S.C. §§ 1331, 1332(a), 1453, and 1711-1715. A true and correct copy of the Notice of Removal is attached as Exhibit "A" (without exhibits).

PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. § 1446(d), the filing of the Notice of Removal in the United States District Court, together with the filing of this notice with this Court, effects removal of this action. Therefore, this Court may proceed no further with Plaintiff's action unless and until the action is remanded.

RESPECTFULLY SUBMITTED,

SLOVAK BARON EMPEY MURPHY & PINKNEY LLP

Dated: June 28, 2017

Stephen J. Schultz, Esq.
Attorneys for Defendants First Solar, Inc. and
California Flats Solar, LLC

# EXHIBIT "I"

1   Ford & Harrison LLP
    Daniel B. Chammas, SBN 204825
2   David L. Cheng, SBN 240926
    Alexandra M. Witte, SBN 273494
3   350 South Grand Avenue
    Suite 2300
4   Los Angeles, CA  90071
    Telephone:   213-237-2400
5   Facsimile:   213-237-2401

6   Attorneys for Defendant
    SACHS ELECTRIC COMPANY, INC.
7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF MONTEREY

10

11  JUSTIN GRIFFIN, an individual, on behalf       CASE NO.  17CV001525
    of himself and all others similarly situated,
12                                                  CLASS ACTION
                Plaintiff,
13                                                  **DEFENDANT SACHS ELECTRIC
          v.                                        COMPANY, INC.'S ANSWER TO
14                                                  PLAINTIFF JUSTIN GRIFFIN'S
    SACHS ELECTRIC COMPANY, a                       UNVERIFIED FIRST AMENDED CLASS
15  Missouri corporation; FIRST SOLAR,              ACTION COMPLAINT**
    INC., a Delaware corporation;
16  CALIFORNIA FLATS SOLAR, LLC, a
    Delaware Limited Liability Company; and
17  DOES 1 through 10,

18              Defendants.
                                                    Action filed: April 27, 2017
19

20

21

22

23

24

25

26

27

28

FORD & HARRISON
      LLP
 ATTORNEYS AT LAW
   LOS ANGELES

/Case No. 17CV001525
            DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
                                          DOCUMENT PRINTED ON RECYCLED PAPER

1    Defendant SACHS ELECTRIC COMPANY, INC. ("Defendant"), erroneously sued as

2    Sachs Electric Company, by and through its counsel of record, hereby answer the unverified First

3    Amended Class Action Complaint ("Complaint") of Plaintiff JUSTIN GRIFFIN ("Plaintiff"), as

4    follows:

5    ## GENERAL DENIAL

6    Pursuant to the provisions of California Code of Civil Procedure section 431.30(d),

7    Defendant denies generally and specifically each and every allegation contained in the Complaint.

8    In addition, Defendant denies that Plaintiff and/or putative class members have sustained, or will

9    sustain, any loss or damage in the manner alleged, or otherwise, by reason of any act or omission,

10    or any other conduct or absence thereof, on the part of Defendant or anyone acting on its behalf.

11    Without conceding that they have the burden of proof or persuasion, Defendant also asserts the

12    following Affirmative Defenses:

13    ## AFFIRMATIVE DEFENSES

14    ### FIRST AFFIRMATIVE DEFENSE

15    ### (Facts Insufficient to State Any Cause of Action)

16    1.    The Complaint as a whole, and each purported cause of action alleged therein, fails

17    to state facts sufficient to constitute any cause of action against Defendant upon which relief may

18    be granted.

19    ### SECOND AFFIRMATIVE DEFENSE

20    ### (Statute of Limitations)

21    2.    The Complaint as a whole, and each purported cause of action alleged and remedy

22    sought therein, is barred in whole or in part by the applicable statute of limitations, including but

23    not limited to California Code of Civil Procedure sections 203, 337, 337.1, 338, 339, 340 and

24    343, as well as California Business and Professions Code section 17208.

25    ### THIRD AFFIRMATIVE DEFENSE

26    ### (Penalties and Premium Pay Not Available)

27    3.    Plaintiff's and putative class members' claims for penalties, including but not

28    limited to penalties under Labor Code sections 226 and 203 are barred in whole or in part,

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1                                    - 2 -
/CASE No. 17CV001525
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

EXHIBIT "I" PAGE 158

1   because Plaintiff and putative class members have not alleged, and cannot allege, facts

2   demonstrating that Defendant's conduct was willful or harmful. Without admitting any facts pled

3   in the Complaint, Defendant alleges that it engaged in lawful conduct that was with cause and

4   justification, and Defendant is not liable for any purported injuries or claims which Plaintiff and

5   putative class members now declare.

6                             **FOURTH AFFIRMATIVE DEFENSE**

7                                 **(Lack of Standing)**

8         4.     Plaintiff's allegations, including, but not limited to, his allegations regarding his

9   prayer for recovery are barred, in whole or in part, because Plaintiff and/or putative class

10   members lack standing or do not have a private right of action to assert or recover them.

11                               **FIFTH AFFIRMATIVE DEFENSE**

12                             **(No Unfair Competition)**

13         5.     Plaintiff's purported fifth cause of action is barred because the alleged practices

14   are not unlawful or unfair, the public is not likely to be deceived by any alleged practices,

15   Defendant gained no competitive advantage by such alleged practices and the benefits of the

16   alleged practices outweigh any alleged harm or other impact it may cause.

17                             **SIXTH AFFIRMATIVE DEFENSE**

18                             **(Failure to Mitigate)**

19         6.     Without admitting any facts pled by Plaintiff, Defendant alleges that if Plaintiff

20   and/or putative class members have sustained any loss, injury or damages either as alleged in the

21   Complaint or at all, which Defendant expressly denies, the same were directly and proximately

22   caused and/or exacerbated by Plaintiff's and/or putative class members' own conduct, promises

23   and representations to Defendant, and failure to take actions to mitigate these losses, injuries, or

24   damages.

25                           **SEVENTH AFFIRMATIVE DEFENSE**

26                              **(Waiver)**

27         7.     The Complaint, and each purported cause of action alleged therein, is barred on the

28   ground that Plaintiff and/or putative class members have expressly and/or impliedly waived the

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1           - 3 -
/CASE No. 17CV001525
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

EXHIBIT "I" PAGE 159

1    right to assert such causes of action by virtue of their verbal and/or written expressions or

2    conduct.

3                            **EIGHTH AFFIRMATIVE DEFENSE**

4                             **(Estoppel and Res Judicata)**

5         8.       By virtue of his conduct and/or in light of Plaintiff's Complaint that has been

6    previously adjudicated, Plaintiff and/or putative class members must be estopped from asserting

7    any of the causes of action and/or issues in the Complaint against Defendant.

8                             **NINTH AFFIRMATIVE DEFENSE**

9                                   **(Laches)**

10        9.       Plaintiff and putative class members are barred from proceeding with this action

11    on the ground that Plaintiff and/or putative class members are guilty of laches in failing to timely

12    commence this action, which have prejudiced Defendant in its ability to discover adequate

13    witnesses, testimony, facts, and evidence to support Defendant's defenses.

14                             **TENTH AFFIRMATIVE DEFENSE**

15                               **(Unclean Hands)**

16        10.      Defendant is informed and believe and thereon allege that Plaintiff and putative

17    class members, by their own conduct, are guilty of unclean hands, which completely bar or

18    reduce recovery, if any, to which they may be entitled, all in accordance with proof at trial.

19                          **ELEVENTH AFFIRMATIVE DEFENSE**

20                               **(Consent)**

21        11.      The Complaint, and each purported cause of action alleged therein, is barred on the

22    ground that at all times alleged in the Complaint, Plaintiff and/or putative class members

23    expressly or impliedly assented to, ratified, or concurred with the conduct alleged to be unlawful.

24                         **TWELFTH AFFIRMATIVE DEFENSE**

25          **(Failure to Exhaust Administrative Remedies)**

26        12.      Plaintiff and/or other putative class members failed to exhaust available

27    administrative remedies and/or prerequisites, and is therefore precluded from obtaining any relief

28    under his alleged causes of action in the Complaint.

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1         - 4 -
/CASE NO. 17CV001525
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

EXHIBIT "I" PAGE 160

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Right to Offset)**

13.    Defendant alleges that they have suffered damages by reason of Plaintiff's and/or putative class members' conduct, and Defendant has a right to offset their damages against the damages, if any, of Plaintiff and/or other putative class members.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Speculative Damages and/or Penalties)**

14.    Plaintiff and/or putative class members are precluded from recovering the damages alleged in the Complaint because those damages and/or penalties are too vague, ambiguous, excessive, unreasonable, uncertain and speculative to permit recovery.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Release)**

15.    The Complaint, and each purported cause of action alleged therein, is barred on the ground that Plaintiff and/or putative class members have released and waived any and all claims they may have against Defendant.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Third Parties)**

16.    Defendant alleges that the Complaint, and each purported cause of action contained therein, is barred in whole or in part because any injuries or damages allegedly sustained by Plaintiff and/or putative class members were not the result of any acts, omissions or other conduct of Defendant.  Further, any alleged injuries were caused in part or in whole by third parties or intervening occurrences.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Compliance and Good Faith)**

17.    Defendant alleges that the Complaint, and each purported cause of action contained therein, is barred in whole or in part because Defendant exercised reasonable care and compensated Plaintiff and/or putative class members in a manner that Defendant believed, in good faith, complied with the applicable laws and provisions, including the Labor Code and the

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1                                          - 5 -
/CASE NO. 17CV001525
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

EXHIBIT "I" PAGE 161

1  IWC Wage Orders.  As such, a good faith dispute exists as to alleged monies, wages and/or

2  penalties owed.  Moreover, any alleged deficiencies were subject to cure, and therefore any

3  penalties would be barred.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Lack of Knowledge)**

6  18.  Defendant alleges that the Complaint, and each purported cause of action

7  contained therein, is barred in whole or in part and limited by its lack of actual or constructive

8  knowledge.  Plaintiff and/or other putative class members did not inform Defendant of alleged

9  failure to pay wages or premium wages, failure to pay business related expenses, any alleged

10  inaccuracies regarding their pay stubs, discrimination, harassment, retaliation, emotional distress,

11  or wrongful termination, prior to filing a lawsuit.  Plaintiff and/or other putative class members,

12  therefore, did not provide Defendant with an opportunity to correct any alleged violations and

13  provide the appropriate remedy, if any, to Plaintiff and/or other putative class members prior to

14  the time the Complaint was filed.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(*De Minimis* Claims)**

17  19.  Defendant alleges that Plaintiff's and/or other putative class members' claims are

18  barred, or at least limited, because the alleged uncompensated work time is/was *de minimis*.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(No Continuing Violations)**

21  20.  Defendant alleges the Complaint, and each purported cause of action contained

22  therein, or some of them, for restitution and/or injunctive relief is barred with respect to any

23  alleged violations that have discontinued, ceased, or are not likely to reoccur.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(No Authorization, Adoption, or Ratification)**

26  21.  Defendant alleges the Complaint, and each purported cause of action contained

27  therein, or some of them, are barred because assuming *arguendo* that Plaintiff and/or other

28  putative class members engaged in any of the acts alleged in the Complaint, such actions were

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1                                            - 6 -
/CASE NO. 17CV001525
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

EXHIBIT "I" PAGE 162

1    committed outside the course and scope of such employee's employment, were not authorized,

2    adopted or ratified by Defendant, and/or Defendant did not know, nor should it have known of

3    such conduct.

