PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone:    (818) 883-4900
Fax:            (818) 883-4902
Email:         peter@dion-kindemlaw.com

LONNIE C. BLANCHARD, III (SBN 93530)
THE BLANCHARD LAW GROUP, APC
3579 East Foothill Blvd., No. 338
Pasadena, CA 91107
Telephone:    (213) 599-8255
Fax:            (213) 402-3949
Email:         lonnieblanchard@gmail.com

JEFF HOLMES (SBN 100891)
HOLMES LAW GROUP, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone:    (310) 396-9045
Fax:            (970) 497-4922
Email:         jeffholmesjh@gmail.com

Attorneys for Plaintiff Justin Griffin

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Justin Griffin, an individual, on behalf of himself and all others similarly situated and as representative of aggrieved employees,<br><br>          Plaintiff,<br><br>          vs.<br><br>Sachs Electric Company, a Missouri corporation; First Solar, Inc., a Delaware corporation; California Flats Solar, LLC, a Delaware Limited Liability Company, McCarthy Building Companies, Inc., and Does 1 through 10,<br><br>          Defendants. | **Case No. 5:17-cv-03778-BLF**<br>**CLASS ACTION**<br><br>**Consolidated Complaint for:**<br><br>1.  **Failure to Pay Compensation Due**<br>2.  **Failure to Furnish Itemized Wage Statements**<br>3.  **Failure to Pay Wages Timely upon Termination**<br>4.  **Failure to Indemnify Business Expenses**<br>5.  **Violation of Cal. Business & Professions Code Section 17203** |

6. **Recovery of Civil Penalties pursuant to the California Private Attorney General Act**

**INDIVIDUAL CLAIMS**

7. **Violation of California Government Code § 12940**
8. **Intentional Infliction of Emotional Distress**
9. **Wrongful Termination in Violation of Public Policy**

**Demand for Jury Trial**

Plaintiff Justin Griffin ("Plaintiff"), individually, on behalf of all other persons similarly situated and as representative of other aggrieved employees, alleges:

1.    Plaintiff is a resident of California and was primarily employed in Monterey County by Defendants as a non-exempt employee.

2.    Defendant First Solar, Inc. ("First Solar") is a Delaware corporation registered with the Secretary of State of California with its entity address listed as 350 West Washington Street, Suite 600, Tempe, Arizona 85281.

3.    Defendant California Flats Solar, LLC ("California Flats Solar") is a Delaware limited liability company registered with the Secretary of State of California with its entity address listed as 350 West Washington Street, Suite 600, Tempe, Arizona 85281.

4.    First Solar and California Flats Solar were involved in the construction and development of photovoltaic ("PV" or "Solar") power projects, including the California Flats Solar Project ("Project"). Such activities fell within the usual course of business of First Solar and California Flats Solar.

5.    Defendant Sachs Electric Company ("Sachs") is a Missouri corporation registered with the Secretary of State of California with its entity address listed as 1572 Larkin Williams Road, Fenton, Missouri.

6.    Defendant McCarthy Building Companies, Inc. ("McCarthy") is a Missouri corporation whose headquarters is located at 1341 North Brock Hill Road, St. Louis, MO. McCarthy was involved in various construction projects, including the California Flats Solar Project ("Project"). Such activities fell within the usual course of its business. Various subcontractors on the Project supplied Plaintiff and other workers to McCarthy for the Project. These subcontractors were each a "labor contractor" and McCarthy was also a "client employer" under Section 2810.3.

7.    Labor Code Section 2810.3(a)(1)(A) provides in relevant part:

> "Client employer" means a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor.

8.    Labor Code 2810.3(a)(3) provides in relevant part:

> "Labor contractor" means an individual or entity that supplies, either with or without a contract, a client employer with workers to perform labor within the client employer's usual course of business.

9.    Sachs supplied Plaintiff and other workers to McCarthy, First Solar and California Flats Solar for the California Flats Solar Project. Sachs was a "labor contractor" and First Solar, California Flats Solar, and McCarthy were all "client employers" pursuant to Section 2810.3.

10.    Labor Code Section 2810.3(b) provides in relevant part:

> (b) A client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for both of the following:
>
> > (1) The payment of wages…

11.    Section 2(H) of the applicable Wage Order defines an employer as follows:

> [A]ny person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person.