4    **TWENTY-SECOND AFFIRMATIVE DEFENSE**

5    **(Failure to Show Non-Payment of Overtime)**

6    22.    Any recovery on Plaintiff's Complaint with respect to the allegations of failure to

7    pay overtime is barred because Plaintiff and/or all other putative class members were not entitled

8    to overtime compensation, additional or otherwise, under the California Labor Code, the

9    applicable wage orders of the California Industrial Welfare Commission, and/or applicable

10   federal law.

11   **TWENTY-THIRD AFFIRMATIVE DEFENSE**

12   **(Failure to Show Any Facts of Refusal to Make Payment**

13   **or False Denial of the Amount or Validity of Wages)**

14   23.    Defendant alleges that the Complaint, and each purported cause of action

15   contained therein, is barred in whole or in part because Defendant exercised reasonable care and

16   compensated Plaintiff and/or other putative class members in a manner that Defendant believed,

17   in good faith, complied with the applicable laws and provisions, including the Labor Code and the

18   IWC Wage Orders.  Plaintiff and/or putative class members have failed to allege facts showing

19   that any person, agent, manager, supervisor, or officer of Defendant willfully, knowingly or

20   intentionally refused to pay wages due and payable after a demand had been made or falsely

21   denied the amount or validity thereof, with the intent to secure for themselves any discount upon

22   which such indebtedness, or with intent to annoy, harass, oppress, hinder, delay or defraud the

23   person to whom indebtedness is due.  As such, a good faith dispute exists as to alleged monies,

24   wages and/or penalties owed.  Moreover, any alleged deficiencies were subject to cure, and

25   therefore any penalties would be barred.

26   **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

27   **(Failure to Show Intentional Violation of Wage Statements)**

28   24.    Plaintiff's Complaint, and each claim contained therein, is barred to the extent that

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1                                          - 7 -
/CASE No. 17CV001525
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

EXHIBIT "I" PAGE 163

1   Plaintiff and/or putative class members have failed to allege any facts showing that Defendant, or

2   any officer, agent, employee, fiduciary, or other person who has the control, receipt, custody, or

3   disposal of, or pays the wages due an employee, willfully, knowingly and intentionally violated

4   the provisions of California Labor Code section 226.  Plaintiff and/or putative class members,

5   therefore, have no claim pursuant to California Labor Code sections 226(e) and/or 226.6.

6                    **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

7          **(Failure to Show Injury Based on Inaccurate Wage Statements)**

8          25.    Plaintiff's Complaint, and each claim contained therein, is barred to the extent that

9   Plaintiff and/or putative class members cannot show that he and/or the putative class members

10  have suffered the requisite "injury" required to have standing to maintain a claim for failure to

11  provide accurate wage statements pursuant to California Labor Code section 226(e).

12                    **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

13  **(Failure to Show Violation of Statute, Provision or Public Policy of State of California)**

14         26.    Defendant cannot be found liable because Defendant did not violate any statute or

15  constitutional provision or public policy of the State of California.

16                   **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

17                        **(Adequate Remedy at Law)**

18         27.    To the extent the Complaint seeks injunctive relief, the Complaint is barred

19  because Plaintiff and/or putative class members have an adequate and complete remedy at law.

20                    **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

21            **(Failure to Comply with the Employer's Directions)**

22         28.    Without admitting any facts pled by Plaintiff, Defendant alleges that if Plaintiff

23  and/or putative class members have sustained any loss, injury or damages either as alleged in the

24  Complaint or at all, which Defendant expressly denies, Plaintiff and other putative class members

25  failed to comply with the directions of Defendant concerning the service on which they were

26  engaged and such obedience to Defendant's directions was neither impossible nor unlawful and

27  would not impose new and unrealistic burdens.  To the extent Plaintiff and/or putative class

28  members have sustained any loss, injury or damages either as alleged in the Complaint, they were

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1                    - 8 -
/CASE No. 17CV001525
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

EXHIBIT "I" PAGE 164

1  directly and proximately caused and/or exacerbated by Plaintiff's or putative class members' own

2  conduct, promises and representations to Defendant, and failure to take actions to mitigate these

3  losses, injuries, or damages.  To the extent that Plaintiff and/or putative class members failed to

4  follow Defendant's directions regarding meal periods, rest periods, time keeping and recording,

5  reporting time pay, they are barred from seeking recovery pursuant to California Labor Code

6  section 2856.

7  ### TWENTY-NINTH AFFIRMATIVE DEFENSE

8  **(Plaintiff's Action is Frivolous and in Bad Faith)**

9    29. Defendant alleges that it is entitled to recover reasonable expenses, including

10  attorney's fees if allowable, from Plaintiff and Plaintiff's counsel in that Plaintiff's Complaint and

11  each purported cause of action as alleged therein is frivolous and was brought and maintained in

12  bad faith and without reasonable cause, is totally and completely without merit, and was brought

13  for the sole purpose of harassing Defendant.

14  ### THIRTIETH AFFIRMATIVE DEFENSE

15  **(Lawful Part of Business Operations)**

16    30. Defendant alleges the Complaint, and each purported cause of action contained

17  therein, is barred because the alleged conduct, if true, would be an essential lawful part of

18  Defendant's business operations and/or consistent with industry practice.

19  ### THIRTY-FIRST AFFIRMATIVE DEFENSE

20  **(No Right to a Jury Trial)**

21    31. Plaintiff's Complaint, and each cause of action alleged therein, fails to the extent

22  that Plaintiff seeks a jury trial for claims that are of a nature or right that did not provide for a jury

23  trial at common law prior to the adoption of the California Constitution.  To the extent that

24  Plaintiff seeks a jury trial for such claims, there is no such jury trial right.

25  ### THIRTY-SECOND AFFIRMATIVE DEFENSE

26  **(Failure to State Facts Warranting Class Certification and Class Damages or Any Other**

27  **Representative Action)**

28    32. This case is not appropriate for class certification because the Complaint as a

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1    - 9 -
/CASE NO. 17CV001525
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

EXHIBIT "I" PAGE 165

1  whole, and each purported cause of action alleged therein, fails to state facts sufficient to

2  constitute a class action against Defendant.

3  **THIRTY-THIRD AFFIRMATIVE DEFENSE**

4  **(Lack of Adequate Class Counsel)**

5  33.    This case is not appropriate for class certification because neither Plaintiff nor

6  Plaintiff's Counsel are able to fairly and adequately protect the interests of all members of the

7  putative class.

8  **THIRTY-FOURTH AFFIRMATIVE DEFENSE**

9  **(Lack of Numerosity)**

10  34.    This case is not appropriate for class certification because the members of the

11  proposed class are not so numerous that joinder of all members would be impracticable.

12  **THIRTY-FIFTH AFFIRMATIVE DEFENSE**

13  **(Lack of Typical and Adequate Class Representative)**

14  35.    This case is not appropriate for class certification because Plaintiff is not a typical

15  or adequate representative of the purported class members of the Complaint or any alleged cause

16  of action asserted therein.

17  **THIRTY-SIXTH AFFIRMATIVE DEFENSE**

18  **(Failure to State Facts Warranting a Predominance of**

19  **Common Questions of Fact and Law)**

20  36.    This case is not appropriate for class action because common questions of fact do

21  not predominate over individual questions of fact raised in each of the alleged causes of action in

22  the Complaint.

23  **THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

24  **(Lack of Superiority of Class Action Device)**

25  37.    This case is not appropriate for class certification because class treatment is not the

26  superior method for resolving the alleged claims, including but not limited to the administrative

27  remedy provided by the California State Labor Commissioner that is available to Plaintiff and

28  each alleged putative class member.

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1
/CASE No. 17CV001525

- 10 -

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Show Intent or Willfulness)

38.    Plaintiff's claims for penalties, including, but not limited to penalties under California Labor Code Sections 203, 226, 558, 1194, 1194.2, and 2698, *et seq.*, are barred in whole or in part, because Plaintiff has not alleged, and cannot allege, facts demonstrating, that Defendant's conduct was willful, intentional or harmful.  Without admitting any facts pled in the Complaint, Defendant alleges that it engaged in lawful conduct that was with cause and justification, and Defendant is not liable for any purported injuries or claims which Plaintiff and all purported putative class members now declare.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

### (Failure to Perform Services in Conformity to the Usage of the Place of Performance)

39.    Plaintiff's Complaint, and each cause of action contained therein, is barred to the extent that Plaintiff and other employees failed to perform services in conformity to the usage of the place of performance directed by Defendant.  Plaintiff and other employees, therefore, are barred from seeking relief pursuant to California Labor Code section 2857.

## FORTIETH AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

40.    Plaintiff's claims and damages, if any, are barred, in whole or in part, by the doctrine of after-acquired evidence.

## FORTY-FIRST AFFIRMATIVE DEFENSE

### (Mixed Motive)

41.    In the event that Plaintiff proves any wrongful acts by Defendant, the adverse employment actions about which Plaintiff complains would have been the same even if the alleged wrongful motive played no role.

## FORTY-SECOND AFFIRMATIVE DEFENSE

### (Pre-existing Condition)

42.    To the extent Plaintiff suffered any symptoms of mental or emotional distress or injury, they were the result of pre-existing psychological disorders or alternative concurrent

WSACTIVELLP:9227872.1    - 11 -
/CASE NO. 17CV001525
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT "I" PAGE 167

1  causes, and not the result of any act or omission of Defendant.

2  **FORTY-THIRD AFFIRMATIVE DEFENSE**

3  **(Intervening Acts of Others)**

4  43.    Defendant alleges that the injuries and damages sustained by Plaintiff were

5  proximately caused by the intervening and superseding actions of others, which intervening and

6  superseding actions bar and/or diminish Plaintiff's recovery, if any, against Defendant.

7  **FORTY-FOURTH AFFIRMATIVE DEFENSE**

8  **(Avoidable Consequences Doctrine)**

9  44.    Defendant asserts, without admitting that it engaged in any of the acts or conduct

10  attributed to it in the Complaint, that Plaintiff's claims and damages are barred in whole or in part

11  by Plaintiff's failure to take reasonable and necessary steps to avoid the harm and/or

12  consequences she allegedly suffered.  Plaintiff is barred from recovering any damages that she

13  could have been avoided with reasonable effort by, *inter alia*, taking advantage of Defendant's

14  internal complaint procedures.

15  **FORTY-FIFTH AFFIRMATIVE DEFENSE**

16  **(Defendant Exercised Reasonable Care to Prevent and**

17  **Promptly Correct Harassment)**

18  45.    Without admitting any facts pled by Plaintiff, Defendant asserts that Plaintiff's

19  claims fail because Defendant exercised reasonable care to prevent and promptly correct the

20  alleged harassment and because Plaintiff failed to reasonably take advantage of the corrective

21  opportunities provided by the Defendant.

22  **FORTY-SIXTH AFFIRMATIVE DEFENSE**

23  **(Lawful Part of Business Operations)**

24  46.    Defendant alleges the Complaint, and each purported cause of action contained

25  therein, is barred because the alleged conduct, if true, would be an essential lawful part of

26  Defendant's business operations and/or consistent with industry practice.

27  ///

28  ///

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1
/CASE No. 17CV001525

- 12 -

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

EXHIBIT "I" PAGE 168

**FORTY-SEVENTH AFFIRMATIVE DEFENSE**

**(No Severe Emotional Distress)**

47.    The alleged acts of Defendant were not outrageous, intentional, or reckless, and Plaintiff did not suffer severe emotional distress as a result of Defendant's alleged acts.

**FORTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Punitive Damages Unconstitutional)**

48.    Plaintiff is not entitled to recover the punitive damages in his Complaint as an award of punitive damages would violate Defendant's rights under the Constitution of the United States of America and under the Constitution of the State of California, including Defendant's rights to (1) procedural due process under the Fourteenth Amendment of the United States Constitution and the Constitution of the State of California; (2) protection for "excessive fines" as provided in the Eighth Amendment of the United States Constitution and Article I, Section 17 of the Constitution of the State of California; and (3) substantive due process provided in the Fifth and Fourteenth Amendments of the United States of America Constitution and the Constitution of the State of California.

**FORTY-NINTHAFFIRMATIVE DEFENSE**

**(Business Necessity)**

49.    Any recovery on Plaintiff's Complaint is barred on the ground that every action taken with respect to Plaintiff was done out of business necessity.

**FIFTIETH AFFIRMATIVE DEFENSE**

**(Legitimate Non-Discriminatory Reasons)**

50.    All actions taken by Defendant with respect to Plaintiff were, at all times relevant to this action, taken in good faith for legitimate non-discriminatory reasons.

**FIFTY-FIRST AFFIRMATIVE DEFENSE**

**(Unstated Affirmative Defense)**

51.    Defendant alleges that it may have additional, as yet unstated, defenses available. Defendant has not completed its investigation of the facts of this case, have not completed discovery in this matter, and have not completed their preparation for trial.  The affirmative

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1
/CASE No. 17CV001525
- 13 -
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
DOCUMENT PRINTED ON RECYCLED PAPER

EXHIBIT "I" PAGE 169

1  defenses asserted herein are based on Defendant's knowledge, information and belief at this time,

2  and Defendant specifically reserves the right to modify, amend, or supplement any affirmative

3  defenses contained herein at any time.  Defendant reserves the right to assert additional defenses

4  as information is gathered through discovery and investigation.  In asserting these defenses,

5  Defendant does not allege or admit that they have the burden of proof and/or persuasion with

6  respect to any of these matters and do not assume the burden of proof and/or persuasion with

7  respect to any matter as to which Plaintiff and/or putative class members have the burden of proof

8  or persuasion.

9  **PRAYER**

10  WHEREFORE, Defendant prays that:

11  1.    The Complaint be dismissed in its entirety with prejudice, and that Plaintiff and/or

12  putative class members take nothing by the Complaint;

13  2.    Judgment be entered against Plaintiff and in favor of Defendant;

14  3.    Defendant be awarded its costs of suit and reasonable attorneys' fees if allowable

15  by law, including without limitation, pursuant to California Labor Code section 218.5; and

16  4.    The Court award Defendant such other and further relief as it deems appropriate.

18  Dated: June 28, 2017                    Respectfully submitted,

19                                          FORD & HARRISON LLP

21  By: _____
22        Daniel B. Chammas
        David L. Cheng
        Alexandria M. Witte

24  Attorneys for Defendant SACHS ELECTRIC
    COMPANY, INC.

WSACTIVELLP:9227872.1                    - 14 -
/CASE No. 17CV001525
DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
EXHIBIT "I" PAGE 170                    DOCUMENT PRINTED ON RECYCLED PAPER

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

## PROOF OF SERVICE

I, **EVELYN COOPWOOD**, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 350 South Grand Avenue, Suite 2300, Los Angeles, California 90071.

On **June 28, 2017**, I served a copy of the following document(s) described as **DEFENDANT SACHS ELECTRIC COMPANY, INC.'S ANSWER TO PLAINTIFF JUSTIN GRIFFIN'S UNVERIFIED FIRST AMENDED CLASS ACTION COMPLAINT** on the interested parties in this action as follows:

Peter R. Dion-Kindem
THE DION-KINDEM LAW FIRM
  PETER R. DION-KINDEM, P.C.
21550 Oxnard Street, Suite 900
Woodland Hills, CA 91367
Tel:    818-883-4900
Fax:    818-883-4902
Email: peter@dion-kindemlaw.com
*Attorneys for Plaintiff JUSTIN GRIFFIN*

Jeff Holmes
HOLMES LAW GROUP, APC
3311 East Pico Blvd.
Los Angeles, CA 90023
Tel:    310-396-9045
Fax:    970-497-4922
Email: jeffholmesjh@gmail.com
*Attorneys for Plaintiff JUSTIN GRIFFIN*

Lonnie C. Blanchard, III
THE BLANCHARD LAW GROUP, APC
3311 East Pico Blvd.
Los Angeles, CA 90023
Tel:    213-599-8255
Fax:    213-402-3949
Email: lonnieblanchard@gmail.com
*Attorneys for Plaintiff JUSTIN GRIFFIN*

☒ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth above. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **June 28, 2017**, at Los Angeles, California.

_____
**EVELYN COOPWOOD**

FORD & HARRISON LLP
ATTORNEYS AT LAW
LOS ANGELES

WSACTIVELLP:9227872.1
/CASE NO. 17CV001525

- 15 -

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED FIRST AMENDED COMPLAINT
EXHIBIT "I" PAGE 171
DOCUMENT PRINTED ON RECYCLED PAPER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "J"

1

PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.

2

3

21550 Oxnard Street, Suite 900
Woodland Hills, California 91367

4

Telephone:    (818) 883-4900
Fax:          (818) 883-4902

5

Email:        peter@dion-kindemlaw.com

6

LONNIE C. BLANCHARD, III (SBN 93530)

7

THE BLANCHARD LAW GROUP, APC
3311 East Pico Boulevard

8

Los Angeles, CA 90023
Telephone:    (213) 599-8255

9

Fax:          (213) 402-3949
Email:        lonnieblanchard@gmail.com

10

11

JEFF HOLMES (SBN 100891)
HOLMES LAW GROUP, APC

12

3311 East Pico Boulevard
Los Angeles, CA 90023

13

Telephone:    (310) 396-9045
Fax:          (970) 497-4922

14

Email:        jeffholmesjh@gmail.com

15

Attorneys for Plaintiff Justin Griffin

16

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 6/22/2017 12:30:53 PM
By: Lisa Dalia, Deputy

17

SUPERIOR COURT OF THE STATE OF CALIFORNIA

18

FOR THE COUNTY OF MONTEREY

19

20

Justin Griffin, an individual, on behalf of himself
and all others similarly situated,

21

22

Plaintiff,

23

vs.

24

Sachs Electric Company, a Missouri corporation;
First Solar, Inc., a Delaware corporation;

25

California Flats Solar, LLC, a Delaware Limited
Liability Company, and Does 1 through 10,

26

Defendants.

27

28

Case No. 17CV001525
**CLASS ACTION**

**First Amended Complaint for:**

1. **Failure to Pay Compensation Due**
2. **Failure to Furnish Itemized Wage Statements**
3. **Failure to Pay Wages Timely upon Termination**
4. **Failure to Indemnify Business Expenses**
5. **Violation of Cal. Business &**

**First Amended Complaint**

1

Professions Code Section 17203
6. Recovery of Civil Penalties pursuant to the California Private Attorney General Act

**INDIVIDUAL CLAIMS**

7. Violation of California Government Code § 12940
8. Intentional Infliction of Emotional Distress
9. Wrongful Termination in Violation of Public Policy

**Demand for Jury Trial**

     Plaintiff Justin Griffin ("Plaintiff"), individually, on behalf of all other persons similarly situated and as representative of other class members, alleges:

1.    Plaintiff is a resident of California and was primarily employed in Monterey County by Defendants as a non-exempt employee.

2.    Defendant First Solar, Inc. ("First Solar") is a Delaware corporation registered with the Secretary of State of California with its entity address listed as 350 West Washington Street, Suite 600, Tempe, Arizona 85281.

3.    Defendant California Flats Solar, LLC ("California Flats Solar") is a Delaware corporation registered with the Secretary of State of California with its entity address listed as 350 West Washington Street, Suite 600, Tempe, Arizona 85281.

4.    Defendant Sachs Electric Company ("Sachs") is a Missouri corporation registered with the Secretary of State of California with its entity address listed as 1572 Larkin Williams Road, Fenton, Missouri.

5.    First Solar and California Flats Solar were involved in the construction and development of photovoltaic ("PV" or "Solar") power projects, including the California Flats Solar Project ("Project"). Such activities fell within the usual course of business of First Solar and California Flats Solar.

6.    Labor Code Section 2810.3(a)(1)(A) provides in relevant part:

**First Amended Complaint**

2

1      "Client employer" means a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor.

2

3    7.    Labor Code 2810.3(a)(3) provides in relevant part:

4      "Labor contractor" means an individual or entity that supplies, either with or without a contract, a client employer with workers to perform labor within the client employer's usual course of business.

5

6

7    8.    Sachs supplied Plaintiff and other workers to First Solar and California Flats Solar for the California Flats Solar Project. Sachs was a "labor contractor" and First Solar and California Flats Solar were "client employers" pursuant to Section 2810.3.

8

9

10    9.    Labor Code Section 2810.3(b) provides in relevant part:

11      (b) A client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for both of the following:

12      (1) The payment of wages…

13    10.    Section 2(H) of the applicable Wage Order defines an employer as follows:

14      [A]ny person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.

15

16    11.    First Solar, California Flats Solar and Sachs also acted as co-employers and/or joint employers of Plaintiff and the Class members. First Solar and California Flats Solar are the owners, operators, and developers of the Project on which Plaintiff and the other Plaintiff Class members worked. Among other things, First Solar and California Flats Solar:

17

18

19

20    a.    controlled the Project site;

21    b.    defined and managed the construction on the Project, including but not limited to design, work flow and scheduling;

22

23    c.    created, defined and managed the work-related agreements related to the Project;

24    d.    created, defined and managed training for workers on the Project;

25    e.    created, defined and managed policies and procedures for workers on the Project, including but not limited to environmental, safety and transportation rules;

26

27

28

**First Amended Complaint**

3

f.  created, defined and managed the wages of workers on the Project;

g.  created, defined and managed the hours for workers on the Project;

h.  created, defined and managed the working conditions of the Project;

i.  controlled the access to and the land and roads at the Project;

j.  operated the mandatory on site, badge and security process/procedure/system for the Project;

k.  conducted at least part of the orientation process for Plaintiff and Class members;

l.  maintained vehicles on the Project;

m.  maintained the work quality control and quality assurance for the Project; and

n.  maintained supervisory personnel on the Project.

12.  Plaintiff does not presently know the true names and capacities of the defendants named as Does 1 through 10 and therefore sues such defendants by these fictitious names. Plaintiff believes that the Doe Defendants are persons or entities who are involved in the acts set forth below, either as independent contractors, suppliers, agents, servants or employees of the known defendants, or through entering into a conspiracy and agreement with the known Defendants to perform these acts, for financial gain and profit, in violation of Plaintiff's and class members' rights. Plaintiff will request leave of Court to amend this Complaint to set forth their true names, identities and capacities when Plaintiff ascertains them.

13.  Each of the Defendants has been or is the principal, officer, director, agent, employee, representative and/or co-conspirator of each of the other defendants and in such capacity or capacities participated in the acts or conduct alleged herein and incurred liability therefor. At an unknown time, some or the Defendants entered into a conspiracy with other of the Defendants to commit the wrongful acts described herein. These wrongful acts were committed in furtherance of such conspiracy. Defendants aided and abetted each other in committing the wrongful acts alleged herein. Each of the Defendants acted for personal gain or in furtherance of their own financial advantage in effecting the acts alleged herein.