12.    First Solar, California Flats Solar, McCarthy, and Sachs acted employers, co-employers and/or joint employers of Plaintiff and the Class members and aggrieved employees. First Solar and California Flats Solar are the owners, operators, and developers of the Project on which Plaintiff and the other Plaintiff Class members and aggrieved employees worked. McCarthy was the

original general contractor on the Project, and First Solar is now believed to be the current general contractor on the Project. Among other things, McCarthy, First Solar and California Flats Solar:

    a.     controlled the Project site;

    b.     defined and managed the construction on the Project, including but not limited to design, work flow and scheduling;

    c.     created, defined and managed the work-related agreements related to the Project;

    d.     created, defined and managed training for workers on the Project;

    e.     created, defined and managed policies and procedures for workers on the Project, including but not limited to environmental, safety and transportation rules;

    f.     created, defined and managed the wages of workers on the Project;

    g.     created, defined and managed the hours for workers on the Project;

    h.     created, defined and managed the working conditions of the Project;

    i.     controlled the access to and the land and roads at the Project;

    j.     operated the mandatory on site, badge and security process/procedure/system for the Project;

    k.     conducted at least part of the orientation process for Plaintiff and Class members;

    l.     maintained vehicles on the Project;

    m.     maintained the work quality control and quality assurance for the Project;

    n.     maintained supervisory personnel on the Project;

    o.     monitored and policed the job site rules, security and ingress and egress of the Project; and

    p.     had the right and exercised the right to discipline, suspend and terminate employees of any subcontractor on the Project.

13.    Plaintiff does not presently know the true names and capacities of the defendants named as Does 1 through 10 and therefore sues such defendants by these fictitious names. Plaintiff believes that

the Doe Defendants are persons or entities who are involved in the acts set forth below, either as independent contractors, suppliers, agents, servants or employees of the known defendants, or through entering into a conspiracy and agreement with the known Defendants to perform these acts, for financial gain and profit, in violation of Plaintiff's and class members' rights. Plaintiff will request leave of Court to amend this Complaint to set forth their true names, identities and capacities when Plaintiff ascertains them.

14.    Each of the Defendants has been or is the principal, officer, director, agent, employee, representative and/or co-conspirator of each of the other defendants and in such capacity or capacities participated in the acts or conduct alleged herein and incurred liability therefor. At an unknown time, some or the Defendants entered into a conspiracy with other of the Defendants to commit the wrongful acts described herein. These wrongful acts were committed in furtherance of such conspiracy. Defendants aided and abetted each other in committing the wrongful acts alleged herein. Each of the Defendants acted for personal gain or in furtherance of their own financial advantage in effecting the acts alleged herein.

15.    The named Defendants and the Doe defendants are hereinafter referred to collectively as "Defendants."

## CLASS ACTION ALLEGATIONS

16.    Plaintiff brings the first five causes of action for himself and on behalf of a class and sub-class initially defined as follows:

**Unpaid Wages Class**

All non-exempt employees of any of the Defendants or any of the contractors or subcontractors of any of the Defendants, at any time within the period from April 27, 2013 through the date of judgment, worked on the construction of the California Flats Solar Project.

**Termination Pay Sub-Class**

All members of the Unpaid Wages Class whose employment terminated at any time within the period from April 27, 2014 through the date of judgment.

17.    The term "Class members" includes the Plaintiff and all Class members.

18.     During all or a portion of the class period, Plaintiff and Class members were employed by Defendants in California.

19.     **Numerosity.** The number of Class members is so numerous that joinder of all members is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice. Plaintiff believes there are more than 600 Class members.