**First Amended Complaint**

4

14.   The named Defendants and the Doe defendants are hereinafter referred to collectively as "Defendants."

## CLASS ACTION ALLEGATIONS

15.   Plaintiff brings the first five causes of action for himself and on behalf of a class and sub-class initially defined as follows:

**Unpaid Wages Class**

All non-exempt employees of any of the Defendants who, at any time within the period beginning four years prior to the filing of this action through the date of judgment, worked on the construction of the California Flats Solar Project.

**Termination Pay Sub-Class**

All members of the Unpaid Wages Class whose employment terminated at any time within the period three years prior to the filing of this action through the date of judgment.

16.   The term "Class members" includes the Plaintiff and all Plaintiff Class members.

17.   During all or a portion of the class period, Plaintiff and Class members were employed by Defendants in California.

18.   **Numerosity.** The number of Class members is so numerous that joinder of all members is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice. Plaintiff believes there are more than 100 Class members.

19.   **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all Class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

a.   Whether Defendants paid Plaintiff and Class members for all hours worked;

b.   Whether Defendants paid Plaintiff and Class members all properly calculated overtime due them;

**First Amended Complaint**

5

c.    Whether Defendants' conduct in failing to pay all wages due Plaintiff and Class members was willful or reckless;

d.    Whether Defendants violated Labor Code Section 226 by failing to timely furnish Plaintiff and Class members accurate wage statements;

e.    Whether Defendants failed to timely pay all wages due to Plaintiff and Class members upon the termination of their employment;

f.    Whether Defendants failed to indemnify Plaintiff and Class members for all business expenses for which Defendants were responsible;

g.    Whether Defendants engaged in unfair competition in violation of California Business & Professions Code Section 17200, *et seq.*; and,

h.    The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

20.    **Typicality.** Plaintiff's class claims are typical of the claims of the Class members. Plaintiff and all Class members sustained injuries and damages arising out of Defendants' common course of conduct in violation of the law as alleged herein. Plaintiff is entitled to the same relief under the class action causes of action as the Class members.

21.    **Adequacy.** Plaintiff will adequately and fairly protect the interest of the Class members. Plaintiff was employed by the Defendants at times during the Class Period and is an adequate representative for the Class members because Plaintiff has no interest adverse to the interests of the Class members and Plaintiff has retained legal counsel with substantial experience in civil litigation, employment law and class action litigation. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class members.

22.    **Superiority.** A class action is superior to other available means of fair and efficient adjudication of the claims of the Class members. Joinder of all Class members is impractical. Class action treatment will allow numerous similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and

expense that numerous individual actions would cause to such Plaintiffs or to the court system. Further, the damages of many Class members may be relatively small, and the burden and expenses of individual litigation would make it difficult or impossible for individual members of the class to seek and obtain relief, while a class action will serve an important public interest. Furthermore, questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Individual litigation would present the potential for inconsistent or contradictory judgments. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in one case.

**Claim for Relief No. 1**
**Failure to Pay Wages for Hours Worked**
**(Against All Defendants)**

23.   Plaintiff realleges the preceding paragraphs.

**Failure to Pay at Least Minimum Wage for Each Hour Worked**

24.   Labor Code Section 1197 in relevant part provides:

> The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.

25.   Paragraph 4 of the applicable Wage Order provides in relevant part:

> (A) Every employer shall pay to each employee wages not less than nine dollars ($9.00) per hour for all hours worked, effective July 1, 2014, and not less than ten dollars ($10.00) per hour for all hours worked, effective January 1, 2016.
>
> (B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

26.   Defendants failed to pay Plaintiff and Class members for all hours worked, for overtime hours worked, and for other compensation due them under California law.

27.   Under California law, "hours worked" is the time during which an employee is subject to the

**First Amended Complaint**
7

control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

28.    In addition, paragraph 5(A) of the applicable Wage Order (No. 16) provides:

(A) All employer-mandated travel that occurs after the first location where the employee's presence is required by the employer shall be compensated at the employee's regular rate of pay or, if applicable, the premium rate that may be required by the provisions of Labor Code Section 510 and Section 3, Hours and Days of Work, above.

29.    The first location where Defendants required Plaintiff and Class members' presence was a security gate on the Project. Defendants required Plaintiff and Class members to arrive at a security gate controlled by Defendants at the Project at the beginning of their shifts. This was the only way that Plaintiff and Class members could gain access to the Project. Defendants required Plaintiff and Class members to have their personal employee badges scanned ("badged in") by a person employed by Defendants at the security gate. From the time that Plaintiff and Class members badged in at this security gate until they badged out through the security gate at the end of their workday, they were under Defendants' control and were restricted by Defendants' rules, processes, procedures and supervision.

30.    After Plaintiff and Class members were "badged in" at the security gate, they were then required to travel approximately 14 miles along a route designated by Defendants, at a slow speed limit designated by Defendants, and using non-public roads controlled by Defendants to reach a parking lot controlled by Defendants and arrive by a specific time designated by Defendants. Plaintiff and Class members were not able to use this time travel time effectively for their own purposes.

31.    When they arrived at the parking lot, Plaintiff and Class members were required to locate their crew and take company buggies arranged by Defendants to the specific locations where they would continue their work for the day. Once at this location, foremen or other supervisory personnel would input Plaintiff and Class members' "start time" onto a timesheet, even though Plaintiff and Class members had been under Defendants' control from the time they arrived at

**First Amended Complaint**

8

the security gate. Plaintiff and Class members were required to sign off on that "start time." The time input by foremen and/or other supervisory personnel on the timesheets was the designated parking lot meeting time and did not reflect the actual time Plaintiff and Class members arrived at Defendants' security gate and were required to badge in, nor did it reflect the time that Plaintiff and Class members were required to travel from the security gate to the parking lot.

32.    At the end of the workday, Plaintiff and Class members were required to initial a timesheet with a clock-out time that was filled out by foremen or other supervisory personnel. This clock-out time reflected the scheduled end of work time rather than the actual end of work time. This time did not accurately reflect the mandatory and controlled travel time spent by Plaintiff and Class members from the parking lot to the security gate, where their badges were again swiped by one of Defendants' employees ("badging out").

33.    As detailed above, Defendants controlled Plaintiff and Class members during the mandated travel time before and after their scheduled shifts. This travel time generally took between 35 and 45 minutes or more each way.

34.    Plaintiff and Class members were entitled to be paid the regular rate of pay (or at least the minimum wage) for all non-overtime hours worked for Defendants, including the time from when they passed through the security gate and traveled to the parking lot and when they traveled from the parking lot to the security gate.

35.    In violation of Section 1197 and Paragraph 4 of the applicable Wage Order, Defendants did not pay class members at least the minimum wages and/or regular time wages for all hours worked.

36.    Labor Code Section 1194.2 in relevant part provides:

> In any action under Section 1193.6 or Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Nothing in this subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation.

37.    Plaintiff and Class members are also entitled to liquidated damages pursuant to Labor Code Section 1194.2.

**First Amended Complaint**

9

1

**Failure to pay Overtime Wages**

2

38.   Labor Code Section 510 provides in relevant part:

3

(a) Eight hours of labor constitutes a day's work. Any work in excess of eight hours in
4   one workday and any work in excess of 40 hours in any one workweek and the first eight
hours worked on the seventh day of work in any one workweek shall be compensated at
5   the rate of no less than one and one-half times the regular rate of pay for an employee.
Any work in excess of 12 hours in one day shall be compensated at the rate of no less
6   than twice the regular rate of pay for an employee. In addition, any work in excess of
eight hours on any seventh day of a workweek shall be compensated at the rate of no less
7   than twice the regular rate of pay of an employee.

8

39.   Paragraph 3 of the applicable Wage Order provides in relevant part:

9

3. HOURS AND DAYS OF WORK

10

(A) Daily Overtime - General Provisions

11

(1) The following overtime provisions are applicable to employees 18 years of age or
12   over and to employees 16 or 17 years of age who are not required by law to attend school
and are not otherwise prohibited by law from engaging in the subject work. Such
13   employees shall not be employed more than eight (8) hours in any workday or more than
40 hours in any workweek unless the employee receives one and one-half (1 ½) times
14   such employee's regular rate of pay for all hours worked over 40 hours in the workweek.
Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in
15   any workday or more than six (6) days in any workweek is permissible provided the
employee is compensated for such overtime at not less than:
16

(a) One and one-half (11/2) times the employee's regular rate of pay for all hours worked
17   in excess of eight (8) hours up to and including 12 hours in any workday, and for the first
eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and
18

(b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours
19   in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th)
consecutive day of work in a workweek.
20

21   40.   Plaintiff and class members worked over eight hours in a day and/or more than 40 hours in a

22   week and/or seven or more consecutive days. Defendants failed to correctly compensate Plaintiff

23   and class members for all overtime worked at the correct rates in violation of California Labor

24   Code Section 510 and Paragraph 3 of the applicable Wage Order.

25   41.   Labor Code Section 1194 in relevant part provides:

26   Notwithstanding any agreement to work for a lesser wage, any employee receiving less
than the legal minimum wage or the legal overtime compensation applicable to the
27   employee is entitled to recover in a civil action the unpaid balance of the full amount of

28

**First Amended Complaint**

10

1  this minimum wage or overtime compensation, including interest thereon, reasonable
2  attorney's fees, and costs of suit.

3  42.  Labor Code Section 218.6 in relevant part provides:

4      In any action brought for the nonpayment of wages, the court shall award interest on all
       due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289
5      of the Civil Code, which shall accrue from the date that the wages were due and payable
       as provided in Part 1 (commencing with Section 200) of Division 2.
6
7  43.  Plaintiff has incurred and is entitled to attorney's fees, costs and interest.

8                              **Claim for Relief No. 2**
                   **Wage Statement and Record-Keeping Violations**
9                          **(Against All Defendants)**

10  44.  Plaintiff realleges the preceding paragraphs.

11  45.  Labor Code Section 226 provides in relevant part:

12      (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish
        each of his or her employees, either as a detachable part of the check, draft, or voucher
13      paying the employee's wages, or separately when wages are paid by personal check or
        cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total
14      hours worked by the employee, except for any employee whose compensation is solely
        based on a salary and who is exempt from payment of overtime under subdivision (a) of
15      Section 515 or any applicable order of the Industrial Welfare Commission, (3) the
        number of piece-rate units earned and any applicable piece rate if the employee is paid on
16      a piece-rate basis, (4) all deductions, provided that all deductions made on written orders
        of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the
17      inclusive dates of the period for which the employee is paid, (7) the name of the
        employee and only the last four digits of his or her social security number or an employee
18      identification number other than a social security number, (8) the name and address of the
        legal entity that is the employer and, if the employer is a farm labor contractor, as defined
19      in subdivision (b) of Section 1682, the name and address of the legal entity that secured
        the services of the employer, and (9) all applicable hourly rates in effect during the pay
20      period and the corresponding number of hours worked at each hourly rate by the
        employee and, beginning July 1, 2013, if the employer is a temporary services employer
21      as defined in Section 201.3, the rate of pay and the total hours worked for each temporary
        services assignment. The deductions made from payment of wages shall be recorded in
22      ink or other indelible form, properly dated, showing the month, day, and year, and a copy
        of the statement and the record of the deductions shall be kept on file by the employer for
23      at least three years at the place of employment or at a central location within the State of
        California. For purposes of this subdivision, "copy" includes a duplicate of the itemized
24      statement provided to an employee or a computer-generated record that accurately shows
        the information required by this subdivision.
25
26      . . .
27

28

                              **First Amended Complaint**
                                        11

(e)(1) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

(2)(A) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.