20.     **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all Class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

    a.      Whether Defendants paid Plaintiff and Class members for all hours worked;

    b.      Whether Defendants paid Plaintiff and Class members all properly calculated overtime due them;

    c.      Whether Defendants' conduct in failing to pay all wages due Plaintiff and Class members was willful or reckless;

    d.      Whether Defendants violated Labor Code Section 226 by failing to timely furnish Plaintiff and Class members accurate wage statements;

    e.      Whether Defendants failed to timely pay all wages due to Plaintiff and Class members upon the termination of their employment;

    f.      Whether Defendants failed to indemnify Plaintiff and Class members for all business expenses for which Defendants were responsible;

    g.      Whether Defendants engaged in unfair competition in violation of California Business & Professions Code Section 17200, *et seq*.; and,

    h.      The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

21.   **Typicality.** Plaintiff's class claims are typical of the claims of the Class members. Plaintiff and all Class members sustained injuries and damages arising out of Defendants' common course of conduct in violation of the law as alleged herein. Plaintiff is entitled to the same relief under the class action causes of action as the Class members.

22.   **Adequacy.** Plaintiff will adequately and fairly protect the interests of the Class members. Plaintiff was employed by the Defendants at times during the Class Period and is an adequate representative for the Class members because Plaintiff has no interest adverse to the interests of the Class members and Plaintiff has retained legal counsel with substantial experience in civil litigation, employment law and class action litigation. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class members.

23.   **Superiority.** A class action is superior to other available means of fair and efficient adjudication of the claims of the Class members. Joinder of all Class members is impractical. Class action treatment will allow numerous similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would cause to such Plaintiffs or to the court system. Further, the damages of many Class members may be relatively small, and the burden and expenses of individual litigation would make it difficult or impossible for individual members of the class to seek and obtain relief, while a class action will serve an important public interest. Furthermore, questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Individual litigation would present the potential for inconsistent or contradictory judgments. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in one case.

**First Claim for Relief**
**Failure to Pay Wages for Hours Worked**
**(Against All Defendants)**

24.   Plaintiff realleges all the preceding paragraphs.

**Consolidated Complaint**

25. Labor Code Section 1197 in relevant part provides:

> The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.

26. Paragraph 4 of the applicable Wage Order provides in relevant part:

> (B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

27. Defendants failed to pay Plaintiff and Class members for all hours worked, for overtime hours worked, and for other compensation due them under California law.

28. Under California law, "hours worked" is the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

29. In addition, paragraph 5(A) of the applicable Wage Order (No. 16) provides:

> (A) All employer-mandated travel that occurs after the first location where the employee's presence is required by the employer shall be compensated at the employee's regular rate of pay or, if applicable, the premium rate that may be required by the provisions of Labor Code Section 510 and Section 3, Hours and Days of Work, above.

30. The first location where Defendants required Plaintiff and Class members' presence was a security entrance to the Project. Defendants required Plaintiff and Class members to arrive at a security entrance controlled by Defendants at the Project at the beginning of their shifts. This was the only way that Plaintiff and Class members could gain access to the Project. Defendants required Plaintiff and Class members to have their personal employee badges scanned ("badged in") by a person employed by Defendants at the security entrance. From the time that Plaintiff and Class members badged in at this security entrance until they badged out through the security entrance at the end of their workday, they were under Defendants' control and were restricted by Defendants' rules, processes, procedures and supervision.

31. After Plaintiff and Class members were "badged in" at the security entrance, they were then required to travel approximately 12 or more miles along a route designated by Defendants, at a

slow speed limit designated by Defendants, and using non-public roads controlled by Defendants to reach parking lots controlled by Defendants and arrive by a specific time designated by Defendants. Plaintiff and Class members were not able to use this time travel time effectively for their own purposes.

32.    When they arrived at the parking lot, Plaintiff and Class members were required to locate their crew and take company buggies arranged by Defendants to the specific locations where they would continue their work for the day. The travel on the buggies was mandatory. Once at this location, foremen or other supervisory personnel would input Plaintiff and Class members' "start time" onto a timesheet, even though Plaintiff and Class members had been under Defendants' control from the time they arrived at the security entrance. The time input by foremen and/or other supervisory personnel on the timesheets did not reflect the actual time Plaintiff and Class members arrived at Defendants' security entrance and were required to badge in, nor did it reflect the time that Plaintiff and Class members were required to travel from the security entrance to the specific locations where they would work for the day.

33.    At the end of the workday, Plaintiff and Class members were required to initial a timesheet with a clock-out time that was filled out by foremen or other supervisory personnel. This clock-out time reflected the scheduled end of work time rather than the actual end of work time. This time did not accurately reflect the mandatory and controlled travel time spent by Plaintiff and Class members from the specific work locations to the security entrance, where their badges were again swiped by one of Defendants' employees ("badging out").