(B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:

(i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).

(ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period. Nothing in this subdivision alters the ability of the employer to aggregate deductions consistent with the requirements of item (4) of subdivision (a).

(iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.

(iv) The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

(C) For purposes of this paragraph, "promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information. . . .

46.    California Labor Code Section 1174 provides in relevant part:

Every person employing labor in this state shall:

. . . (d) Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned.

47. Paragraph 6 of the applicable Wage Order provides in relevant part:

   6. RECORDS

   (A) Every employer who has control over wages, hours, or working conditions shall keep accurate information with respect to each employee, including the following: (1) The employee's full name, home address, occupation, and social security number. The employee's date of birth, if under 18 years of age, and designation as a minor. Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals, and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded. (2) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee. (3) Total hours worked during the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request. When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.

   (B) Every employer who has control over wages, hours, or working conditions shall semimonthly or at the time of each payment of wages furnish each employee an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item. (See Labor Code Section 226.) This information shall be furnished either separately or as a detachable part of the check, draft, or voucher paying the employee's wages.

   (C) All required records shall be in the English language and in ink or other indelible form, dated properly, showing month, day and year. The employer who has control over wages, hours, or working conditions shall also keep said records on file at the place of employment or at a central location for at least three years. An employee's records shall be available for inspection by the employee upon reasonable request.

   (D) Employers performing work on public works projects should refer to Labor Code Section 1776 for additional payroll reporting requirements.

48. Labor Code Section 1174.5 provides:

   Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

49. Defendants knowingly and intentionally, as a matter of uniform policy and practice, failed to maintain and furnish Plaintiff and Class members with accurate and complete wage statements regarding their gross wages earned, total hours worked, total net wages earned, and all applicable

**First Amended Complaint**

13

hourly rates in effect, *inter alia*, in violation of Labor Code Sections 226 and/or 1174.

50.  Defendants' failure to furnish Plaintiff and Class members with complete and accurate itemized wage statements resulted in actual injury because such failures led to, among other things, the non-payment of all their regular and overtime wages and deprived them of the information necessary to identify the discrepancies in Defendants' reported data.

51.  Plaintiff and the other Class members are entitled to damages and/or penalties pursuant to Labor Code Section 226.

**Claim for Relief No. 3**
**Failure to Pay Waiting Time Wages Pursuant to Labor Code Section 203**
**(Against All Defendants)**

52.  Plaintiff realleges the preceding paragraphs.

53.  Labor Code Section 201 in relevant part provides:

> (a) If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately. . . .

54.  Labor Code Section 202 in relevant part provides:

> (a) If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting...

55.  Labor Code Section 203 provides in relevant part:

> (a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. . .
>
> (b) Suit may be filed for these penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise.

56.  The employment of Plaintiff and certain Class members with Defendants terminated.

57.  When the employment of Plaintiff and certain Class members terminated, Defendants violated Labor Code Sections 201 or 202 by willfully failing to pay the wages earned and unpaid that were due them, including wages due for regular hours worked and wages for overtime hours

1   worked within the time required by Sections 201 or 202.

2   58.   Labor Code Section 218.5 provides in relevant part:

3         (a) In any action brought for the nonpayment of wages, fringe benefits, or health and
4         welfare or pension fund contributions, the court shall award reasonable attorney's fees
          and costs to the prevailing party if any party to the action requests attorney's fees and
5         costs upon the initiation of the action. . . .

6   59.   Plaintiff has incurred attorney's fees and costs in pursuing this claim.

7                              **Claim for Relief No. 4**
8                     **Violation of Labor Code Section 2802**
                             **(Against All Defendants)**
9
10  60.   Plaintiff realleges the preceding paragraphs.

11  61.   Labor Code Section 2802 in relevant part provides:

12        (a) An employer shall indemnify his or her employee for all necessary expenditures or
          losses incurred by the employee in direct consequence of the discharge of his or her
13        duties, or of his or her obedience to the directions of the employer, even though unlawful,
          unless the employee, at the time of obeying the directions, believed them to be unlawful.

14        (b) All awards made by a court or by the Division of Labor Standards Enforcement for
15        reimbursement of necessary expenditures under this section shall carry interest at the
          same rate as judgments in civil actions. Interest shall accrue from the date on which the
16        employee incurred the necessary expenditure or loss.

17        (c) For purposes of this section, the term "necessary expenditures or losses" shall include
          all reasonable costs, including, but not limited to, attorney's fees incurred by the
18        employee enforcing the rights granted by this section…

19  62.   In violation of Labor Code Section 2802, Defendants required Plaintiff and Class members to

20        use their personal vehicles for on-site, employer-controlled, travel, but failed to reimburse them

21        for all such mileage.

22  63.   As a proximate result of Defendants' wrongful actions alleged above, Plaintiff and the class

23        members have been damaged.

24  64.   Plaintiff has incurred attorney's fees and costs in pursuing this claim.

25                              **Claim for Relief No. 5**
     **Violation of California Business and Professions Code Section 17200,** *et seq.*
26                           **(Against All Defendants)**

27  65.   Plaintiff realleges the preceding paragraphs.

28

                              **First Amended Complaint**
                                        15

66.    Business & Professions Code Section 17200 provides:

> As used in this chapter, unfair competition shall mean and include any ***unlawful***, ***unfair*** or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.) (Emphasis added.)

67.    Defendants' violations of the Labor Code and Wage Order provisions set forth above constitute unlawful and/or unfair business acts or practices.

68.    Business & Professions Code Section 17203 provides:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

69.    Defendants have been unjustly enriched because of Defendants' unlawful and/or unfair business acts and/or practices.

70.    Plaintiff, individually and on behalf of Class members, seeks restitution of money and/or property by which Defendants were unjustly enriched.

71.    Plaintiff, individually, and on behalf of Class members, is further entitled to and seeks a declaration that the above-described business practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendants, and each of them, from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

72.    Plaintiff and the Class members have no plain, speedy, and/or adequate remedy at law to redress the injuries that they have suffered because of Defendants' unfair, unlawful and/or fraudulent business practices.

73.    If Defendants are not enjoined from the conduct alleged herein, they will continue to violate their legal obligations.

74.    Plaintiff is entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5.

**First Amended Complaint**

16

**Cause of Action No. 6**
**For Recovery of Civil Penalties under the California Private Attorney General Act,**
**Labor Code Section 2698, *et seq.***
**(Against All Defendants)**

75. Plaintiff realleges the preceding paragraphs.

76. Pursuant to Labor Code Sections 2698, *et seq.*, the Private Attorney General Act of 2004 ("PAGA"), Plaintiff is entitled to recover civil penalties on behalf of himself and other persons who are or were employed by the alleged violator and against whom one or more of the alleged violations was committed. Plaintiff is pursuing civil penalties for violations of the Labor Code sections alleged herein.

77. Defendants, as alleged above, have committed Labor Code violations against Plaintiff and the other class members.

78. Plaintiff and the other class members seeks to recover all civil penalties recoverable under PAGA against Defendants, including without limitation penalties pursuant to Labor Code Sections 203, 210, 226.3, 256, 558, 1174.5, 1197.1, and 2699(f).

79. Plaintiff's attorney gave written notice by certified mail to the Labor and Workforce Development Agency ("LWDA") and to Defendants identifying violations set forth above, a copy of which is attached as Exhibit 1 hereto.

80. Labor Code Section 2699(g) provides that any "employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Plaintiff has incurred attorney's fees and costs in pursuing this claim.

**Claim for Relief No. 7**
**Violation of California Government Code § 12940**
**(Against All Defendants)**

81. Plaintiff realleges the preceding paragraphs.

**Harassment**

82. California Government Code § 12940(j)(1) in relevant part provides the following:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

**First Amended Complaint**

17

…

(j)(1) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, *because of race*, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees, applicants, unpaid interns or volunteers, or persons providing services pursuant to a contract in the workplace, where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those nonemployees shall be considered. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment.
(Emphasis added.)

83. Plaintiff was mistreated because of his race.

84. Among other things, for example, Plaintiff was treated differently than other workers who were not African American, he was not chosen for certain jobs that were available to other workers who were not African American and he was not allowed to sit in the front seat of vehicles like other workers who were not African American. When Plaintiff complained about these things, Plaintiff was given a write up and forced to work with a different crew.

85. In retaliation for his complaints, on or about March 3, 2017, a superintendent accused Plaintiff of having left the job site mid-shift on March 1, 2017. Plaintiff did not go to work at all that day. The foreman claimed that Plaintiff had signed in and that they were unable to find him at the end of the day. He mentioned having spoken to Plaintiff that morning. By that time, there was a second African-American man on the crew. This man told Plaintiff that the foreman had talked to him (the other African American man) that morning, not to Plaintiff.

86. When Plaintiff asked to see his supposed sign-in signature and the electronic badge-in records, the foreman refused, telling Plaintiff he had to take up the matter with First Solar. When Plaintiff

**First Amended Complaint**

18

asked the foreman if he had confused him with the only other African-American on the crew, the foreman became defensive. Approximately four hours later, Plaintiff was given a write-up containing false allegations, which Plaintiff refused to sign. Plaintiff was then wrongfully terminated based on a pretext and in the absence of his union steward.

**Failure to Prevent Harassment**

87.   California Government Code § 12940(k) in relevant part provides the following:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
>
> ...
>
> (k) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

88.   Plaintiff complained about the unfair treatment by his superiors.

89.   Defendants knew or should have known that Plaintiff was being harassed because of his race.

90.   Defendants failed to take all reasonable steps to prevent discrimination and/or harassment from occurring.

**Unlawful Retaliation**

91.   California Government Code § 12940(h) in relevant part provides:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
>
> ...
>
> (h) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part. (Emphasis added.)

92.   Plaintiff complained about his unfair treatment to his supervisors, and directly questioned the behavior of supervisors who were discriminating against him.

**First Amended Complaint**

19

93.    Plaintiff was written up more than once and was terminated because of his complaints.

**Discrimination**

94.    Violation of California Government Code § 12940(a) provides in relevant part:

It shall be an unlawful employment practice . . .:

(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

95.    Defendants terminated Plaintiff because of his race and because of his demand to be treated fairly regardless of his race.

**Damages**

96.    As a proximate cause of the Defendants' wrongful acts, Plaintiff has suffered and continues to suffer damages, including lost wages, benefits, and certain other incidental, consequential expenses and losses, and general damages for humiliation, embarrassment, pain and suffering and/or emotional distress.

97.    The individuals committing the wrongful acts alleged were the employees of Defendants and Defendants:

a.    had advance knowledge of the unfitness of the employee(s) and employed the employee(s) with a conscious disregard of the rights or safety of others,

b.    authorized or ratified the wrongful conduct alleged herein, and/or

c.    were personally guilty of oppression, fraud or malice based on the acts alleged herein in that the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an officer, director or managing agent of Defendants.

98.    Plaintiff has incurred and will incur attorney's fees in prosecuting this claim and is entitled to an

**First Amended Complaint**
20

award of attorney's fees under Government Code section 12965(b).

99. Plaintiff filed a complaint with DFEH and received a right to sue letter on April 5, 2017. (See Exhibit 2.)

**Claim for Relief No. 8**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

100. Plaintiff realleges the preceding paragraphs.

101. Defendants' conduct was extreme and outrageous and was intended to cause severe emotional distress and was done in conscious disregard of the probability of causing such distress.