34.    As detailed above, Defendants controlled Plaintiff and Class members during the mandated travel time before and after their scheduled shifts. This travel time generally took 45 minutes or more each way.

35.    Plaintiff and Class members were entitled to be paid the regular rate of pay (or at least the minimum wage) for all non-overtime hours worked for Defendants, including the time from when they passed through the security entrance to the specific locations where they worked for

the day and when they traveled from the location where they worked for the date to the security entrance.

36.    Plaintiff and class members were told that they were required to stay on the job site during the entire workday from the beginning of the workday to the end of the workday. They were told that it would be a violation of the job site rules if they reached the Security Entrance too early at the end of the workday and that they could be suspended or terminated if they violated that rule. They were told that they were required to eat their lunches at their daily Installation Sites and that they could not go back to their vehicles in the parking lots at any time during the workday. Defendants did not make the buggies available to Plaintiff or class members to take them to the parking lot during their meal periods.

37.    Sachs and McCarthy personnel checked workers to see if they had any alcohol or drugs. They told the workers that they were checking people's cars in the parking lots and checking people's lunch boxes at their daily Installation sites. They conducted these searches at different times, including during their rest and meal breaks.

38.    Workers were never paid for the time that they were on meal breaks or when his meal breaks or rest breaks were interrupted.

39.    In violation of Section 1197 and Paragraph 4 of the applicable Wage Order, Defendants did not pay class members at least the minimum wages and/or regular time wages for all hours worked.

40.    Labor Code Section 1194.2 in relevant part provides:

> In any action under Section 1193.6 or Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon. Nothing in this subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay overtime compensation.

41.    Plaintiff and Class members are also entitled to liquidated damages pursuant to Labor Code Section 1194.2.

**Failure to pay Overtime Wages**

42.  Plaintiff and class members worked over eight hours in a day and/or more than 40 hours in a week and/or seven or more consecutive days. Defendants failed to correctly compensate Plaintiff and class members for all overtime worked at the correct rates in violation of California Labor Code Section 510 and Paragraph 3 of the applicable Wage Order.

43.  Plaintiff has incurred and is entitled to attorney's fees, costs and interest.

**Second Claim for Relief**
**Wage Statement and Record-Keeping Violations**
**(Against All Defendants)**

44.  Plaintiff realleges all the preceding paragraphs.

45.  Labor Code Section 226 provides in relevant part:

> (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggreentranced and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, "copy" includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows the information required by this subdivision.
>
> . . .

(e)(1) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggreentrance penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

(2)(A) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.

(B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:

(i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).

(ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period. Nothing in this subdivision alters the ability of the employer to aggreentrance deductions consistent with the requirements of item (4) of subdivision (a).

(iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.

(iv) The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

(C) For purposes of this paragraph, "promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information. . . .

46.   California Labor Code Section 1174 provides in relevant part:

Every person employing labor in this state shall:

. . . (d) Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned.

47.   Paragraph 6 of the applicable Wage Order provides in relevant part:

> 6. RECORDS
>
> (A) Every employer who has control over wages, hours, or working conditions shall keep accurate information with respect to each employee, including the following: (1) The employee's full name, home address, occupation, and social security number. The employee's date of birth, if under 18 years of age, and designation as a minor. Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals, and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded. (2) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee. (3) Total hours worked during the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request. When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.
>
> (B) Every employer who has control over wages, hours, or working conditions shall semimonthly or at the time of each payment of wages furnish each employee an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggreentranced and shown as one item. (See Labor Code Section 226.) This information shall be furnished either separately or as a detachable part of the check, draft, or voucher paying the employee's wages.
>
> (C) All required records shall be in the English language and in ink or other indelible form, dated properly, showing month, day and year. The employer who has control over wages, hours, or working conditions shall also keep said records on file at the place of employment or at a central location for at least three years. An employee's records shall be available for inspection by the employee upon reasonable request.
>
> (D) Employers performing work on public works projects should refer to Labor Code Section 1776 for additional payroll reporting requirements.