102. As a proximate cause of the Defendants' wrongful acts, Plaintiff has suffered and continues to suffer damages, including lost wages, benefits, and certain other incidental, consequential expenses and losses, and general damages for humiliation, embarrassment, pain and suffering and/or emotional distress.

103. The individuals committing the wrongful acts alleged were the employees of Defendants and Defendants:

    a.    had advance knowledge of the unfitness of the employee(s) and employed the employee(s) with a conscious disregard of the rights or safety of others,

    b.    authorized or ratified the wrongful conduct alleged herein, and/or

    c.    were personally guilty of oppression, fraud or malice based on the acts alleged herein in that the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an officer, director or managing agent of Defendants.

**Claim for Relief No. 9**
**Wrongful Termination in Violation of Public Policy**
**(Against All Defendants)**

104. Plaintiff realleges the preceding paragraphs.

105. At all relevant times, there existed in the State of California a public policy against racial discrimination, harassment and retaliation. Defendants were aware and should have known of the

**First Amended Complaint**

21

public policy. Despite this knowledge, Defendants harassed and allowed harassment on the job and discriminated against Plaintiff because of his race.

106.    Plaintiff complained to Defendants about harassing and discriminatory behavior by his superiors.

107.    Plaintiff also questioned Defendants' failure to pay employees for all time worked. On at least one occasion, Plaintiff complained to a General Foreman that he and other construction workers should be paid from the point at which they badged in at the security gate. In response, the General Forman told him that they (the construction workers) were on their own after the gate so they should not be paid.

108.    Defendants terminated Plaintiff because of his race or because he had complained about Defendants' wrongful conduct, including Defendants' failure to pay for all regular time and overtime hours worked.

109.    As a proximate cause of the Defendants' wrongful acts, Plaintiff has suffered and continues to suffer damages, including lost wages, benefits, and certain other incidental, consequential expenses and losses, and general damages for humiliation, embarrassment, pain and suffering and/or emotional distress.

110.    The individuals committing the wrongful acts alleged were the employees of Defendants and Defendants:

a.    had advance knowledge of the unfitness of the employee(s) and employed the employee(s) with a conscious disregard of the rights or safety of others,

b.    authorized or ratified the wrongful conduct alleged herein, and/or

c.    were personally guilty of oppression, fraud or malice based on the acts alleged herein in that the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an officer, director or managing agent of Defendants.

WHEREFORE, Plaintiff demands a jury trial and requests that judgment be entered against all Defendants as follows:

**First Amended Complaint**

22

1.    Certification of this action as a class action and the appointment of Plaintiff as the representative
      of the Classes and Plaintiff's counsel as Lead Counsel for the Class;

2.    Damages for unpaid wages including minimum wages, regular time wages and overtime wages;

3.    Compensatory damages according to proof;

4.    Waiting time penalties due pursuant to Labor Code Section 203;

5.    Penalties pursuant to Labor Code Section 226(e);

6.    Penalties pursuant to the PAGA;

7.    Restitution pursuant to Business & Professions Code Sections 17200, *et seq.*;

8.    Prejudgment interest;

9.    Reasonable attorneys' fees;

10.   Costs as allowed by law;

11.   A declaratory judgment that the practices complained of herein are unlawful under the Labor
      Code and/or the Unfair Competition Law and injunctive relief requiring termination or
      modification of the unlawful practices alleged;

12.   Punitive damages according to proof;

13.   Such other relief as this Court shall deem just and proper.

Dated: June 22, 2017                  THE DION-KINDEM LAW FIRM


                                      BY: _____
                                          PETER R. DION-KINDEM, P.C.
                                          PETER R. DION-KINDEM
                                          Attorney for Plaintiff Justin Griffin

**First Amended Complaint**

23

# Exhibit 1

 **THE DION-KINDEM LAW FIRM**

**EMAIL: PETER@DION-KINDEMLAW.COM**

March 29, 2017

*Via Certified Mail, Return Receipt Requested*

Labor & Workforce Development Agency
Attn: PAGA Administrator
pagafilings@dir.ca.gov

CT Corporation System
*Agent for Service of Process for:*
**First Solar, Inc.**
818 West Seventh St.
Los Angeles, CA 90017

National Registered Agents, Inc.
Agent for Service of Process for:
**Sachs Electric Company**
818 W Seventh St. Ste. 930
Los Angeles, CA 90017

CT Corporation System
*Agent for Service of Process for:*
**California Flats Solar, LLC**
818 West Seventh St.
Los Angeles, CA 90017

**Re: Notice of California Labor Code violations**

The Dion-Kindem Law Firm and the Blanchard Law Group, APC represent Justin Griffin. Pursuant to the provisions of Labor Code Sections 2699, *et seq.*, please be advised that during Mr. Griffin's employment, Sachs Electric Company, First Solar, Inc. and California Flats Solar, LLC violated the provisions of the California Labor Code as set forth in Addendum 1 hereto.

Sincerely,

THE DION-KINDEM LAW FIRM

PETER R. DION-KINDEM, P.C.
PETER R. DION-KINDEM

## **ADDENDUM 1**

### TABLE OF CONTENTS

I.    The Employer Parties. ................................................................................................. 1

    A.   Sachs Electric Company ................................................................................ 1

    B.   First Solar, Inc. ............................................................................................ 1

    C.   California Flats Solar, LLC. .......................................................................... 1

II.   The Employees. ......................................................................................................... 3

    A.   Justin Griffin. ............................................................................................... 3

    B.   Aggrieved Employees. ................................................................................. 3

III.  Labor Law Violations. ............................................................................................... 4

    A.   Defendants failed to compensate Griffin and other Aggrieved Employees for all hours worked. ............................................................................................... 4

         1.   Applicable Law. ............................................................................... 4

         2.   Facts. ............................................................................................... 4

    B.   Defendants failed to compensate Griffin and other Aggrieved Employees for all overtime hours worked at the proper rate. ............................................... 5

         1.   Applicable Law. ............................................................................... 5

         2.   Facts. ............................................................................................... 6

    C.   Defendants violated Labor Code Sections 201 and 202 by failing to pay Griffin and other Aggrieved Employees all wages earned and unpaid at the time of the termination of their employment. .............................................................. 7

         1.   Applicable Law. ............................................................................... 7

         2.   Facts. ............................................................................................... 7

    D.   Defendants violated Labor Code Section 203 by failing to pay Griffin and other Aggrieved Employees the wages owing pursuant to Labor Code Sections 201 and 202. ......................................................................................................... 7

         1.   Applicable Law. ............................................................................... 7

         2.   Facts. ............................................................................................... 8

    E.   Defendants violated Defendant's indemnification obligations. ...................... 8

    F.   Defendants violated Defendants' obligations under Labor Code Section 226(a)... 8

         1.   Applicable Law. ............................................................................... 8

         2.   Facts. ............................................................................................... 10

    G.   Defendants violated Labor Code Section 1174 and applicable sections of the applicable Wage Order regarding recordkeeping. ...................................... 11

         1.   Applicable Law. ............................................................................... 11

         2.   Facts. ............................................................................................... 12

i

IV.    Defendants are liable for penalties pursuant to PAGA. ....................................... 12

    A.    Penalties pursuant to Labor Code Section 210. ...................................... 12

    B.    Penalties pursuant to Section 256. ...................................... 13

    C.    Penalties pursuant to Section 558. ...................................... 14

    D.    Penalties pursuant to Section 1197.1. ...................................... 14

    E.    Penalties pursuant to Section 2699(f). ...................................... 14

        1.    Violation of Sections 226.7(a) and 226.7(b). ...................................... 15

        2.    Violation of Section 226(a). ...................................... 15

        3.    Violation of Section 2802. ...................................... 16

EXHIBIT "J" PAGE 199

**Table of Authorities**

**Cases**

Caliber Bodyworks, Inc. v. Superior Court (2005) 134 Cal.App.4th 365 ...................... 13

*Chao v. Westside Drywall, Inc.* (D. Or. 2010) 709 F.Supp.2d 1037 .................................. 3

*Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330 .................................................. 13

E.E.O.C. v. Pacific Maritime Ass'n (9th Cir. 2003) 351 F.3d 1270 ................................... 2

*Martinez v. Combs* (2010) 49 Cal.4th 35 ........................................................................... 2

Villacres v. ABM Industries Inc. (2010) 189 Cal.App.4th 562 ....................................... 13

**Statutes**

Labor Code § 1174 ........................................................................................................ 11

Labor Code § 1174.5 ..................................................................................................... 11

Labor Code § 1182.12 ..................................................................................................... 4

Labor Code § 1197 .......................................................................................................... 4

Labor Code § 1197.1 ..................................................................................................... 14

Labor Code § 201 ............................................................................................................ 7

Labor Code § 202 ............................................................................................................ 7

Labor Code § 203 ............................................................................................................ 7

Labor Code § 204 .......................................................................................................... 13

Labor Code § 210 .......................................................................................................... 12

Labor Code § 226 ............................................................................................................ 8

Labor Code § 226(a) ..................................................................................................... 15

Labor Code § 226.7(b) .................................................................................................. 15

Labor Code § 256 .......................................................................................................... 13

Labor Code § 2699(c) ..................................................................................................... 3

Labor Code § 2699(f) .................................................................................................... 14

Labor Code § 2802.....................................................................................................8

Labor Code § 510.......................................................................................................5

Labor Code § 558..................................................................................................3, 14

Labor Code §§ 2698...................................................................................................3

**<u>Other Authorities</u>**

Industrial Welfare Commission, Wage Order 16-2001, Section 2(H)...............................2

## I.   THE EMPLOYER PARTIES.

### A.   Sachs Electric Company

Sachs Electric Company ("Sachs") is a Missouri corporation with its principal place of business located at 1572 Larkin Williams Road, Fenton, MO. Sachs operates from locations throughout the United States, including California.

Sachs describes itself on its website as follows:

> Sachs is currently ranked as one of the Top 50 Electrical Firms in the country by Engineering News Record (ENR) and is recognized as an industry leader in power generation, industrial installations, health care and research facilities, commercial buildings, and all types of advanced technology projects.

### B.   First Solar, Inc.

First Solar, Inc. ("First Solar") is a Delaware corporation with its principal place of business located at 350 West Washington Street, Suite 600, Tempe, Arizona 85281.

On its website, First Solar states the following about itself:

> First Solar has developed, financed, engineered, constructed and currently operates many of the world's largest grid-connected PV power plants. Our experience across the solar value chain reduces risk while delivering more reliable, dependable and cost-effective solutions for our customers.

### C.   California Flats Solar, LLC.

California Flats Solar, LLC ("California Flats Solar") is a Delaware corporation with its principal place of business located at 350 West Washington Street, Suite 600, Tempe, Arizona 85281. California Flats Solar is a subsidiary of First Solar and is described on First Solar's website as the owner of the California Flats Solar Project ("Project").

First Solar's website describes the California Flats Solar Project as follows:

> First Solar, a leading provider of comprehensive photovoltaic (PV) energy solutions, is developing and constructing a 280 megawatt (MW) alternating current (AC) solar project located on approximately 2,900 acres of previously dryland farmed, private land in southeast Monterey County, California, near the San Luis Obispo, Kings and Fresno County borders. When fully operational, the project will generate enough clean solar energy to serve the needs of about 100,000 average homes per year, displacing over 109,000 metric tons of carbon dioxide ($CO_2$) annually based on the PG&E grid—the equivalent of taking about 22,000 cars off the road. The project will also displace over 152,000 metric tons of water consumption annually based on the average California grid. The project site is strategically located to minimize environmental impacts, and is not visible from any public gathering points or major roads.