48.   Labor Code Section 1174.5 provides:

> Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

49.   Defendants knowingly and intentionally, as a matter of uniform policy and practice, failed to maintain and furnish Plaintiff and Class members with accurate and complete wage statements reflecting all of the information required under Section 226(a) and/or 1174.

50. Defendants' failure to furnish Plaintiff and Class members with complete and accurate itemized wage statements resulted in actual injury because such failures led to, among other things, the non-payment of all their regular and overtime wages and deprived them of the information necessary to identify the discrepancies in Defendants' reported data.

51. Plaintiff and the other Class members are entitled to damages and/or penalties pursuant to Labor Code Section 226.

**Third Claim for Relief**
**Failure to Pay Waiting Time Wages Pursuant to Labor Code Section 203**
**(Against All Defendants)**

52. Plaintiff realleges all the preceding paragraphs.

53. Labor Code Section 201 in relevant part provides:

> (a) If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately. . . .

54. Labor Code Section 202 in relevant part provides:

> (a) If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting...

55. Labor Code Section 203 provides in relevant part:

> (a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. . .

> (b) Suit may be filed for these penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise.

56. The employment of Plaintiff and certain Class members with Defendants terminated.

57. When the employment of Plaintiff and certain Class members terminated, Defendants violated Labor Code Sections 201 or 202 by willfully failing to pay the wages earned and unpaid that were due them, including wages due for regular hours worked and wages for overtime hours worked within the time required by Sections 201 or 202.

58. Labor Code Section 218.5 provides in relevant part:

> (a) In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. . . .

59. Plaintiff has incurred attorney's fees and costs in pursuing this claim.

**Fourth Claim for Relief**
**Violation of Labor Code Section 2802**
**(Against All Defendants)**

60. Plaintiff realleges all the preceding paragraphs.

61. Labor Code Section 2802 in relevant part provides:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

> (b) All awards made by a court or by the Division of Labor Standards Enforcement for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions. Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss.

> (c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section…

62. In violation of Labor Code Section 2802, Defendants required Plaintiff and Class members to use their personal vehicles for on-site, employer-controlled travel, but failed to reimburse them for all such mileage.

63. As a proximate result of Defendants' wrongful actions alleged above, Plaintiff and the class members have been damaged.

64. Plaintiff has incurred attorney's fees and costs in pursuing this claim.

**Fifth Claim for Relief**
**Violation of California Business and Professions Code Section 17200,** *et seq.*
**(Against All Defendants)**

65. Plaintiff realleges all the preceding paragraphs.

66. Business & Professions Code Section 17200 provides:

> As used in this chapter, unfair competition shall mean and include any **unlawful**, **unfair** or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.) (Emphasis added.)

67. Defendants' violations of the Labor Code and Wage Order provisions set forth above constitute unlawful and/or unfair business acts or practices.

68. Business & Professions Code Section 17203 provides:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

69. Defendants have been unjustly enriched because of Defendants' unlawful and/or unfair business acts and/or practices.

70. Plaintiff, individually and on behalf of Class members, seeks restitution of money and/or property by which Defendants were unjustly enriched.

71. Plaintiff, individually, and on behalf of Class members, is further entitled to and seeks a declaration that the above-described business practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendants, and each of them, from engaging in any of the above-described unfair, unlawful and/or fraudulent business practices in the future.

72. Plaintiff and the Class members have no plain, speedy, and/or adequate remedy at law to redress the injuries that they have suffered because of Defendants' unfair, unlawful and/or fraudulent business practices.

73. If Defendants are not enjoined from the conduct alleged herein, they will continue to violate their legal obligations.

74. Plaintiff is entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5.

**Sixth Claim for Relief**
**For Recovery of Civil Penalties under the California Private Attorney General Act,**
**Labor Code Section 2698, *et seq*.**
**(Against All Defendants)**

75. Plaintiff realleges all the preceding paragraphs.

76. Pursuant to Labor Code Sections 2698, *et seq*., the Private Attorney General Act of 2004 ("PAGA"), Plaintiff is entitled to recover civil penalties on behalf of himself and other persons who are or were employed by the alleged violator and against whom one or more of the alleged violations was committed. Plaintiff is pursuing civil penalties for violations of the Labor Code sections alleged herein.