The 280MW California Flats Solar Project began pre-construction activities in March 2016, and began full construction in June 2016.

First Solar and California Flats Solar are the owners, operators, and/or developers of the California Flats Solar Project. Even though Griffin's employment documents bear the name of Sachs, First Solar and California Flats Solar, *inter alia*:

- controlled the work site;

- created, defined and managed the wages, hours and working conditions of the work site;

- owned and controlled the land and roads on and around the location where the Project was being developed;

- operated the mandatory badge system and on-site road system to and from worksite where Griffin and other Aggrieved employees worked;

- conducted at least part of the orientation process for aggrieved employees; and

- maintained vehicles and supervisory personnel on the Project site.

Industrial Welfare Commission, Wage Order 16-2001, Section 2(H) defines an employer as follows:

> [A]ny person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."

In *Martinez v. Combs* (2010) 49 Cal.4th 35 [109 Cal.Rptr.3d 514, 231 P.3d 259], *as modified (June 9, 2010)*, the California Supreme Court held:

> "[A]pplicable wage order[s] of the Industrial Welfare Commission (IWC), not the common law, defines the employment relationship." Furthermore, the "Definition of 'employer' in wage order of Industrial Welfare Commission (IWC) regarding minimum wages is broad enough to reach through straw men and other sham arrangements to impose liability for wages on the actual employer; 'employer' encompass[es] any person who directly or indirectly, or through an agent or any other person, employ[s] or exercise[s] control over wages, hours, or working conditions of any person."

"[T]he 'joint employer' concept recognizes that the business entities involved are in fact separate but that they *share* or co-determine those matters governing the essential terms and conditions of employment [citations omitted]." (*E.E.O.C. v. Pacific Maritime Ass'n* (9th Cir. 2003) 351 F.3d 1270, 1276–77 (emphasis in original).)

"Where the dispute regards whether a [party] is a joint employer, the relevant factors include whether the [party] (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employment records." (*Chao v. Westside Drywall, Inc.* (D. Or. 2010) 709 F.Supp.2d 1037, 1061, *as amended (May 13, 2010)* (*citing Bonnette v. California Health & Welfare Agency* (1983) 704 F.2d 1465, 1470).) "These factors are neither exclusive nor exhaustive, rather, a court should consider all factors 'relevant to the particular situation' in evaluating the 'economic reality' of an alleged joint employment relationship." *Id.*

Labor Code Section 558 in relevant part provides:

> (a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:
>
> > (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.
> >
> > (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.
>
> > . . .
>
> (c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law.

For the reasons stated above Sachs Electric Company, First Solar Inc. and California Flats Solar, LLC (collectively referred to as "Defendants") are the joint-employers of Justin Griffin and other Aggrieved Employees and are each responsible and liable for all wage and hourly violations, working condition violations and other wrongs that have been perpetrated upon Justin Griffin and other Aggrieved Employees referred to below.

## II.   THE EMPLOYEES.

### A.   Justin Griffin.

Justin Griffin ("Griffin") is a California resident. On or around November 10, 2016, Defendants hired Griffin as a construction worker.

### B.   Aggrieved Employees.

Pursuant to the Private Attorney General Act of 2004, Labor Code §§ 2698, *et seq.* ("PAGA"), Griffin is entitled to recover civil penalties on behalf of himself and other persons who are or were employed by the alleged violators and against whom one or more of the alleged violations was committed.

One or more of the alleged violations set forth below was committed against Griffin, and Griffin is therefore an "aggrieved employee" under Labor Code Section 2699(c), which provides in relevant part:

> (c) For purposes of this part, "aggrieved employee" means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.

The Aggrieved Employees include, but are not limited to, Griffin and all other non-exempt workers who were employed by Defendants and provided services to any of the Defendants in California during the applicable statute of limitations period.

## III.   LABOR LAW VIOLATIONS.

Some of the California Labor law violations that were committed and/or are currently being committed by Defendants are set forth below.

### A.    Defendants failed to compensate Griffin and other Aggrieved Employees for all hours worked.

#### 1.    Applicable Law.

Labor Code Section 1197 in relevant part provides:

> The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.

Labor Code Section 1182.12 in relevant part provides:

> Notwithstanding any other provision of this part, on and after July 1, 2014, the minimum wage for all industries shall be not less than nine dollars ($9) per hour, and on and after January 1, 2016, the minimum wage for all industries shall be not less than ten dollars ($10) per hour.

Paragraph 4 of the applicable Wage Order provides in relevant part:

> (A) Every employer shall pay to each employee wages not less than nine dollars ($9.00) per hour *for all hours* worked, effective July 1, 2014, and not less than ten dollars ($10.00) per hour for all hours worked, effective January 1, 2016.

> (B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage *for all hours* worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise. (Emphasis added.)

#### 2.    Facts.

Defendants failed to pay Griffin and other Aggrieved Employees for all hours worked, for overtime hours, for missed meal and rest period wages, and for other compensation due them under California law.

Griffin and other Aggrieved Employees were required to work off-the-clock before and after they clocked in for work. Specifically, at the beginning of their shifts, Defendants required Griffin and other Aggrieved Employees to arrive at a security gate controlled by Defendants at the Project site where Defendants required them to have their badge swiped ("badge in") by a person employed by Defendants. Griffin and other Aggrieved Employees were then required to travel approximately 14 miles along a route designated by Defendants, at a speed limit designated by Defendants of approximately 20 miles per hour, using non-public roads owned by Defendants to reach a parking lot by a specific time designated by Defendants.

When they arrived at the parking lot, Griffin and other Aggrieved Employees were required to locate their crew and then take company buggies to the specific locations where they would work that day. Once at that location, their foreman would input Griffin and other Aggrieved Employees' "start time" and they were required to sign off on that "start time." The time input by the foreman was the designated, parking lot meeting time and did not reflect the actual Plaintiff and other Aggrieved Employees arrived at Defendant's security gate and were required to badge in nor the time at which Griffin and other Aggrieved employees thereafter arrived at the parking lot and began looking for their crew.

Similarly, at the end of the day, Griffin and other Aggrieved Employees were required to initial a timesheet with a clock out time that was filled out by their foreman. This clock out time reflected the scheduled end of work time rather than the actual end of work time and approximated the time by which Griffin and other Aggrieved Employees were expected to arrive back at the parking lot. This time did not accurately reflect the specific time it took for Griffin and other Aggrieved Employees to travel to the parking lot or the travel time spent by Griffin and other Aggrieved Employees from the parking lot to the security gate, where their badges were swiped by an employee of Defendants ("badging out").

Defendants controlled Griffen and othere Aggrieved Employees during this mandated travel time, which took between approximately 35 and 45 minutes each way.

In violation of Labor Code Sections 1182.12, 1197 and Paragraph 4 of the applicable Wage Order, Defendants did not compensate Griffin and other Aggrieved Employees for this time.

**B.     Defendants failed to compensate Griffin and other Aggrieved Employees for all overtime hours worked at the proper rate.**

**1.     Applicable Law.**

Labor Code Section 510 provides in relevant part:

(a) Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an

employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Paragraph 3(A) of the applicable Wage Order provides in relevant part:

3. HOURS AND DAYS OF WORK

(A) Daily Overtime - General Provisions

(1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (11 /2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:

(a) One and one-half (11 /2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and

(b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

(c) The overtime rate of compensation to be paid to a nonexempt full-time salaried employee shall be computed by using one-fortieth (1/40) of the employee's weekly salary as the employee's regular hourly rate of pay.

**2.    Facts.**

Griffin and other Aggrieved Employees worked more than eight hours per day and/or more than 40 hours per week and were therefore entitled to overtime. In failing to pay Griffin and other Aggrieved Employees for the employer-required travel time, Defendants failed to pay the overtime due Griffin and other Aggrieved Employees who worked in excess of eight hours in a day.

Defendants also failed to properly record all hours worked, including, but not limited to, the hours Griffin and other Aggrieved Employees were obligated to work before they were allowed to clock in and after they were required to clock out. By failing to include these hours as

part of Griffin and other Aggrieved Employees' work hours, Defendants necessarily miscalculated the overtime and double time wages owing to them.

**C.      Defendants violated Labor Code Sections 201 and 202 by failing to pay Griffin and other Aggrieved Employees all wages earned and unpaid at the time of the termination of their employment.**

**1.      Applicable Law.**

Labor Code Section 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately…

Labor Code Section 202 provides:

> If an employee not having a written contract for a definite period quits Griffin's or her employment, Griffin's or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of Griffin's or her intention to quit, in which case the employee is entitled to Griffin's or her wages at the time of quitting. .

**2.      Facts.**

Defendants violated Section 201 as to Griffin and other Aggrieved Employees who were discharged by willfully failing to timely pay the wages earned and unpaid upon the termination of their employment, including unpaid wages for regular hours worked, unpaid overtime, unpaid meal premiums and/or unpaid rest period premiums.

Defendants violated Section 202 as to Aggrieved Employees who quit by willfully failing to timely pay the wages earned and unpaid upon the termination of their employment, including unpaid wages for regular hours worked, unpaid overtime, unpaid meal premiums and/or unpaid rest period premiums.

**D.      Defendants violated Labor Code Section 203 by failing to pay Griffin and other Aggrieved Employees the wages owing pursuant to Labor Code Sections 201 and 202.**

**1.      Applicable Law.**

Labor Code Section 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections **201**, 201.3, 201.5, **202**, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered

to him or her, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which he or she so avoids payment. (Emphasis added).

### 2.    Facts.

Defendants violated Section 203 as to Griffin and other Aggrieved Employees by failing to pay the wages owing to them under Section 201 or 202. Defendants' failure to pay all final wages was willful within the meaning of Labor Code Section 203.

### E.    Defendants violated Defendant's indemnification obligations.

Labor Code Section 2802 in relevant part provides:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

> (b) All awards made by a court or by the Division of Labor Standards Enforcement for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions. Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss.

> (c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

In violation of Labor Code Section 2802, Defendants required Griffin and other Aggrieved Employees to use their personal vehicles for on-site, employer-controlled, travel but failed to reimburse them for all such mileage.

There is no provision in the Labor Code that provides a specific penalty for the violation of Section 2802. The Employer is therefore liable for the default penalties set forth in Section 2699(f) for each violation of Section 2802.

### F.    Defendants violated Defendants' obligations under Labor Code Section 226(a).

### 1.    Applicable Law.

Labor Code Section 226 provides in relevant part:

> (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any

employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, "copy" includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision.

. . .

(e)(1) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

(2)(A) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.

(B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:

(i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be

provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).

       (ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period. Nothing in this subdivision alters the ability of the employer to aggregate deductions consistent with the requirements of item (4) of subdivision (a).

       (iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.

       (iv) The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

    (C) For purposes of this paragraph, "promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information.

    (3) For purposes of this subdivision, a "knowing and intentional failure" does not include an isolated and unintentional payroll error due to a clerical or inadvertent mistake. In reviewing for compliance with this section, the factfinder may consider as a relevant factor whether the employer, prior to an alleged violation, has adopted and is in compliance with a set of policies, procedures, and practices that fully comply with this section.