77. Defendants, as alleged above, have committed Labor Code violations against Plaintiff and the other class members.

78. Plaintiff and the other class members seeks to recover all civil penalties recoverable under PAGA against Defendants, including without limitation penalties pursuant to Labor Code Sections 210, 226.3, 256, 558, 1174.5, 1197.1, and 2699(f).

79. Plaintiff's attorney gave written notice by certified mail to the Labor and Workforce Development Agency ("LWDA") and to Defendants identifying violations set forth above.

80. Labor Code Section 2699(g) provides that any "employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Plaintiff has incurred attorney's fees and costs in pursuing this claim.

**Seventh Claim for Relief**
**Violation of California Government Code § 12940**
**(Against Sachs Electrical, Inc.)**

81. Plaintiff realleges all the preceding paragraphs.

**Harassment**

82. California Government Code § 12940(j)(1) in relevant part provides the following:

It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

…

(j)(1) For an employer, labor organization, employment agency, apprenticeship

training program or any training program leading to employment, or any other person, ***because of race***, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees, applicants, unpaid interns or volunteers, or persons providing services pursuant to a contract in the workplace, where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those nonemployees shall be considered. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment. (Emphasis added.)

83. Plaintiff was mistreated because of his race.

84. Among other things, for example, Plaintiff was treated differently than other workers who were not African American, he was not chosen for certain jobs that were available to other workers who were not African American and he was not allowed to sit in the front seat of vehicles like other workers who were not African American.  When Plaintiff complained about these things, Plaintiff was given a write up and forced to work with a different crew.

85. In retaliation for his complaints, on or about March 3, 2017, a superintendent accused Plaintiff of having left the job site mid-shift on March 1, 2017. Plaintiff did not go to work at all that day. The foreman claimed that Plaintiff had signed in and that they were unable to find him at the end of the day. He mentioned having spoken to Plaintiff that morning.  By that time, there was a second African-American man on the crew. This man told Plaintiff that the foreman had talked to him (the other African American man) that morning, not to Plaintiff.

86. When Plaintiff asked to see his supposed sign-in signature and the electronic badge-in records, the foreman refused, telling Plaintiff he had to take up the matter with First Solar. When Plaintiff asked the foreman if he had confused him with the only other African-American on the crew, the foreman became defensive. Approximately four hours later, Plaintiff was given a write-up

containing false allegations, which Plaintiff refused to sign. Plaintiff was then wrongfully terminated based on a pretext and in the absence of his union steward.

### **Failure to Prevent Harassment**

87.   California Government Code § 12940(k) in relevant part provides the following:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
>
> …
>
> (k) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

88.   Plaintiff complained about the unfair treatment by his superiors.

89.   Defendants knew or should have known that Plaintiff was being harassed because of his race.

90.   Defendants failed to take all reasonable steps to prevent discrimination and/or harassment from occurring.

### **Unlawful Retaliation**

91.   California Government Code § 12940(h) in relevant part provides:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
>
> . . .
>
> (h) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part. (Emphasis added.)

92.   Plaintiff complained about his unfair treatment to his supervisors, and directly questioned the behavior of supervisors who were discriminating against him.

93.   Plaintiff was written up more than once and was terminated because of his complaints.

**Discrimination**

94.   Violation of California Government Code § 12940(a) provides in relevant part:

It shall be an unlawful employment practice . . .:

(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

95.   Defendants terminated Plaintiff because of his race and because of his demand to be treated fairly, regardless of his race.

96.   As a proximate cause of the Defendants' wrongful acts, Plaintiff has suffered and continues to suffer damages, including lost wages, benefits, and certain other incidental, consequential expenses and losses, and general damages for humiliation, embarrassment, pain and suffering and/or emotional distress.

97.   The individuals committing the wrongful acts alleged were the employees of Defendants and Defendants:

a.   had advance knowledge of the unfitness of the employee(s) and employed the employee(s) with a conscious disregard of the rights or safety of others,

b.   authorized or ratified the wrongful conduct alleged herein, and/or

c.   were personally guilty of oppression, fraud or malice based on the acts alleged herein in that the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an officer, director or managing agent of Defendants.