**2.    Facts.**

Defendants violated Section 226(a)(1) as to Griffin and other Aggrieved Employees by failing to provide them statements of wages that accurately showed gross wages actually earned by failing to show all wages earned, including wages for regular hours worked, overtime hours worked, missed meal periods and/or missed rest periods.

Defendants violated Section 226(a)(2) by failing to provide Griffin and other Aggrieved Employees statements of wages that accurately showed the total hours worked by Griffin and other Aggrieved Employees.

Defendants violated Section 226(a)(5) by failing to provide Griffin and other Aggrieved Employees with statements of wages that accurately showed net wages actually earned, including wages earned for regular hours worked, overtime hours worked, meal period wages, and/or rest period wages.

Defendants violated Section 226(a)(9) by failing to provide Griffin and other Aggrieved Employees with statements of wages that accurately showed the applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by failing accurately to show the actual number of regular hours worked at the applicable hourly

rate, failing accurately to show the actual overtime hours worked at the applicable overtime hourly rate, and/or failing accurately to show the meal and/or rest period premium hours and the applicable hourly rate at which they were to be paid.

### G. Defendants violated Labor Code Section 1174 and applicable sections of the applicable Wage Order regarding recordkeeping.

#### 1. Applicable Law.

California Labor Code Section 1174 provides in relevant part:

> Every person employing labor in this state shall:

> . . . (d) Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned.

Section 1174.5 provides:

> Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

Section 6 of the applicable Wage Order provides in relevant part:

> 6. RECORDS

> (A) Every employer who has control over wages, hours, or working conditions shall keep accurate information with respect to each employee, including the following: (1) The employee's full name, home address, occupation, and social security number. The employee's date of birth, if under 18 years of age, and designation as a minor. Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals, and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded. (2) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee. (3) Total hours worked during the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request. When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be

provided to employees. An accurate production record shall be maintained by the employer.

(B) Every employer who has control over wages, hours, or working conditions shall semimonthly or at the time of each payment of wages furnish each employee an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item. (See Labor Code Section 226.) This information shall be furnished either separately or as a detachable part of the check, draft, or voucher paying the employee's wages.

(C) All required records shall be in the English language and in ink or other indelible form, dated properly, showing month, day and year. The employer who has control over wages, hours, or working conditions shall also keep said records on file at the place of employment or at a central location for at least three years. An employee's records shall be available for inspection by the employee upon reasonable request…

### 2.    Facts.

Defendants' policies and/or practices of failing to correctly pay the wages, including overtime, owing to its employees, failing to pay rest and meal period premiums, and failing to include all required and accurate information on the wage statements have caused these individuals to suffer and they will continue to suffer actual economic harm from the violations set forth above in that they have been, and will continue to be, precluded from accurately monitoring the wages to which they are entitled, have been required to retain counsel and other experts or consults to evaluate and calculate unpaid wages, and have suffered delays in receiving the wages and interest that are due and owing to them.

By willfully failing to maintain the records required by California Labor Code Section 1174(c), or accurate and complete records required by Section 1174(d), Defendants are also liable for a civil penalty of $500 for each violation.

## IV.    DEFENDANTS ARE LIABLE FOR PENALTIES PURSUANT TO PAGA.

Because of Defendants' violations, Defendants are liable for penalties pursuant to Labor Code Sections 210, 226, 226.3, 256, 558, 1174.5, 1197.1, and 2699, *inter alia*.

### A.    Penalties pursuant to Labor Code Section 210.

Labor Code Section 210 provides:

(a) In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 205, 205.5, and 1197.5, shall be subject to a civil penalty as follows:

   (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.

   (2) For each subsequent violation, or any willful or intentional violation, two hundred ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

Labor Code Section 204 provides in relevant part:

   (a) All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month. However, salaries of executive, administrative, and professional employees of employers covered by the Fair Labor Standards Act, as set forth pursuant to Section 13(a)(1) of the Fair Labor Standards Act, as amended through March 1, 1969, in Part 541 of Title 29 of the Code of Federal Regulations, as that part now reads or may be amended to read at any time hereafter, may be paid once a month on or before the 26th day of the month during which the labor was performed if the entire month's salaries, including the unearned portion between the date of payment and the last day of the month, are paid at that time.

  In failing to pay all wages owing Griffin and Aggrieved Employees, Defendants violated Section 204 and are therefore liable for the penalties provided by Section 210.

   **B.  Penalties pursuant to Section 256.**

Labor Code Section 256 provides:

   The Labor Commissioner shall impose a civil penalty in an amount not exceeding 30 days pay as waiting time under the terms of Section 203.

  Where an employer violates Section 203, the employer is liable for penalties pursuant to Section 256 pursuant to PAGA. (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 378 [36 Cal.Rptr.3d 31, 39] ("For example, an employee not fully paid upon discharge or layoff as required by section 201 (one of the Labor Code provisions identified in section 2699.5) may be entitled to recover not only his or her unpaid wages but also the statutory penalty provided by section 203 (another provision listed in section 2699.5) and the civil penalty provided by section 256."); *Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 340 [47 Cal.Rptr.3d 614, 620]; *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 579 [117 Cal.Rptr.3d 398, 411.)

### C.      Penalties pursuant to Section 558.

Labor Code Section 558 provides:

> (a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

>> (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

>> (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

In violating the provisions of the Labor Code and Wage Order set forth above, Defendants are liable for the penalties provided by Section 558.

### D.      Penalties pursuant to Section 1197.1.

Labor Code Section 1197.1 provides:

> (a) Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission shall be subject to a civil penalty as follows:

>> (1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid.

>> (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed."

In violating the provisions of the Wage Order set forth above, Defendants are liable for the penalties provided by Section 1197.1.

### E.      Penalties pursuant to Section 2699(f).

Labor Code Section 2699(f) provides:

> For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows:

(1) If, at the time of the alleged violation, the person does not employ one or more employees, the civil penalty is five hundred dollars ($500).

(2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

### 1.    Violation of Sections 226.7(a) and 226.7(b).

Defendants violated Labor Code Section 226.7(a) by failing to provide compliant meal and rest periods.

Defendants also violated Labor Code Section 226.7(b) by failing to pay the meal and rest period premiums for the missed meal and rest periods.

Because the Labor Code does not provide a civil penalty for violations of Section 226.7(a) or Section 226.7(b), the "default" penalties set forth in Section 2699(f) are applicable to such violations.

### 2.    Violation of Section 226(a).

Labor Code Section 226(a) requires in pertinent part that:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an *accurate* itemized statement in writing showing (1) gross wages earned; (2) total hours worked by the employee . . . (5) net wages earned . . . (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. . . . (Emphasis added.)

Defendants violated the following subsections of Section 226(a):

- Section 226(a)(1) - failure to provide statement of wages that accurately shows gross wages earned by failing to reflect wages due, including hours worked, overtime hours, and premium pay for missed meal and rest periods;

- Section 226(a)(2) - failure to provide statement of wages that accurately shows total hours worked;

- Section 226(a)(5) - failure to provide statement of wages that accurately shows net wages earned; and

- Section 226(a)(9) - failure to provide statement of wages that accurately shows all applicable hourly rates in effect during the period and the corresponding number of hours at each hourly rate.

Because the Labor Code does not provide a civil penalty for violations for the foregoing provisions of Section 226(a), the "default" penalties set forth in Section 2699(f) are applicable to such violations.

<h3>3.      Violation of Section 2802.</h3>

As set forth above, Defendants violated Section 2802 by failing to reimburse its employees for business expenses. Because the Labor Code does not provide a civil penalty for violations of Section 2802, the "default" penalties set forth in Section 2699(f) are applicable to such violations.

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Certified Mail Fee

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postmark
Here

3/29/17

Postage

Total Postage and Fees
7.95

Sent To  CT Corp re: First Solar, Inc.
Street and Apt. No., or PO Box No.  818 West Seventh St
City, State, ZIP+4®  Los Angeles, CA 90017

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Certified Mail Fee

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postmark
Here

3/29/17

Postage

Total Postage and Fees
7.95

Sent To  National Registered Agents re: Sachs Electric Co
Street and Apt. No., or PO Box No.  818 W. Seventh Street, suite 930
City, State, ZIP+4®  Los Angeles, CA 90017

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Certified Mail Fee

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required           $
☐ Adult Signature Restricted Delivery $

Postmark
Here

3/29/17

Postage

Total Postage and Fees
7.95

Sent To  CT Corp re: California Flats Solar LLC
Street and Apt. No., or PO Box No.  818 West Seventy Street
City, State, ZIP+4®  Los Angeles, CA 90017

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

# Exhibit 2



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

April 05, 2017

RE:  **Notice to Complainant or Complainant's Attorney**
DFEH Matter Number: 175638-282506
Right to Sue: Griffin / Sach Electric Company

Dear Complainant or Complainant's Attorney:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue. Pursuant to Government Code section 12962,
DFEH will not serve these documents on the employer.  You or your attorney must
serve the complaint.  If you do not have an attorney, you must serve the complaint
yourself. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                    DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

April 05, 2017

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 175638-282506
Right to Sue: Griffin / Sach Electric Company

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

**No response to DFEH is requested or required.**

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                  GOVERNOR EDMUND G. BROWN JR.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                  DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

April 05, 2017

Justin Griffin
C/o 3311 East Pico Boulevard
Los Angeles, California 90023

RE: **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 175638-282506
Right to Sue: Griffin / Sach Electric Company

Dear Justin Griffin,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective April 05, 2017 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR EDMUND G. BROWN JR.

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

Enclosures

cc:

| | |
|---|---|
| 1 | **COMPLAINT OF EMPLOYMENT DISCRIMINATION** |
| 2 | **BEFORE THE STATE OF CALIFORNIA** |
| 3 | **DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING** |
| 4 | **Under the California Fair Employment and Housing Act**<br>**(Gov. Code, § 12900 et seq.)** |
| 5 | |

6  In the Matter of the Complaint of          DFEH No. 175638-282506
   Justin Griffin, Complainant.
7  C/o 3311 East Pico Boulevard
8  Los Angeles, California 90023

9  vs.

10  Sach Electric Company, Respondent.
    1572 Larkin Williams Road
11  Fenton, Missouri 63026

12

13  Complainant alleges:

14
15  1. Respondent **Sach Electric Company** is a **Private Employer** subject to suit under
    the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et
16  seq.).  Complainant believes respondent is subject to the FEHA.

17  2. On or around **March 03, 2017**, complainant alleges that respondent took the
    following adverse actions against complainant: **Discrimination, Harassment,**
18  **Retaliation Terminated,** .   Complainant believes respondent committed these
    actions because of their: **Color, Race** .
19
20  3. Complainant **Justin Griffin** resides in the City of **Los Angeles**, State of
    **California**.  If complaint includes co-respondents please see below.
21

22

*Complaint ±DFEH No. 175638-282506*

DFEH 902-1

Date Filed: April 05, 2017

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**Additional Complaint Details:**

Complainant is an African American.  He was treated differently than co-workers who were not African American. When he complained, he as harrassed, retaliated against and ultimately terminated.

DFEH 802-1

-6-

*Complaint ± DFEH No. 175638-282506*

Date Filed: April 05, 2017

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

VERIFICATION

I, **Lonnie C. Blanchard III, Attorney**, am the Attorney for Complainant in the above-entitled complaint.    I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On April 05, 2017, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**3311 East Pico Blvd., Los Angeles, CA 90023**
**Lonnie C. Blanchard III, Attorney**

DFEH 802-1

-7-

*Complaint ± DFEH No. 175638-282506*

Date Filed: April 05, 2017