98.   Plaintiff has incurred and will incur attorney's fees in prosecuting this claim and is entitled to an award of attorney's fees under Government Code section 12965(b).

99.   Plaintiff filed a complaint with DFEH and received a right to sue letter on April 5, 2017.

**Eighth Claim for Relief**
**Intentional Infliction of Emotional Distress**
**(Against Sachs Electrical, Inc.)**

100.   Plaintiff realleges all the preceding paragraphs.

101.   Defendants' conduct was extreme and outrageous and was intended to cause severe emotional distress and was done in conscious disregard of the probability of causing such distress.

102.   As a proximate cause of the Defendants' wrongful acts, Plaintiff has suffered and continues to suffer damages, including lost wages, benefits, and certain other incidental, consequential expenses and losses, and general damages for humiliation, embarrassment, pain and suffering and/or emotional distress.

103.   The individuals committing the wrongful acts alleged were the employees of Defendants and Defendants:

   a.   had advance knowledge of the unfitness of the employee(s) and employed the employee(s) with a conscious disregard of the rights or safety of others,

   b.   authorized or ratified the wrongful conduct alleged herein, and/or

   c.   were personally guilty of oppression, fraud or malice based on the acts alleged herein in that the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an officer, director or managing agent of Defendants.

**Ninth Claim for Relief**
**Wrongful Termination in Violation of Public Policy**
**(Against Sachs Electrical, Inc.)**

104.   Plaintiff realleges all the preceding paragraphs.

105.   At all relevant times, there existed in the State of California a public policy against racial discrimination, harassment and retaliation. Defendants were aware and should have known of the public policy. Despite this knowledge, Defendants harassed and allowed harassment on the job and discriminated against Plaintiff because of his race.

106.   Plaintiff complained to Defendants about harassing and discriminatory behavior by his superiors.

107. Plaintiff also questioned Defendants' failure to pay employees for all time worked. On at least one occasion, Plaintiff complained to a General Foreman that he and other construction workers should be paid from the point at which they badged in at the security entrance. In response, the General Forman told him that they (the construction workers) were on their own after the entrance so they should not be paid.

108. Defendants terminated Plaintiff because of his race or because he had complained about Defendants' wrongful conduct, including Defendants' failure to pay for all regular time and overtime hours worked.

109. As a proximate cause of the Defendants' wrongful acts, Plaintiff has suffered and continues to suffer damages, including lost wages, benefits, and certain other incidental, consequential expenses and losses, and general damages for humiliation, embarrassment, pain and suffering and/or emotional distress.

110. The individuals committing the wrongful acts alleged were the employees of Defendants and Defendants:

   a.   had advance knowledge of the unfitness of the employee(s) and employed the employee(s) with a conscious disregard of the rights or safety of others,

   b.   authorized or ratified the wrongful conduct alleged herein, and/or

   c.   were personally guilty of oppression, fraud or malice based on the acts alleged herein in that the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice was on the part of an officer, director or managing agent of Defendants.

WHEREFORE, Plaintiff demands a jury trial and requests that judgment be entered against all Defendants as follows:

1.   Certification of this action as a class action and the appointment of Plaintiff as the representative of the Classes and Plaintiff's counsel as Lead Counsel for the Class;

2.   Damages for unpaid wages including minimum wages, regular time wages and overtime wages;

**Consolidated Complaint**

3.    Compensatory damages according to proof;

4.    Waiting time penalties due pursuant to Labor Code Section 203;

5.    Penalties pursuant to Labor Code Section 226(e);

6.    Penalties pursuant to the PAGA;

7.    Restitution pursuant to Business & Professions Code Sections 17200, *et seq.*;

8.    Prejudgment interest;

9.    Reasonable attorneys' fees;

10.   Costs as allowed by law;

11.   A declaratory judgment that the practices complained of herein are unlawful under the Labor Code and/or the Unfair Competition Law and injunctive relief requiring termination or modification of the unlawful practices alleged;

12.   Punitive damages according to proof;

13.   Such other relief as this Court shall deem just and proper.

Dated: July 23, 2017            THE DION-KINDEM LAW FIRM

BY:  _____
PETER R. DION-KINDEM, P.C.
PETER R. DION-KINDEM
Attorney for Plaintiff Justin Griffin